**CT Corporation**

**Service of Process Transmittal**
09/11/2019
CT Log Number 536225309

TO: Paul Bech
Chubb
436 Walnut St
Philadelphia, PA 19106-3703

RE: **Process Served in Virginia**

FOR: Westchester Fire Insurance Company  (Domestic State: PA)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | 3534 East Cap Venture, LLC, Pltf. vs. Westchester Fire Insurance Company, etc., et al., Dfts. |
| **DOCUMENT(S) SERVED:** | Summons, Order, Complaint, Exhibit(s), Attachment(s) |
| **COURT/AGENCY:** | SUPERIOR COURT OF THE DISTRICT OF COLUMBIA, DC<br>Case # 2019CA005590B |
| **NATURE OF ACTION:** | Insurance Litigation |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Glen Allen, VA |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 09/11/2019 at 11:10 |
| **JURISDICTION SERVED :** | Virginia |
| **APPEARANCE OR ANSWER DUE:** | Within 21 days after service of this summons upon you, exclusive of the day of service |
| **ATTORNEY(S) / SENDER(S):** | Erik B. Lawson, Esquire<br>SILVER & BROWN<br>10621 Jones Street, Suite 101<br>Fairfax, VA 22030<br>703-591-6666 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 09/12/2019, Expected Purge Date: 09/17/2019<br><br>Image SOP<br><br>Email Notification,  Incoming Legal  incominglegal@chubb.com |
| **SIGNED:**<br>**ADDRESS:** | C T Corporation System<br>4701 Cox Road<br>Suite 285<br>Glen Allen, VA 23060 |
| **For Questions:** | 804-217-7255 |

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.



**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**Civil Actions Branch**
500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001
Telephone: (202) 879-1133 Website: www.dccourts.gov

3534 East Cap Venture, LLC
_____
Plaintiff

vs.

Case Number  2019 CA 005590 B

WESTCHESTER FIRE INSURANCE COMPANY, et al.
_____
Defendant

**SUMMONS**

To the above named Defendant:  Westchester Fire Insurance Company  c/o CTCorp

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

ERIK B. LAWSON, ESQ.
_____
Name of Plaintiff's Attorney

SILVER & BROWN, P.C.
_____
Address

10621 JONES STREET, SUITE 101, FAIRFAX, VA 22030
_____

(703) 591-6666
_____
Telephone

Clerk of the Court

By _____
Deputy Clerk

Date  08/29/2019

如需翻译，请打电话 (202) 879-4828          Veuillez appeler au (202) 879-4828 pour une traduction          Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828로 전화주십시오          ?ληπic? ?c??? ስ??ጋት? (202) 879-4828  ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME._

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

CV-3110 [Rev. June 2017]                                                                 Super. Ct. Civ. R. 4





**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
**DIVISIÓN CIVIL**
Sección de Acciones Civiles
500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001
Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov

_____
                          Demandante

        contra

_____            Número de Caso: _____
                          Demandado

### CITATORIO

Al susodicho Demandado:

    Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

    A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

                                    *SECRETARIO DEL TRIBUNAL*
_____
Nombre del abogado del Demandante

                          Por: _____
_____
Dirección                                     Subsecretario

_____

_____                     Fecha _____
Teléfono
如需翻译,请打电话 (202) 879-4828      Veuillez appeler au (202) 879-4828 pour une traduction      Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면 (202)879-4828로 전화주십시오      ፣ማርኛ  ትርጉም  ለማግኘት  (202) 879-4828  ይደውሉ

    IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, _NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO_.

    Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

CV-3110 [Rev. June 2017]                                    Super. Ct. Civ. R. 4

# Superior Court of the District of Columbia

CIVIL DIVISION- CIVIL ACTIONS BRANCH

INFORMATION SHEET

_3534 East Cap Venture, LLC_    Case Number: **2019 CA 005590 B**

vs    Date: __August 23, 2019__

_Westchester Fire Insurance Company, et al._    ☐ One of the defendants is being sued
in their official capacity.

| Name: *(Please Print)* | Relationship to Lawsuit |
|---|---|
| **ERIK B. LAWSON, ESQUIRE** | ☒ Attorney for Plaintiff |
| Firm Name: **SILVER & BROWN, P.C.** | ☐ Self (Pro Se) |
| Telephone No.:  Six digit Unified Bar No.: **(703) 591-6666**    79656 | ☐ Other: _____ |

TYPE OF CASE:  ☐ Non-Jury    ☒ 6 Person Jury    ☐ 12 Person Jury
Demand: $ _2,000,000.00_    Other: _____

PENDING CASE(S) RELATED TO THE ACTION BEING FILED

Case No.: _____    Judge: _____    Calendar #: _____

Case No.: _____    Judge: _____    Calendar#: _____

---

**NATURE OF SUIT:**    *(Check One Box Only)*

### A. CONTRACTS

**COLLECTION CASES**

☒ 01 Breach of Contract
☐ 02 Breach of Warranty
☐ 06 Negotiable Instrument
☐ 07 Personal Property
☐ 13 Employment Discrimination
☐ 15 Special Education Fees

☐ 14 Under $25,000 Pltf. Grants Consent
☐ 17 OVER $25,000 Pltf. Grants Consent
☐ 27 Insurance/Subrogation
  Over $25,000 Pltf. Grants Consent
☐ 07 Insurance/Subrogation
  Under $25,000 Pltf. Grants Consent
☐ 28 Motion to Confirm Arbitration
  Award (Collection Cases Only)

☐ 16 Under $25,000 Consent Denied
☐ 18 OVER $25,000 Consent Denied
☐ 26 Insurance/Subrogation
  Over $25,000 Consent Denied
☐ 34 Insurance/Subrogation
  Under $25,000 Consent Denied

### B. PROPERTY TORTS

☐ 01 Automobile
☐ 02 Conversion
☐ 07 Shoplifting, D.C. Code § 27-102 (a)

☐ 03 Destruction of Private Property
☐ 04 Property Damage

☐ 05 Trespass

### C. PERSONAL TORTS

☐ 01 Abuse of Process
☐ 02 Alienation of Affection
☐ 03 Assault and Battery
☐ 04 Automobile- Personal Injury
☐ 05 Deceit (Misrepresentation)
☐ 06 False Accusation
☐ 07 False Arrest
☐ 08 Fraud

☐ 10 Invasion of Privacy
☐ 11 Libel and Slander
☐ 12 Malicious Interference
☐ 13 Malicious Prosecution
☐ 14 Malpractice Legal
☐ 15 Malpractice Medical (Including Wrongful Death)
☐ 16 Negligence- (Not Automobile,
  Not Malpractice)

☐ 17 Personal Injury- (Not Automobile,
  Not Malpractice)
☐ 18 Wrongful Death (Not Malpractice)
☐ 19 Wrongful Eviction
☐ 20 Friendly Suit
☐ 21 Asbestos
☐ 22 Toxic/Mass Torts
☐ 23 Tobacco
☐ 24 Lead Paint

SEE REVERSE SIDE AND CHECK HERE    IF USED

CV-496/June 2015

# Information Sheet, Continued

**C. OTHERS**

- ☐ 01 Accounting
- ☐ 02 Att. Before Judgment
- ☐ 05 Ejectment
- ☐ 09 Special Writ/Warrants
  (DC Code § 11-941)
- ☐ 10 Traffic Adjudication
- ☐ 11 Writ of Replevin
- ☐ 12 Enforce Mechanics Lien
- ☐ 16 Declaratory Judgment

- ☐ 17 Merit Personnel Act (OEA)
  (D.C. Code Title 1, Chapter 6)
- ☐ 18 Product Liability
- ☐ 24 Application to Confirm, Modify,
  Vacate Arbitration Award (DC Code § 16-4401)
- ☐ 29 Merit Personnel Act (OHR)
- ☐ 31 Housing Code Regulations
- ☐ 32 Qui Tam
- ☐ 33 Whistleblower

**II.**

- ☐ 03 Change of Name
- ☐ 06 Foreign Judgment/Domestic
- ☐ 08 Foreign Judgment/International
- ☐ 13 Correction of Birth Certificate
- ☐ 14 Correction of Marriage
  Certificate
- ☐ 26 Petition for Civil Asset Forfeiture (Vehicle)
- ☐ 27 Petition for Civil Asset Forfeiture (Currency)
- ☐ 28 Petition for Civil Asset Forfeiture (Other)

- ☐ 15 Libel of Information
- ☐ 19 Enter Administrative Order as
  Judgment [ D.C. Code §
  2-1802.03 (h) or 32-151.9 (a)]
- ☐ 20 Master Meter (D.C. Code §
  42-3301, et seq.)

- ☐ 21 Petition for Subpoena
  [Rule 28-I (b)]
- ☐ 22 Release Mechanics Lien
- ☐ 23 Rule 27(a)(1)
  (Perpetuate Testimony)
- ☐ 24 Petition for Structured Settlement
- ☐ 25 Petition for Liquidation

**D. REAL PROPERTY**

- ☐ 09 Real Property-Real Estate
- ☐ 12 Specific Performance
- ☐ 04 Condemnation (Eminent Domain)
- ☐ 10 Mortgage Foreclosure/Judicial Sale
- ☐ 11 Petition for Civil Asset Forfeiture (RP)

- ☐ 08 Quiet Title
- ☐ 25 Liens: Tax / Water Consent Granted
- ☐ 30 Liens: Tax / Water Consent Denied
- ☐ 31 Tax Lien Bid Off Certificate Consent Granted

_____
Attorney's Signature

August 23, 2019
_____
Date



**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**
**Civil Actions Branch**
500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001
Telephone: (202) 879-1133 • Website: www.dccourts.gov

3534 EAST CAP VENTURE, LLC
Vs.                                                C.A. No.      2019 CA 005590 B
WESTCHESTER FIRE INSURANCE COMPANY et al

## INITIAL ORDER AND ADDENDUM

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("Super. Ct. Civ. R.") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the summons, the complaint, and this Initial Order and Addendum. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in Super. Ct. Civ. R. 4(m).

(3) Within 21 days of service as described above, except as otherwise noted in Super. Ct. Civ. R. 12, each defendant must respond to the complaint by filing an answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in Super. Ct. Civ. R. 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an initial scheduling and settlement conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference _once_, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than seven business days before the scheduling conference date.
No other continuance of the conference will be granted except upon motion for good cause shown.

(6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each judge's Supplement to the General Order and the General Mediation Order. Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

Chief Judge Robert E. Morin

Case Assigned to: Judge ROBERT R RIGSBY
Date:   August 26, 2019
Initial Conference: 10:00 am, Friday, November 22, 2019
Location:   Courtroom 201
            500 Indiana Avenue N.W.
            WASHINGTON, DC 20001

CAIO-60

## ADDENDUM TO INITIAL ORDER AFFECTING
## ALL MEDICAL MALPRACTICE CASES

In accordance with the Medical Malpractice Proceedings Act of 2006, D.C. Code § 16-2801, et seq. (2007 Winter Supp.), "[a]fter an action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ("ISSC"), prior to any further litigation in an effort to reach a settlement agreement. The early mediation schedule shall be included in the Scheduling Order following the ISSC. Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC." D.C. Code § 16-2821.

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator. Information about the early mediation date also is available over the internet at https://www.dccourts.gov/pa/. To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. D.C. Code § 16-2825 Two separate Early Mediation Forms are available. Both forms may be obtained at www.dccourts.gov/medmalmediation. One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator. Both forms also are available in the Multi-Door Dispute Resolution Office, Suite 2900, 410 E Street, N.W. Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. *Pro se* Plaintiffs who elect not to eFile may file by hand in the Multi-Door Dispute Resolution Office.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation. D.C. Code § 16-2823(a). If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following persons are required by statute to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case. D.C. Code § 16-2824.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code§ 16-2826. Any Plaintiff who is *pro se* may elect to file the report by hand with the Civil Actions Branch. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief    Judge    Robert    E.    Morin

Filed
D.C. Superior Court
08/29/2019 01:59BM
Clerk of the Court

## IN THE SUPERIOR COURT FOR DISTRICT OF COLUMBIA
### (Civil Division)

**3534 East Cap Venture, LLC**       \*
3050 K Street, NW
Suite 125       \*
Washington, DC 20007

     \*

        Plaintiff,

     v.       \*   Case No.:   2019 CA 005590 B

**Westchester Fire Insurance Company**    \*
a Chubb Company
c/o Chubb North American Claims    \*      JURY TRIAL DEMANDED
PO Box 5122
Scranton, PA 18505-0554    \*

Serve: C T CORPORATION SYSTEM    \*
     4701 Cox Road, Suite 285
     Glen Allen, Virginia 23060    \*

**Endurance American Insurance Company**
750 3rd Avenue    \*
New York, NY 10017

   \*

Serve: THE CORPORATION TRUST COMPANY
     Corporation Trust Center    \*
     1209 Orange Street
     New Castle, DE 19801    \*

       Defendant.    \*

---

### COMPLAINT

The Plaintiffs, 3534 East Cap Venture, LLC, (collectively the "Plaintiff" and/or "Insured"), by and through counsel, files this Complaint against Westchester Fire Insurance Company, a Chubb Company (hereinafter "Chubb"), and against Endurance American Insurance Company (hereinafter "Endurance")(collectively Chubb and Endurance shall be referred to as the "Defendants" or "Insurers") and in support thereof, states and alleges the following:

## PARTIES

1.     Plaintiff 3534 East Cap Venture, LLC is a limited liability company formed in the District of Columbia.

2.     3534 East Cap Venture, LLC under the insurance policies at issue herein is deemed to be the sole and irrevocable agent of each insured under the insurance policies at issue for the purpose of the insurance, including as respect to adjustment and payment of claims.

3.     3534 East Cap Venture, LLC has an insurable interest in the subject matter of this suit, and is the owner of the property on which the damage occurred as set forth below, and is the real party in interest in connection with this claim.

4.     Upon information and belief, the Defendant, Westchester Fire Insurance Company, a Chubb Company ("Chubb" or collectively with Endurance is the "Insurer"), is a corporation, which is incorporated under the laws of the State of Pennsylvania and having its principal place of business in Pennsylvania.

5.     Upon information and belief, the Defendant, Endurance American Insurance Company ("Endurance" or collectively with Chubb the "Insurer"), is a corporation, which is incorporated under the laws of the State of Delaware and having its principal place of business in Delaware.

6.     Both Chubb and Endurance insured the Plaintiff with regard to a project located at 3534 E. Capital Street NE, Washington, DC 20019 (the "Insured Property").

2

7.     Westchester Fire Insurance Company, a Chubb Company participates in the insurance on a 50% basis with Endurance American Insurance Company participating for the other 50%.

8.     Each of the Defendants wrote their respective insurance policies, which wording was chosen by the Defendants and not by the Plaintiff.

9.     The Court has subject matter jurisdiction over this matter pursuant to D.C. CODE ANN. § 11-921(a)(6). The court has personal jurisdiction over Defendants because the allegations and claims for relief herein arise from Defendants transaction of business performance of work in the District of Columbia.

10.    Venue is proper in the District of Columbia because the place of business of 3534 East Cap Venture, LLC is in the District of Columbia and because the events giving rise to this cause of action took place in the District of Columbia.

## THE POLICIES

11.    Chubb issued policy no. I11132479 001 covering the Insured Property, a copy of which is attached hereto as Exhibit 1.

12.    Endurance issued policy no. IMU100120131-00 covering the Insured Property, a copy of which is attached hereto as Exhibit 2.

13.    The policies provided builders risk coverage for the Insured Property.

14.    The Policies generally provide the same coverages by each of the Defendants, each of which policy provides coverage for the claim described below.

3

15.     The policies include a broad insuring agreement in which each of the Defendants agreed to provide coverage which "insures against direct physical LOSS to property of every kind and description intended to become a permanent part of, or be consumed in, the construction, fabrication, assembly, installation, erection or alteration of the INSURED PROJECT, as described in the Declarations and for which values have been declared and deposit premium paid."

16.     The INSURED PROJECT, in this case, is the Insured Property described herein.

17.     At all times relevant hereto all premiums for the insurance coverage provided by the Insurers have been paid.

18.     The Policies provide coverage for occurrences and defines occurrence to include "*All LOSS attributable directly or indirectly to one originating cause, event, incident or repeated exposure to the same originating cause, event or incident, or to one series of similar originating causes, events, incidents or repeated exposures to the same originating cause, event or incident first occurring in the Policy period. All such LOSS will be treated as one OCCURRENCE, unless a specific period of time is included in this Policy. The most the Company will pay for LOSS in any one OCCURRENCE is the applicable Limit of Insurance shown on the Declarations*"

19.     The Policies provide coverage for Water Damage which is defined as "*All water damage, except LOSS caused by or resulting from the peril of FLOOD.*"

20.     The water damage for which claim was made did not include Flood.

4

## FACTS APPLICABLE TO ALL COUNTS

21.     Plaintiff has an insurable interest in the Project located at 3534 E. Capital Street NE, Washington, DC 20019 at which it was developing and constructing residential housing units (the "Project").

22.     The Project included the construction of a new residential building to include four above-grade levels of residential units.   The Plaintiff had retained McCullough Construction LLC to provide construction services for the construction of the building covered by the builders risk insurance provided by the Defendants, and which construction company was an additional named insured under the Policies.

23.     The construction of the building included a typical exterior wall construction which generally consisted of, from exterior to interior, fiber cement siding or brick cladding, TYPAR building Wrap (Typar), OSB sheathing, kraft-paper-faced batt insulation set between studs, and interior gypsum finishes.

24.     After there had been substantial work done on the Project, including the building of the structure through the partial installation of drywall, McCullough reported water damage occurring to the building.

25.     During construction, while the building was only partially completed, water damage occurred at locations within the building in various stages in construction.

26.     The water damage occurred at various locations which were under various stages of construction.

27.     The water damage resulted and/or ensued from covered causes of loss. Alternatively the water damage is covered by the policy directly as a direct physical loss ensuing from other causes, and is covered by the policy, including, but not limited to, water damage ensuing or resulting from penetrations in the building's exterior shell, and/or resulting from the absence of a vapor barrier, and/or resulting from changes in temperature, all of which, or a combination of which, resulted in water damage causing direct physical loss to the Plaintiff.

28.     The water damage initially manifested and was discovered as liquid water dripping out from behind the Typar and over the exterior surface of the OSB sheathing.

29.     Water damage further occurred to the insulation, interior of the building and to other building components.

30.     Substantial water damage occurred to the Insured Property and notice was given to the Insurers in a timely manner causing the Plaintiff to have to undertake substantial work to the Insured Property at great cost and expense (the "Loss").

31.     After notice was given to the Insurers, both Chubb and Endurance jointly retained the adjusting firm of Sedgwick to act as its agent and adjuster on the loss.

32.     The Defendants shortly after notice sent out a letter which stated that "there is a question whether coverage under this policy applies to this occurrence" and which cited to a number of policy provisions, none of which would operate to preclude coverage for this matter.

33.     In in its initial response, the Insurers further advised that the Plaintiff "may wish to discuss this matter with your personal attorney."

34.     The Defendants have misrepresented the provisions of their policy to the Plaintiff, which misrepresentations included intentionally omitting policy language which actually confirmed and provided coverage, from the quoted sections of the policies in Defendants' letter to the Plaintiff.

35.     The Defendants acts and omissions aforesaid constitute a breach of their respective contracts, including a breach of the duty of good faith and fair dealing owed by each Defendant to their insureds.

36.     The Plaintiff responded to the letter through its public adjuster, a copy of which response is attached hereto as Exhibit 3.

37.     By letter dated July 16, 2019, the Defendants wrongfully denied the claim stating, "the Insurers have instructed Sedgwick to inform you that the policy will not respond to any related costs for the water damage discovered at the loss location."

38.     The policy provides coverage for water damage of the type sustained.

39.     The Insurer has wrongfully refused to pay the claim.

40.     The Defendant wrongfully denied this claim for the purpose of exerting economic duress upon its insured to leverage a better resolution for itself, and expressed such intent to and through the Defendants agency after this claim was made.

41.     The Defendants actions in denying this claim, and in denying this claim despite knowing that there is coverage, for the purpose of enhancing its settlement position, is a breach of the Defendants duty of good faith and fair dealing owed to the Plaintiff as its insured.

42.     The acts and omissions of the Defendants constitute a breach of contract.

43.     The Plaintiff has been damaged by the Defendants breach of contract.

44.     Plaintiff has satisfied all conditions precedent, if any, to the filing of a claim and this lawsuit.   In the alternative, the Defendants have waived conditions precedent, if any, to the filing of a claim and this lawsuit.

### COUNT I
### (BREACH OF CONTRACT OF INSURANCE)

45.     Paragraphs 1-44 are incorporated herein.

46.     The Policies constitute a contract between the Plaintiff and the Defendants.

47.     All applicable premiums due under the policy had been paid as of the time of the Loss.

48.     The Defendants breached the policy by wrongfully denying the Plaintiff's claim, and by failing to pay for the Loss

49.     The Plaintiffs have substantially performed all obligations under the Policy.

50.     The Defendants have breached the policy, and as a direct result of that breach, the Plaintiff has sustained damages in an amount no less than 2 million dollars.

51.     The liability of the Defendants is joint and several.

WHEREFORE, the Plaintiff, 3534 East Cap Venture, LLC, demands judgment it their behalf, against the Defendants Westchester Fire Insurance Company, a Chubb Company and against Endurance American Insurance Company jointly and severally for compensatory damages in an amount to be proven at trial, plus interest, attorneys' fees, costs of suit, and other relief that the Court deems appropriate.

Respectfully submitted,

3534 East Cap Venture, LLC
By Counsel

/s/ Erik B. Lawson, Esquire
Erik B. Lawson, Esquire
DC Bar No.: 1019059
C. Thomas Brown, Esquire
**SILVER & BROWN**
A Professional Corporation
10621 Jones Street
Suite 101
Fairfax, Virginia 22030
(703) 591-6666
(703) 591-5618 – Facsimile
erik@virginia-lawyers.net
tom@virginia-lawyers.net
*Counsel for Plaintiffs*

# EXHIBIT 1

## Common Policy Declarations

# *Westchester*

A Chubb Company

Policy Number: I11132479 001
Named Insured & Mailing Address:
**MRP Realty**
**3050 K Street, NW, Suite 125**
**Washington, DC 20007**

Company Name: **Westchester Fire Insurance Company**
Producer's Name & Address:
**AMWINS BROKERAGE OF GEO**
**3630 PEACHTREE ROAD NE SUITE 1700**
**ATLANTA, GA 30326**
**277387  -  New**

---

**General Policy Information**

| | |
|---|---|
| Business Description: | **Residential Construction** |
| When Coverage Begins: | **11/10/2017**   12:01 A.M. Local Time at Named Insured's Address |
| When Coverage Ends: | **03/20/2019**   12:01 A.M. Local Time at Named Insured's Address |

**In return for the payment of premium, and subject to all the terms and conditions of this policy, we agree to provide the insurance as stated in this policy.**

The premium for this policy is indicated below next to the applicable Coverage Form(s).

*Coverage Form*

| | | |
|---|---|---|
| BR Contract 10.10.16 | $ | 62,167 |
| TRIPRA | $ | 2,487 |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| Total Premium: | $ | 64,654 |
| Total Assessments, Fees, Surcharges, Taxes: | $ | 0 |
| Total Amount Due: | $ | 64,654 |
| Minimum Earned Premium: | $ | 16,164 |

---

**Attached Forms Information**     See Forms Schedule CPfs2

---

**Authorization Information**

Date: 2/8/2018

JOHN J. LUPICA, President
Authorized Representative

---

These Declarations together with the Coverage Declarations, Common Policy Conditions and Coverage Conditions (if applicable), Coverage Form(s) and Forms and Endorsements, if any, issued to form a part thereof, complete the above numbered policy.

©Chubb. 2016. All rights reserved.

# *Forms Schedule*

Company: Westchester Fire Insurance Company
SYM:  IMC                              Policy ID: I11132479 001

| Policy Period | When Coverage Begins: | 11/10/2017 | 12:01 A.M. Local Time At Named Insured's Address |
|---|---|---|---|
| | When Coverage Ends: | 03/20/2019 | 12:01 A.M. Local Time At Named Insured's Address |

| Applicable to all Coverage Parts | Form No. and Description |
|---|---|
| | BB-5W58a (09/11)-Common Policy Declarations |
| | ALL-21101 (11/06)-Trade or Economic Sanctions Endorsement |
| | TR-45231 (01/15)-Policyholder Disclosure Notice Of Terrorism Insurance Coverage |
| | ALL-20887 (10/06)-CHUBB Producer Compensation Practices & Policies |
| | IL P 001 (01/04)-U.S. Treasury Departments' Office of Foreign Assets Control ("OFAC") Advisory Notice to Policyholders |
| | CC-1K11h (03/14)-Signatures |

| Commercial Inland Marine | Form No. and Description |
|---|---|
| | IL 02 78 (09/08)-District of Columbia Changes - Cancellation And Nonrenewal |
| | IL 09 52 (01/15)-Cap on Losses From Certified Acts Terrorism |
| | MS-61496 (11/17)-BR Contract 10.10.16 |
| | MA-608255p (04/15)-Claims Directory Property and Inland Marine |

# TRADE OR ECONOMIC SANCTIONS ENDORSEMENT

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| MRP Realty | | | |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| IMC | I11132479 001 | 11/10/2017 to  03/20/2019 | |
| Issued By (Name of Insurance Company) | | | |
| Westchester Fire Insurance Company | | | |

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This insurance does not apply to the extent that trade or economic sanctions or other laws or regulations prohibit us from providing insurance, but not limited to, the payment of claims.  All other terms and conditions of policy remain unchanged.

Authorized Agent

ALL-21101 (11-06) Ptd. in U.S.A.

IL 02 78 09 08

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# DISTRICT OF COLUMBIA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART

**A.** Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following:

We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least 30 days before the effective date of cancellation. At least 5 days before sending notice to the first Named Insured, we will notify the agent or broker, if any, who wrote the policy.

If this policy has been in effect for 30 days or less and is not a renewal of a policy we issued, we may cancel this policy for any reason.

If this policy has been in effect more than 30 days, or if this policy is a renewal of a policy we issued, we may cancel this policy only for one or more of the following reasons:

**1.** You have refused or failed to pay a premium due under the terms of the policy;

**2.** You have made a material and willful misstatement or omission of fact to us or our employees, agents or brokers in connection with any application to or claim against us;

**3.** You have transferred your property or other interest to a person other than you or your beneficiary, unless the transfer is permitted under the terms of the policy; or

**4.** The property, interest or use of the property or interest has materially changed with respect to its insurability.

**B.** The following is added:

**NONRENEWAL**

We may elect not to renew this policy by mailing or delivering written notice of nonrenewal to the first Named Insured's last mailing address known to us. We will mail or deliver the notice at least 30 days before the expiration of the policy. At least 5 days before sending notice to the first Named Insured, we will notify the agent or broker, if any, who wrote the policy. If notice is mailed, proof of mailing will be sufficient proof of notice. Delivery of the notice will be the same as mailing.

            © ISO Properties, Inc., 2007

IL 09 52 01 15

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
STANDARD PROPERTY POLICY

**A. Cap On Certified Terrorism Losses**

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

1. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**B. Application Of Exclusions**

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this Coverage Part or Policy, such as losses excluded by the Nuclear Hazard Exclusion or the War And Military Action Exclusion.

© Insurance Services Office, Inc., 2015

# CHUBB°

MRP Realty
Policyholder

## POLICYHOLDER DISCLOSURE
## NOTICE OF TERRORISM
## INSURANCE COVERAGE

Coverage for acts of terrorism is included in your policy. You are hereby notified that under the Terrorism Risk Insurance Act, as amended in 2015, the definition of act of terrorism has changed.  As defined in Section 102(1) of the Act: The term "act of terrorism" means any act or acts that are certified by the Secretary of the Treasury—in consultation with the Secretary of Homeland Security, and the Attorney General of the United States—to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.  Under your coverage, any losses resulting from certified acts of terrorism may be partially reimbursed by the United States Government under a formula established by the Terrorism Risk Insurance Act, as amended.  However, your policy may contain other exclusions which might affect your coverage, such as an exclusion for nuclear events.  Under the formula, the United States Government generally reimburses 85% through 2015; 84% beginning on January 1, 2016; 83% beginning on January 1, 2017; 82% beginning on January 1, 2018; 81% beginning on January 1, 2019 and 80% beginning on January 1, 2020, of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage. The Terrorism Risk Insurance Act, as amended, contains a $100 billion cap that limits U.S. Government reimbursement as well as insurers' liability for losses resulting from certified acts of terrorism when the amount of such losses exceeds $100 billion in any one calendar year. If the aggregate insured losses for all insurers exceed $100 billion, your coverage may be reduced.

The portion of your annual premium that is attributable to coverage for acts of terrorism is $2,487 , and does not include any charges for the portion of losses covered by the United States government under the Act.



**Chubb Producer Compensation
Practices & Policies**

Chubb believes that policyholders should have access to information about Chubb's practices and policies related to the payment of compensation to brokers and independent agents.  You can obtain that information by accessing our website at http://www.chubbproducercompensation.com or by calling the following toll-free telephone number: 1-866-512-2862.

IL P 001 01 04

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

© ISO Properties, Inc., 2004

BR Contract 10.10.16

## PARTICIPATION PAGE

In consideration of the premium charged, the subscribers hereto, hereinafter referred to as the Company(ies), do severally, but not jointly, agree to indemnify the Insured for the amount recoverable in accordance with the terms and conditions of the Policy, pages 1 – 42.

Provided that:

1. The collective liability of the Company(ies) shall not exceed the Limit of Liability or any appropriate Sublimit of Liability or any Annual Aggregate limit.
2. The liability of each of the Company(ies) shall not exceed the Limit to the pro-rata percentage of liability set against its name.

NAMED INSURED:  MRP Realty

Lines Bound:

| Company | Policy Number | Participation | Deposit Premium | Authorized Signature |
|---|---|---|---|---|
| Westchester Fire Insurance Company | I11132479 001 | 50% or $14,000,000 part of $28,000,000 | $64,654 | |
| Endurance American Insurance Company | IMU100120131-00 | 50% or $14,000,000 part of $28,000,000 | $64,654 | |

<u>Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limits or conditions of the policy except as herein above set forth.  Any changes to the terms and conditions of this policy (ies) must be accepted in writing by each of the subscribing insurers before any coverage change becomes effective.</u>

MS 61496 (11/17)

BR Contract 10.10.16

## CONSTRUCTION RISK DECLARATIONS

NAMED INSURED & Mailing Address

**MRP Realty
3050 K Street, NW
Suite 125
Washington, DC 20007**

Producer's Name & Address

**AmWINS Brokerage of Georgia, LLC
3630 Peachtree Road NE
Suite 1700
Atlanta, GA  30326**

| General Policy Information | | |
|---|---|---|
| | When Coverage Begins: | November 10, 2017  12:01 A.M. Local Time at the NAMED INSURED's Address |
| | When Coverage Ends: | March 20, 2019  12:01 A.M. Local Time at the NAMED INSURED's Address |

**In return for the payment of premium and subject to all the terms and conditions of this Policy, the Company agrees to provide the insurance as stated in this Policy.**

Whenever "NCP" is shown below it denotes no coverage has been purchased and no coverage is provided. Whenever "NA" is shown below it denotes "Not Applicable" to that coverage, deductible, Sub-limit of Insurance, or other policy provision.

---

### I. Description, Location and Estimated Completed Value of the INSURED PROJECT at Policy Inception

A. Estimated construction contract price:  $24,750,000

B. Value of all property not declared in A. above to be insured by this Policy and intended for installation under the construction contract, whether supplied by the INSURED PROJECT owner(s) or others(s): **NCP**

C. Estimated Completed Value of the INSURED PROJECT at Policy Inception: $24,750,000

D. INSURED PROJECT Name: 3534 E. Capitol St. NE, Washington, DC 20019

E. INSURED PROJECT Description/Construction: 2 attached 4 story mixed use/multifamily wood frame structures with 1 level of below grade parking.  The below-grade parking and ground floor podium levels will consist of concrete construction.  The above grade residential/retail floors are anticipated to be constructed with wood.

F. INSURED PROJECT Site: 3534 E. Capitol St. NE, Washington, DC 20019

---

### II. Limits of Insurance

$    14,000,000 (50%) part of 28,000,000  per OCCURRENCE

The Company will pay no more for direct physical LOSS in any one OCCURRENCE than the above Limit of Insurance.  In addition, the Company will not pay for more than its proportionate share of the following Sub-limits of Insurance and Annual Aggregate Sub-limits of Insurance, which are part of, and not in addition to, the Limit of Insurance above:

BR Contract 10.10.16

**Sublimits of Insurance**

| | | | |
|---|---|---|---|
| A. | Physical LOSS to the INSURED PROJECT | $ | 24,750,000 |
| B. | Delay in Opening (per Endorsement Number 1) | $ | 3,250,000 |
| C. | EXISTING PROPERTY | $ | NCP |
| D. | Damage to EXISTING PROPERTY - Limited | $ | NCP |
| E. | Property in Transit per Conveyance | $ | 500,000 |
| F. | Temporary Off-site Storage and Off–site Staging Areas, any one location | $ | 500,000 |
| G. | Expediting and Extra Expenses | | 20% of the insured physical LOSS, or $1,000,000; whichever is less |
| H. | Debris Removal | | 25% of the insured physical LOSS, or $2,500,000; whichever is less |
| I. | Trees, Shrubs and Plants | $ | 100,000 |
| J. | Protection Service Charges | $ | 100,000 |
| K. | Fire Protective Equipment Recharge | $ | 100,000 |
| L. | Valuable Papers and Records | $ | 250,000 |
| M. | Claim Preparation Expenses | $ | 50,000 |
| N. | Protection of Insured Property Pre-LOSS | $ | 500,000 |
| O. | Architects and Engineers Fees | $ | 250,000 |
| P. | Office and Construction Trailers/Semi-trailers and their Contents | $ | 50,000 |
| Q. | Ordinance or Law | $ | 2,500,000 |
| R. | TESTING | $ | Included |
| S. | Business Personal Property | $ | Included |
| T. | Contract Penalty | $ | 10,000 |
| U. | TOWER CRANE Re-Erection Expense | $ | 50,000 |
| V. | Errors or Omissions | $ | 100,000 |
| W. | NAMED WINDSTORM | $ | 28,000,000 |

MS 61496 (11/17)

**Annual Aggregate Sub-limits of Insurance**

**If a Sub-limit of Insurance is shown below for FLOOD or EARTH MOVEMENT, the applicable Excluded Cause of LOSS contained in the CONSTRUCTION RISK COVERAGE FORM is deleted.**

| | | | | |
|---|---|---|---|---|
| A. | FLOOD | Per OCCURRENCE | $ | 10,000,000 |
| | | Annual Aggregate | $ | 10,000,000 |
| B. | EARTH MOVEMENT | Per OCCURRENCE | $ | 28,000,000 |
| | | Annual Aggregate | $ | 28,000,000 |
| C. | Pollution or Contamination Clean-Up | Per OCCURRENCE | $ | 100,000 |
| | | Annual Aggregate | $ | 100,000 |
| D. | Limited Coverage for FUNGUS, Wet Rot, Dry Rot or Bacteria | Per OCCURRENCE | $ | 100,000 |
| | | Annual Aggregate | $ | 100,000 |

**III. Escalation Clause**     The Sub-limit of Insurance for Physical LOSS to the INSURED PROJECT stated above is considered an estimate.   Should any increase in the Estimated Completed Value of the INSURED PROJECT occur, the Sub-limit of Insurance for Physical LOSS to the INSURED PROJECT will automatically increase to reflect the change concurrently, subject to a maximum increase of 5% of the original Sub-limit of Insurance stated above.  The Per OCCURRENCE Limit of Insurance stated above will increase by the same amount.

This clause does not apply to other Sub-limits of Insurance, including Delay in Opening, if endorsed to this Policy, nor does it apply to the Annual Aggregate Sub-limits of Insurance.

## IV. Deductibles

$10,000 direct physical LOSS in any one OCCURRENCE except;

| | | | |
|---|---|---|---|
| A. | LOSS in any one OCCURRENCE caused by or resulting from FLOOD | $ | 25,000 |
| | Subject to a maximum deductible of: | N/A | |
| B. | LOSS in any one OCCURRENCE caused by or resulting from EARTH MOVEMENT | $ | 25,000 |
| | Subject to a maximum deductible of: | N/A | |
| C. | LOSS in any one OCCURRENCE caused by or resulting from NAMED WINDSTORM | $ | 25,000 |
| | Subject to a maximum deductible of: | N/A | |
| D. | LOSS in any one OCCURRENCE caused by or resulting from TESTING | $ | 25,000 |
| E. | LOSS in any one OCCURRENCE caused by or resulting from WATER DAMAGE | $ | 50,000 |
| | Subject to a maximum deductible of: | N/A | |

MS 61496 (11/17)

## V. Extension of Term

This Policy may be extended per Endorsement Number 4. The NAMED INSURED must request these extensions in writing and receive acceptance from the Company prior to the original expiration date of this Policy. If the NAMED INSURED does not provide the aforementioned written extension request(s), coverage provided hereunder shall terminate on the original expiration date stated in this Policy.

## VI. Additional NAMED INSURED Information

All owners, all contractors and subcontractors of every tier, and tenants at the project location, as required by any contract, subcontract for the INSURED PROJECT, and then only as their respective interests may appear are recognized as Additional NAMED INSUREDS hereunder. As respects architects, engineers, manufacturers and suppliers, their interest is limited to their site activities only.

Additional NAMED INSUREDS as provided above, may be endorsed to this Policy or shown on ACORD Certificates of Insurance (or equivalent) issued by Marsh USA copies of which must be forwarded and approved by the Company.

3534 East Cap Venture, LLC shall be deemed the sole and irrevocable agent of each and every Insured hereunder for the purpose of giving and receiving notices to/from the Company, giving Instruction to or agreeing with the Company as respects Policy alteration, for making or receiving payments of premium or adjustments to premium, and as respects the payment for claims.

## VI. Mortgagee and Loss Payee Information

NA

BR Contract 10.10.16

# CONSTRUCTION RISK COVERAGE FORM

Words and phrases that appear in CAPITALS are defined in this Policy. Refer to PART F. DEFINITIONS section in this Policy.

## PART A INSURING
## AGREEMENT

This Policy, subject to the terms, conditions and exclusions stated herein or endorsed hereto, insures against direct physical LOSS to property of every kind and description intended to become a permanent part of, or be consumed in, the construction, fabrication, assembly, installation, erection or alteration of the INSURED PROJECT, as described on the Declarations and for which values have been declared and deposit premium paid. If not covered by other insurance and if values have been declared to the Company for deposit premium calculation, this Insuring Agreement shall include coverage for TEMPORARY STRUCTURES.

## PART B
## LIMITS OF INSURANCE

The Company will pay no more for direct physical LOSS in any one OCCURRENCE than the amount stated on Section II. of the Declarations, subject to the following:

1.    Sub-limits of Insurance

      The Company will pay no more for direct physical LOSS in any one OCCURRENCE than the Sub-limit of Insurance stated on Section II of the Declarations for each applicable Coverage or Extension of Coverage.

      If a Sub-Limit of Insurance for NAMED WINDSTORM is stated on the Declarations that does not state "Included" or is less than the Limit of Insurance Per OCCURRENCE stated on the Declarations, the most the Company will pay for under this Policy in any one OCCURRENCE from a NAMED WINDSTORM for all Coverage(s) and Extensions of Coverage in or endorsed on this Policy, including the Delay in Opening Coverage, is the Sub-limit of Insurance for NAMED WINDSTORM stated on the Declarations.

2.    Annual Aggregate Sub-limits of Insurance

      Notwithstanding the foregoing, and irrespective of the stated Limit of Insurance or Sub-limits of Insurance on the Declarations, the most the Company will pay for direct physical LOSS in any one OCCURRENCE, and in the aggregate for direct physical LOSS from all OCCURRENCES in any one Policy year for all Coverage(s) and Extensions of Coverage in or endorsed on this Policy, including the Delay in Opening Coverage, is the Annual Aggregate Sub-limit(s) of Insurance stated on the Declarations.

These Sub-limits of Insurance and Annual Aggregate Sub-limits of Insurance are part of, and not in addition to, the Limit of Insurance per OCCURRENCE stated on the Declarations.

## PART C
## EXTENSIONS OF COVERAGE

This Policy, subject to all the terms, conditions and exclusions stated herein or endorsed hereto, is extended to insure the following extensions of coverage if a dollar value is stated in the applicable Sub-limit(s) of Insurance or Annual Aggregate Sub-limit(s) of Insurance on the Declarations.

1.    EXISTING PROPERTY

      The Company will pay for direct physical LOSS by an insured peril to the EXISTING PROPERTY at the INSURED PROJECT site.

MS 61496 (11/17)

For the purposes of this Extension of Coverage, EXISTING PROPERTY does not include any personal property or underground utilities of any kind.

2. Damage to EXISTING PROPERTY – Limited

The Company will pay for direct physical LOSS by an insured peril to the EXISTING PROPERTY at the INSURED PROJECT Site. Coverage for such EXISTING PROPERTY applies only: (1) when the insured property is contained within or is attached to the EXISTING PROPERTY; and (2) to the extent LOSS arises out of the contractor's performance of work on or within the EXISTING PROPERTY.

For the purposes of this Extension of Coverage, EXISTING PROPERTY does not include personal property or underground utilities of any kind.

The Company will not pay for LOSS to EXISTING PROPERTY caused by or resulting from the following:

A. Mechanical breakdown, including rupture or bursting caused by centrifugal force;
B. Electrical injury or disturbance caused by electrical currents artificially generated;
C. Interruption of incoming electricity, fuel, water, gas, steam, refrigerant or other services except as specifically covered in this policy or unless such interruption of services directly result in physical LOSS not otherwise excluded by this policy.
D. Explosion, rupture or bursting of steam boilers, steam pipes, steam turbines or steam engines owned, leased or operated under the Insured's (including Additional Insured's) control. Direct physical LOSS caused by or resulting from explosion of gases or fuel within the furnace or any fired vessel or within the flues or passages through which the gases or combustion pass is covered.
E. LOSS caused by or resulting from EARTH MOVEMENT, FLOOD, NAMED WINDSTORM or the peril of wind.
F. Any Delay in Opening coverage, including, but not limited to; Loss of RENTAL INCOME, Loss of BUSINESS INCOME, SOFT COSTS/ADDITIONAL EXPENSES.
G. Any Extension of Coverage for Expediting and Extra Expenses.

Exclusions A, B and C apply unless direct physical LOSS by an insured peril ensues and then this policy insures only such ensuing direct physical LOSS.

3. Property in Transit

Property in due course of transit that is intended to become a permanent part of, or be consumed in the INSURED PROJECT and subject to the following additional conditions:

A. Coverage shall attach upon commencement of loading and cease upon completion of unloading.

B. No coverage is provided for airborne shipments.

C. No coverage is provided for waterborne shipments except on coastal and inland waterways.

D. This Extension of Coverage shall be void if the NAMED INSURED enters into any   agreement with a carrier, releasing them from their common law or statutory liability or agreeing that this Policy shall in any way inure to the benefit of such carriers. However, the NAMED INSURED may, without prejudice to this Extension of Coverage, accept such bills of lading, receipts, or contracts of transportation as are ordinarily issued by carriers containing a limitation as to the value of insured property.

4. Temporary Off-Site Storage and Off-Site Staging Areas

Property to be used in, or incidental to, completion of the INSURED PROJECT while located in temporary off-site storage or off-site staging areas away from the INSURED PROJECT site anywhere within the Policy territory, excluding property:

A. Located at the manufacturer's or supplier's site while being manufactured or processed; or

BR Contract 10.10.16

B. While in due course of transit if such equipment is the property of, or in the care, custody and control of a manufacturer or supplier.

5. Expediting and Extra Expenses

In the event of direct physical LOSS insured hereunder, and occurring during the Policy period, the Company will pay for the reasonable and necessary extra costs to make temporary repairs, and to expedite the permanent repair or replacement of the insured property which is damaged by an insured peril; including additional wages for overtime, night work, and work on public holidays and the extra costs of express freight or other rapid means of transportation. In addition, the Company will pay for the reasonable and necessary Extra Expense incurred during the period of restoration and repair that are over and above the total costs that would normally have been incurred during the same period of time had no direct physical LOSS occurred. Extra Expense shall include equipment rental, emergency expenses, temporary use of property, demobilization and remobilization of equipment and facilities and other expenses necessarily incurred to reduce LOSS; excluding however, any coverage provided by the Delay in Opening Endorsement if endorsed to this Policy.

6. Debris Removal

The Company will pay the expense incurred in the removal of debris of the damaged insured property under this Policy, as a result of direct physical LOSS to insured property by an insured peril.

The Company will not pay the expense to:

A. Extract CONTAMINANTS OR POLLUTANTS from the debris; or

B. Extract CONTAMINANTS OR POLLUTANTS from land or water; or

C. Remove, restore or replace contaminated or polluted land or water; or

D. Remove or transport any property or debris to a site for storage or decontamination required because the property or debris is affected by CONTAMINANTS OR POLLUTANTS whether or not such removal, transport, or decontamination is required by law or regulation.

It is a condition precedent to recovery under this Extension of Coverage that the Company shall have paid or agreed to pay for direct physical LOSS to the insured property hereunder, and that the NAMED INSURED shall give written notice to the Company of intent to claim for cost of removal of debris not later than twelve months after the date of such direct physical LOSS.

Upon exhaustion of the Debris Removal Sub-limit of Insurance and the per OCCURRENCE Limit of Insurance shown on the Declarations, the Company will pay up to an additional $2,500,000 per OCCURRENCE and in the aggregate for debris removal.

7. Trees, Shrubs and Plants

The Company will pay for direct physical LOSS by an insured peril to trees, shrubs and plants, which are part of the INSURED PROJECT, and which have been installed, are in the process of being installed or awaiting installation at the INSURED PROJECT site.

8. Protection Service Charges

When a fire department, police department or other governmental authority is called to save or protect insured property from direct physical LOSS by an insured peril, the Company will pay the charges that result from:

A. A written contract or agreement signed prior to the direct physical LOSS; or

B. Required by local ordinance.

MS 61496 (11/17)

BR Contract 10.10.16

9.    Fire Protective Equipment Recharge

The Company will pay for the cost to recharge or refill any fire protective equipment owned, in the control of, or used to protect insured property of the NAMED INSURED, when discharged:

A.  To prevent or control direct physical LOSS by an insured peril;

B.  Accidentally; or

C.  As a result of malfunction of the equipment.

In respect of items B. and C. above, the Company will pay for amounts in excess of amounts recoverable under any manufacturer's or supplier's warranty.

10.    Valuable Papers and Records

The Company will pay the cost incurred by the NAMED INSURED to research, replace, restore, or copy those valuable papers, records, documents, blueprints, plans or drawings that are directly related to the INSURED PROJECT, as a result of direct physical LOSS by an insured peril.

11.    Claim Preparation Expenses

The Company will pay reasonable expenses incurred by the NAMED INSURED for preparing and certifying details of a claim resulting from a direct physical LOSS which would be payable under this Policy, provided that the total amount of the direct physical LOSS exceeds the applicable Deductible. Claim Preparation Expenses do not include fees or expenses of general public adjusters, lawyers, or representatives or employees of any broker or agent, and do not include salary or wages of employees of the NAMED INSURED or any of its affiliates.

12.    Protection of Insured Property Pre-LOSS

A.  If it is necessary to protect or move insured property from an INSURED PROJECT site, off-site storage location or off-site staging area to preserve and protect it from imminently sustaining direct physical LOSS by an insured peril, the Company will pay for those reasonable and necessary expenses incurred by the NAMED INSURED in an effort to protect or remove insured property, including moving and storage expenses, but only to the extent that such expenses reduced LOSS which would otherwise be recoverable under this policy.

B.  If, as a result of the NAMED INSURED's efforts to protect the insured property, no direct physical LOSS to the INSURED PROJECT occurs; the deductible applicable to this Extension of Coverage is the deductible stated on the Declarations for direct physical LOSS in any one OCCURRENCE or $100,000, whichever is less.

C.  If direct physical LOSS to the INSURED PROJECT does occur, the deductible applicable to the cause of LOSS as shown on the Declarations shall apply, and a separate deductible for this Extension of Coverage shall not apply.  However, if the direct physical LOSS and expenses incurred hereunder do not exceed the deductible shown on the Declarations for the applicable cause of LOSS, the deductible applicable to this Extension of Coverage is the deductible stated on the Declarations for direct physical LOSS in any one OCCURRENCE or $100,000, whichever is less.

13.    Architects and Engineers Fees

In the event of direct physical LOSS by an insured peril and occurring during the Policy period, the Company will pay necessary and reasonable compensation for architect's and engineer's services and expenses incurred by the NAMED INSURED in connection with the repair or replacement of the INSURED PROJECT, but excluding any costs relating to improvements and betterments to any insured property.

BR Contract 10.10.16

This Extension of Coverage shall not apply to and shall not modify, amend or alter the Delay in Opening Architect and Engineers Fees Coverage when a value is stated and endorsed to this Policy.

14.    Office and Construction Trailers/Semi-trailers and their Contents

The Company will pay for direct physical LOSS to office and construction trailers/semi-trailers and their contents, owned by the NAMED INSURED or in the NAMED INSURED's care, custody or control while in, on or within 1,000 feet of the INSURED PROJECT site.

This coverage includes furniture, fixtures, data processing equipment, fax systems and phone systems but this Extension of Coverage does not apply to direct physical LOSS to tools or other contractor's equipment, jewels, jewelry, watches, money, stamps, deeds, letters of credit, documents, tickets, plans, blueprints, specifications or other valuable papers.

This Policy is excess over any other valid or collectible insurance available to the owner of the property.

15.    Ordinance or Law

If the repair of direct physical LOSS to insured property caused by an insured peril becomes    subject to the enforcement of any ordinance or law that is in force at the time of direct physical LOSS and that:

A.    Requires the demolition of parts of the undamaged insured property; or

B.    Regulates the construction or repair of damaged insured property;

then the Company will pay for:

1.    The cost of demolishing the undamaged insured property and clearing the site of debris from such demolition; and

2.    The value of such undamaged part of the insured property which must be demolished; and

3.    The increased cost of repair and/or reconstruction of the damaged and undamaged insured property on the same site and limited to the minimum requirements of such ordinance or law regulating the repair or reconstruction of the damaged insured property on the same site. However, the Company will not pay for any increased cost of repair or reconstruction unless the damaged insured property is actually rebuilt or replaced.

The Company will not pay the following costs:

i.    Cost of demolition or increased cost of repair or reconstruction, debris removal, or other consequential loss caused by the enforcement of any ordinance or law regulating asbestos or other hazardous material;

ii.    Cost of any governmental direction or request declaring that asbestos or other hazardous material present in, part of or utilized on any damaged or undamaged portion of insured property that can no longer be used for the purpose for which it was intended or installed and must be removed, modified or abated;

iii.    Cost of demolition or increased cost of repair or reconstruction, debris removal, or other consequential loss caused by the enforcement of any ordinance or law regulating CONTAMINANTS OR POLLUTANTS; or

iv.    Cost of compliance with the enforcement of any ordinance or law which the NAMED INSURED or owner would have otherwise been required to comply by nature of such  ordinance or law in the absence of any direct physical LOSS covered by this Policy.

MS 61496 (11/17)

BR Contract 10.10.16

16.    **TESTING**

The Company will pay for direct physical LOSS to insured property by an insured peril while such property is undergoing TESTING during the TESTING PERIOD.

Each of the following is a condition precedent to coverage for TESTING:

A.  All specified protective materials, systems and instrumentation are installed, activated and operational.

B.  No supervisory or safety system has been deliberately circumvented, unless such circumvention is necessary for the conduct of testing activities as recommended by written testing procedures and/or manufacturer's specifications and provided that such circumvention does not extend beyond that necessary for conduct of said individual activities.

17.    **Business Personal Property**

The Company will pay for direct physical LOSS by an insured peril to business personal property intended to be placed in the INSURED PROJECT. This property is insured while in transit and while located at the INSURED PROJECT site. For the purposes of this Extension of Coverage, business personal property includes furniture and fixtures to be placed in but not permanently installed as part of the INSURED PROJECT, including but not limited to business personal property such as beds, desks, chairs, dressers, nightstands, televisions and phones.

18.    **Contract Penalty**

If the first NAMED INSURED is a General Contractor, the Company will pay the applicable contract penalties the first NAMED INSURED is required to pay for late completion or non-completion of the INSURED PROJECT as a result of direct physical LOSS to insured property by an insured peril. The penalties must be specified in the construction contract, signed prior to the start of construction.

It is a condition precedent to recovery under this Extension of Coverage that the NAMED INSURED use due diligence and dispatch in restoring the damaged property to the condition existing prior to the LOSS.

This Extension of Coverage shall not apply to and shall not modify, amend or alter the Delay in Opening Coverage when a value is stated and endorsed to this Policy.

19.    **Reward**

At the Company's option, the NAMED INSURED may be reimbursed for rewards paid, other than to the NAMED INSURED, or any of the NAMED INSURED's partners, members, managers or officers, for information leading to the conviction of any one or more persons responsible for LOSS insured under this Policy. The Company will be the sole judge as to the payment and amount of the reimbursement.

The most the Company will pay in any one OCCURRENCE under this Extension of Coverage is $100,000.

20.    **TOWER CRANE Re-Erection Expense**

If a TOWER CRANE not covered under this Policy is damaged as a result of direct physical LOSS by an insured peril while at the INSURED PROJECT Site, the Company will pay the reasonable and necessary costs incurred by the NAMED INSURED to re-erect a TOWER CRANE if necessary to complete the INSURED PROJECT.

This Extension of Coverage does not apply to and shall not modify, amend or alter any other Extension of Coverage or Delay in Opening coverage insured by this Policy and such coverage is expressly excluded herein.

21.  Pollution or Contamination Clean-Up

The Company will pay necessary and reasonable expenses incurred by the NAMED INSURED to clean-up and remove CONTAMINANTS OR POLLUTANTS from land or water confined to the INSURED PROJECT site(s) if the release, discharge or dispersal is caused by or results in direct physical LOSS that occurs during the Policy period, and which is not excluded by this Policy.

The Company will not pay for the costs to test for, monitor or assess the existence, concentration or effects of CONTAMINANTS OR POLLUTANTS except for testing which is performed in the course of clean-up and removal of the CONTAMINANTS OR POLLUTANTS from the land or water.

No liability shall exist under this provision unless such expenses are reported to the Company within 180 days of the date of direct physical LOSS.

22.  Limited Coverage for FUNGUS, Wet Rot, Dry Rot or Bacteria

A.  The coverage described below in B. only applies when FUNGUS, wet rot, dry rot or bacteria results directly from an OCCURRENCE that is covered by this Policy, which takes place during the policy period and only if all reasonable means were used to save and preserve the property from further LOSS at the time of and after that OCCURRENCE.

B.  Under this Extension of Coverage, the Company will pay for:

1.  Direct physical LOSS to insured property at the INSURED PROJECT caused by FUNGUS, wet rot, dry rot or bacteria, including the cost of removal of the FUNGUS, wet rot, dry rot or bacteria;

2.  The cost to tear out and replace any part of a building or other insured property as needed to gain access to FUNGUS, wet rot, dry rot or bacteria covered by this Endorsement; and

3.  The cost of testing performed after removal, repair, replacement or restoration of the damaged insured property is completed, provided there is a reason to believe that FUNGUS, wet rot, dry rot or bacteria are present.

C.  The coverage provided herein does not increase any other applicable Limit of Insurance or Sub-limit of Insurance for the INSURED PROJECT.  If a particular OCCURRENCE results in LOSS by FUNGUS, wet rot, dry rot or bacteria, as well as other LOSS, the Company will not pay more, for the total of all LOSS, than the applicable Limit of Insurance per OCCURRENCE stated on the Declarations.

If there is covered LOSS to the INSURED PROJECT, not caused by FUNGUS, wet rot, dry rot or bacteria, loss payment will not be limited by the terms of this Extension of Coverage, except to the extent that FUNGUS, wet rot, dry rot or bacteria causes an increase in the LOSS. Any such increase in the LOSS will be subject to the terms of this Extension of Coverage.

23.  Errors or Omissions

If direct physical LOSS is not payable under this Policy solely due to an error or unintentional omission made by the NAMED INSURED:

A. in the description of where an INSURED PROJECT is physically located; or

B. in the reporting of an INSURED PROJECT;

this Policy is extended to cover such direct physical LOSS, to the extent it would have provided coverage had no such error or unintentional omission been made.

It is a condition of this Extension of Coverage that any error or unintentional omission must be reported by the NAMED INSURED to the Company in writing within 5 business days of discovery of such error or

omission by the NAMED INSURED's corporate officers or home office insurance department or risk manager.

This Extension of Coverage does not cover any property insured under any other provision of this Policy or under any other policy issued to the NAMED INSURED that is insured, coinsured or reinsured in whole or part by the Company or any of its affiliated companies, regardless of the exhaustion of any limit or sublimit of insurance.

Notwithstanding the foregoing, this Errors and Omissions clause shall not apply to and shall not modify, amend or alter the obligations of the NAMED INSURED as provided in the Reporting Endorsement attached to this Policy.

## PART D
## EXCLUSIONS

### Property Excluded

This Policy does not insure:

1.  Land and land values and the value of cut, fill and backfill materials existing at the INSURED PROJECT site prior to project commencement; however, to the extent included in the contract bid documents and declared for premium purposes, the value of fill and backfill materials purchased for use in the completion of the INSURED PROJECT is not excluded.

    Notwithstanding the foregoing, labor and material charges incurred to move, remove, place or otherwise handle cut, fill and backfill materials, whether insured or uninsured in the foregoing, are covered to the extent such charges are included in the contract bid documents and declared for premium purposes;

2.  Construction tools and equipment;

3.  Vehicles or equipment licensed for highway use, watercraft or aircraft;

4.  Railroad rolling stock;

5.  Water, animals of any kind, standing timber, and growing crops;

6.  Accounts, bills, currency, stamps, deeds, evidence of debt, checks, money, securities, or other property of a similar nature;

7.  EXISTING PROPERTY at the INSURED PROJECT site, unless the value of same is declared to the Company and if a Sub-limit of Insurance is shown on the Declarations;

8.  Property at locations other than at the INSURED PROJECT site, except Property that is in Transit or at Temporary Off-site Storage and Off-site Staging Areas if a Sub-limit of Insurance is shown on the Declarations;

9.  Prototype, developmental, used machinery and equipment or any catalysts while undergoing any form of TESTING;

10. Refractory linings and brickwork during TESTING from the time of the first application of heat, unless LOSS directly results from physical LOSS to other insured property by an insured peril;

11. TRANSMISSION AND DISTRIBUTION LINES outside of the INSURED PROJECT site.

12. Any property while located at any site which stores, processes or otherwise handles or makes use of radioactive materials unless reported to and accepted by the Company. The foregoing shall not apply to locations or property making use of radioactive isotopes contained within equipment used for diagnostic or testing purposes.

## Excluded Causes of LOSS

**This Policy does not insure LOSS caused directly or indirectly by any of the following, and such LOSS is excluded regardless of any other cause or event that contributes concurrently, or in sequence to the LOSS:**

1. A. Hostile or warlike action in time of peace or war, including action in hindering, combating, or defending against an actual, impending, or expected attack:

   1. By any government or sovereign power (de jure or de facto) or by any authority maintaining or using military, naval, or air forces; or

   2. By military, naval, or air forces; or

   3. By an agent of any such government, power, authority, or forces; it being understood that any discharge, explosion or use of any weapon of war employing nuclear fission or fusion will be conclusively presumed to be such a hostile or warlike action by such government, power, authority or forces;

   B. Insurrection, rebellion, revolution, civil war, usurped power, or action taken by governmental authority in hindering, combating, or defending against such occurrence.

2. LOSS, damage, costs, expenses, fines or penalties incurred or sustained by or imposed on any NAMED INSURED at the order of any government agency, court or authority arising from any cause whatsoever, except physical destruction of insured property by order of public authority to prevent spread of fire or explosion.

3. Nuclear reaction or radiation or radioactive contamination however caused. If fire ensues, liability is specifically assumed for direct physical LOSS by such ensuing fire, but not including any direct physical LOSS due to nuclear reaction, nuclear radiation or radioactive contamination.

4. Dishonest or criminal act committed by:

   A. the NAMED INSURED or of any of the NAMED INSURED's partners, employees, directors, trustees, or authorized representatives;

   B. a manager or a member, or their partners, employees, directors or authorized representatives, if the NAMED INSURED is a limited liability company;

   C. anyone else with an interest in the insured property, or their employees or representatives; or

   D. anyone else to whom the insured property in entrusted for any purpose.

   This Excluded Cause of LOSS applies whether or not such persons are acting alone or in collusion with other persons or such acts occur during the hours of employment.

   This Excluded Cause of LOSS does not apply to insured property that is entrusted to others who are carriers for hire or to acts of destruction by employees of the NAMED INSURED. But theft by employees of the NAMED INSURED is excluded.

5. Shortage found upon taking inventory.

6. Mysterious Disappearance.

7. Infestation, disease, freeze, drought and hail, weight of ice or snow or any damage caused by insects, vermin, rodents or animals, but only as respects Trees, Shrubs and Plants.

8.     Consequential loss, damage or expense of any kind or description including but not limited to loss of market or delay, liquidated damages, performance penalties, penalties for non-completion, delay in completion, or non compliance with contract conditions, whether caused by a peril insured or otherwise;

       This Excluded Cause of LOSS does not apply to the extent coverage is provided in the EXTENSIONS OF COVERAGE – Contract Penalty nor shall it exclude Delay in Opening Coverage when endorsed to this Policy.

9.     LOSS covered under any written or implied guarantee or warranty by any manufacturer or supplier.

10.    Asbestos Hazard:

       A.   Asbestos material removal unless the asbestos itself is damaged by fire, lightning, aircraft impact, explosion, riot, civil commotion, smoke, vehicle impact, windstorm or hail, vandalism, malicious mischief, leakage or accidental discharge from automatic fire protective systems.

       B.   Demolition or increased cost of reconstruction, repair, debris removal or loss of use necessitated by the enforcement of any law or ordinance regulating asbestos material.

       C.   Any governmental direction or request declaring that asbestos material present in or part or utilized on any undamaged portion of the insured property can no longer be used for the purpose for which it was intended or installed and must be removed or modified.

11.    LOSS caused by, resulting from, contributed to or made worse by actual, alleged or threatened release, discharge, escape or dispersal of CONTAMINANTS OR POLLUTANTS, all whether direct or indirect, proximate or remote or in whole or in part caused by, contributed to or aggravated by any physical damage insured by this Policy.

       Nevertheless, if fire is not excluded from this Policy and a fire arises directly or indirectly from the release, discharge, escape or dispersal of CONTAMINANTS OR POLLUTANTS, any covered LOSS which arises directly from that fire shall (subject to the terms, conditions and limitations of this Policy) be insured.

       This Excluded Cause of LOSS shall not apply when LOSS is directly caused by fire, lightning, aircraft impact, explosion, riot, civil commotion, vandalism, malicious mischief, smoke, vehicle impact, windstorm or hail. This Excluded Cause of LOSS shall also not apply when LOSS is directly caused by leakage or accidental discharge from automatic fire protective systems.

12.    The increased cost to comply with the enforcement of any ordinance or law that:

       A.   Requires the demolition of parts of undamaged insured property;

       B.   Regulates the construction or repair of damaged insured property;

       This Excluded Cause of LOSS does not apply to the extent coverage is provided in the EXTENSIONS OF COVERAGE – Ordinance or Law.

13.    LOSS, destruction, distortion, erasure, corruption, alteration, diminishment in value, or loss of use or usefulness of:

       A.   ELECTRONIC DATA by any cause whatsoever (including but not limited to COMPUTER VIRUS); and/or

       B.   ELECTRONIC MEDIA caused by or resulting from the LOSS, destruction, distortion, erasure, corruption, alteration, diminishment in value, or loss of use or usefulness of ELECTRONIC DATA;

       regardless of any other cause or event that contributes concurrently or in any sequence to the LOSS, damage, destruction, distortion, erasure, corruption, alteration, diminishment in value, or loss of use or usefulness of ELECTRONIC DATA or ELECTRONIC MEDIA.

MS 61496 (11/17)

BR Contract 10.10.16

This Excluded Cause of LOSS does not apply to LOSS of ELECTRONIC DATA or ELECTRONIC MEDIA caused by or resulting from the perils of Fire, Explosion, Riot and Civil Commotion, Vehicles and Aircraft Impact or Collision, Sonic Boom, Sprinkler Leakage, Sinkhole Collapse, FLOOD, EARTH MOVEMENT or Volcanic Action, if, and to the extent, such peril causing the LOSS is otherwise covered by this Policy.

14.   Any LOSS or expense consisting of, caused by, contributed to, or aggravated by FUNGUS, wet rot, dry rot or bacteria, whether directly or indirectly the result of an insured peril. This includes, but is not limited to, the cost for investigation, testing, remediation services, extra expense or business interruption. Such LOSS is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the LOSS.

If LOSS otherwise covered by this Policy occurs, and the cost of removal of debris is increased due to the presence of FUNGUS, wet rot, dry rot or bacteria, this Policy will only be liable for the costs of debris removal which would have been incurred had no such factors been present in, on, or about the insured property to be removed.

This Excluded Cause of LOSS does not apply to the extent coverage is provided in the EXTENSIONS OF COVERAGE – Limited Coverage for FUNGUS, Wet Rot, Dry Rot or Bacteria.

15.   FLOOD, but if LOSS by fire or explosion results, the Company will pay for that resulting LOSS. This exclusion does not apply to Property in Transit.

16.   EARTH MOVEMENT, but if LOSS by fire, explosion, or sprinkler leakage results, the Company will pay for that resulting LOSS. This exclusion does not apply to Property in Transit.

17.   Cost of Making Good:

The costs that would have been incurred to rectify any of the following had such rectification been effected immediately prior to the LOSS:

A.   Fault, defect, error, deficiency or omission in design, plans, specifications, engineering or surveying;

B.   Faulty or defective workmanship, supplies or material;

However, if direct physical LOSS by an insured peril ensues, then this Policy will provide cover for such ensuing LOSS only.

For the purpose of this Policy and not merely this Excluded Cause of LOSS, insured property, or any portion thereof, shall not be regarded as damaged solely by virtue of the existence of any condition stated under A. or B. above.

**This Policy does not insure LOSS caused by any of the following, unless direct physical LOSS by an insured peril ensues and then this Policy insures only such ensuing direct physical LOSS:**

1.   Corrosion, decay, deterioration, erosion, evaporation, inherent vice, latent defect, leakage, loss of weight, rust, shrinkage, wear and tear or any quality in property which causes it to damage or destroy itself.

2.   Normal settling, shrinking, cracking, expansion or contraction.

3.   Dryness or dampness of atmosphere.

4.   Extremes or changes in temperature.

MS 61496 (11/17)

BR Contract 10.10.16

## PART E POLICY
## CONDITIONS

These Policy Conditions apply to the entire Policy, including any endorsements attached to or made part of this Policy.  However, to the extent that these Policy Conditions are in conflict with any State Changes or State Amendatory endorsements attached to or made part of this Policy, the conditions of the State Changes or State Amendatory endorsements shall take precedence.

1.  Additional Insureds

    To the extent required by any written contract or subcontract for the INSURED PROJECT, and then only as their respective interests may appear, all owners, all contractors and subcontractors of every tier of the INSURED PROJECT, and any other individual or entity specified in such written contract or subcontract, are recognized as Additional Insureds hereunder.  As respects architects, engineers, manufacturers and suppliers, their interest is limited to their site activities only.

2.  LOSS Payable

    LOSS, if any, shall be adjusted with and made payable to the NAMED INSURED, or as per order of the NAMED INSURED, whose receipt shall constitute a release in full of all liability under this Policy with respect to such LOSS.

3.  Term of Insurance

    Coverage provided hereunder shall attach as of the date shown on the Declarations and shall continue in full force and effect until:

    A.  the expiration date shown on the Declarations,

    B.  final acceptance of the INSURED PROJECT by the owner,

    C.  abandonment of the INSURED PROJECT by the NAMED INSURED, or

    D.  the expiration of the NAMED INSURED's interest in the INSURED PROJECT;

    whichever first occurs.

    **Permission to Occupy**

    The owner may occupy the INSURED PROJECT for the purpose originally intended without the Company's written consent.

4.  Premium

    A.  Deposit Premium:  The premium stated on the Declarations is a deposit premium and shall be adjusted in accordance with Paragraph 4.C. Premium Adjustment.  The deposit premium shall be due and payable within thirty (30) days of the effective date shown or per the date noted on the invoice, whichever is earlier.

    B.  Reporting Provisions:  Not later than thirty (30) days after the expiration, cancellation, or any requested extension of this Policy, the NAMED INSURED shall report to the Company the total completed value of all property including, but not limited to, all wages, expenses, materials, supplies, equipment and such other charges, all whether provided by the owner, contractor or others, which became a part of or was expended in the INSURED PROJECT.

    C.  Premium Adjustment:

1.  The final earned premium for this Policy shall be computed by applying the rates used for the purpose of computing the deposit premium to the actual term of coverage provided and the total completed value declared in accordance with Paragraph 4. B. Reporting Provisions.

2.  If the premium so calculated shall differ from the deposit premium, such difference shall be due and payable to the NAMED INSURED or the Company, as the case may be.

3.  If the final completed values reported to the Company for the INSURED PROJECT vary by no more than 5% from the estimated completed values at inception, then the Company and the NAMED INSURED agree that no Premium Adjustment will occur. Any variation in completed values greater than 5% will require a Premium Adjustment per 1. and 2. above using the estimated completed value of the INSURED PROJECT at inception as the base.

D. Minimum Earned Premium:

1.  If the NAMED INSURED cancels this Policy before the expiration date of the Policy, the Company will charge a minimum earned premium as stated on the Declarations. If the Company cancels the Policy, no minimum earned premium applies.

2.  If the NAMED INSURED cancels the Policy, the Company will calculate the return premium as determined by this Clause 4. Premium, the Policy Reporting Endorsement, if any, and amendatory endorsements, if any, attached to this Policy. After the Company determines the return premium, the Company will subtract it from the Policy term premium to determine the earned premium.

3.  The Company will then compare the earned premium to the minimum earned premium stated on the Declarations. If the earned premium is less than the minimum earned premium, the Company will return to the NAMED INSURED the difference between the Policy term premium and the minimum earned premium. If the earned premium is more than the minimum earned premium, the Company will return to the NAMED INSURED the difference between the Policy term premium and the earned premium as determined by this Clause 4. Premium, the Policy Reporting Endorsement, if any, and amendatory endorsements, if any, attached to this Policy.

5.  Deductibles

The Company will adjust all direct physical LOSS arising out of any one OCCURRENCE as one LOSS. The Company will not pay for direct physical LOSS in any one OCCURRENCE until the amount of the adjusted direct physical LOSS exceeds the applicable deductible stated on the Declarations. The Company will then pay the amount of the direct physical LOSS in excess of the applicable deductible.

Where a percentage deductible is shown on the Declarations, the deductible shall be the greater of the dollar amount shown, or the stated percentage of the total insured values at the INSURED PROJECT site or sites at the time and date of the LOSS, unless a maximum deductible is listed.

In the event that more than one deductible shown on the Declarations, or provided in any endorsement, shall apply to covered direct physical LOSS in any one OCCURRENCE, only the largest deductible shall be applied.

However, if this Policy is extended to provide coverage for Delay in Opening, the deductible stated on the applicable endorsement will be applied separately and in addition to the deductible(s) for the other coverages provided in this Policy.

6.  Valuation

At the time and place of direct physical LOSS, the basis of adjustment of a claim, unless otherwise endorsed herein, shall be as follows:

A. Property Under Construction – The cost to repair or replace the insured property lost or damaged with material of like kind and quality, less betterment, including contractor's reasonable profit and overhead not exceeding the percentages in the original contract. If the insured property is not repaired or replaced then direct physical LOSS shall be settled on the basis of ACTUAL CASH VALUE.

B. EXISTING PROPERTY - The Company will pay the least of the following for direct physical LOSS to EXISTING PROPERTY:

  1. The ACTUAL CASH VALUE of the EXISTING PROPERTY;
  2. The cost of reasonably restoring the EXISTING PROPERTY to its condition immediately prior to the LOSS;
  3. The cost of replacing the EXISTING PROPERTY with substantially identical property unless replacement with substantially identical property is impossible or unnecessary. In such case, FUNCTIONAL REPLACEMENT COST would apply.

C. Property of Others (Including Items Supplied by the Owner) – If Property of Others is new, the cost to repair or replace the insured property lost or damaged with material of like kind and quality, less betterment. If Property of Others is not new then, the Owner's cost or ACTUAL CASH VALUE, whichever is less.

  If the Property of Others is not repaired or replaced then direct physical LOSS shall be settled on the basis of ACTUAL CASH VALUE.

D. TEMPORARY STRUCTURES – The cost to repair or replace the insured property lost or damaged with material of like kind, quality and condition but in the event the insured property is not repaired or replaced recovery will not exceed the ACTUAL CASH VALUE.

E. Valuable Papers and Records - The cost to reproduce the insured property with other property of like kind and quality including the cost of gathering or assembling information from back up data if replaced, or if not replaced, at the value of blank material.

F. ELECTRONIC MEDIA or ELECTRONIC DATA - The cost of the blank media, plus the costs of copying or restoring ELECTRONIC DATA from back-up or from originals of a previous generation, not including research and engineering or the costs or expense of recreating, gathering or assembling such ELECTRONIC DATA.

  This Policy does not insure any amount pertaining to the value of such ELECTRONIC DATA to the Named Insured or any other party, even if such ELECTRONIC DATA cannot be recreated, gathered or assembled. If not repaired, replaced or restored, ELECTRONIC MEDIA shall be valued at the cost of the blank media.

G. Trees, Shrubs and Plants - The cost to replace with property of like kind and quality plus the proper proportion of labor expended if such damage occurs after installation.

H. Office and Construction Trailers/Semi-trailers and their Contents – If not more than 5 years old as of the expiration date of this Policy, based on the manufacturer's model year, and the NAMED INSURED repairs or replaces the insured property, the least of the following shall apply:

  1. The cost to replace the lost or damaged insured property, without deduction for depreciation, with new property of comparable quality and utility;

  2. The amount the NAMED INSURED actually spends to repair or replace the lost or damaged insured property.

  If the insured property is more than 5 years old or the NAMED INSURED does not actually repair or replace the insured property within a reasonable period of time after the date of LOSS, the Company will pay the ACTUAL CASH VALUE

The Company will pay for direct physical LOSS to insured property by determining its REPLACEMENT COST, provided that the NAMED INSURED actually repairs or replaces the lost or damaged insured property, or begins to repair the damaged insured property, within 24 months from the date of direct physical LOSS; otherwise, the Company will pay for direct physical LOSS to insured property by determining its ACTUAL CASH VALUE.

7.    Cancellation

A.    This Policy may be cancelled by the NAMED INSURED by mailing to the Company written notice stating when, thereafter, such cancellation shall be effective. This policy may not be canceled by the Company, except for those specific items stated in Item D below, which will be sixty (60) days or in the event of the Insured's non-payment of any premium due, said notice shall be fifteen (15) days. Cancellation notice by Company to be effective by mailing such notice to the NAMED INSURED, at the address shown in this policy or last known address, with written notice stating when. The mailing of notice by certified mail as aforementioned shall be sufficient proof of notice and the effective date of cancellation stated in the notice shall become the end of the policy period. Delivery in person or by messenger of such written notice either by the NAMED INSURED or by the Company shall be the equivalent to mailing.

B.    In the event of cancellation, premium adjustment may be made at the time cancellation is effected and, if not then made, shall be made as soon as possible after cancellation becomes effective. The Company's check or the check of its representative mailed or delivered as aforesaid shall be a sufficient tender of any refund of premium due to the NAMED INSURED;

C.    In the event of cancellation, the Insured will report all the Premium Base which has accrued between the date of inception, subsequent reports if applicable and the actual date of cancellation, and pay premium thereon at the agreed rate. Any premium so computed shall always be subject to any minimum premium. If the Insured cancels, the Policy will be subject to a minimum earned premium of 25% of the deposit premium paid at inception plus any additional premium required by policy change or endorsement(s).

D.    This policy may be cancelled by the Company for any of the following: material change of risk, Insured's conviction of a crime arising out of acts increasing the hazard of the covered property insured, Company's loss of reinsurance, Company's discovery of fraud or material misrepresentation in the obtaining of this policy, NAMED INSURED's abandonment of covered property, change in ownership or sale of the covered property (other than transfer of ownership to an affiliated entity) or failure to maintain or protect the covered property during WORK STOPPAGES, as such term is defined below.

Solely for the purposes of this cancellation provision, the term WORK STOPPAGES means:

That all work on the covered property or any part thereof insured under the Policy stops or ceases for all practical purposes, for a period of thirty (30) days or more.

8.    Inspection and Audit

While this Policy is in effect, the Company may, at any reasonable time, inspect the NAMED INSURED's property and operations. However, any recommendations or information provided as a result of such inspection(s) is not intended as a substitute for advice from a safety expert or legal counsel the NAMED INSURED may retain for their intended purpose(s). It is not intended to satisfy any legal duty the NAMED INSURED may have to provide a safe premises, workplace, product or operation.

The Company may also examine and audit the NAMED INSURED's books and records at any reasonable time during the Policy period, and within one year after the final termination of the Policy, as long as they relate to the subject matter of this Policy.

9.    Assignment

MS 61496 (11/17)

The NAMED INSURED agrees not to assign and/or transfer any legal rights or interests in the Policy without the Company's written consent.

10.  **Abandonment**

There will be no abandonment of any insured property to the Company.

11.  **Appraisal**

If the NAMED INSURED and the Company fail to agree on the amount of the LOSS, each, upon written demand of either the NAMED INSURED or the Company made within sixty (60) days after receipt of proof of LOSS by the Company, shall select a competent and disinterested appraiser. The appraisers shall then select a competent and disinterested umpire. If they should fail for fifteen (15) days to agree upon such umpire, then upon the request of the NAMED INSURED or the Company, such umpire shall be selected by a judge of a court of record in the jurisdiction in which such appraisal is pending. Then, at a reasonable time and place, the appraisers shall appraise the LOSS based on the Valuation conditions within the Policy. If the appraisers agree, their written agreement shall determine the amount of LOSS and shall be paid by the Company within thirty (30) days thereafter.
If the appraisers fail to agree, they shall submit their differences to the umpire. The umpire shall then submit a written award resolving such differences. Such award shall determine the amount of the LOSS and shall be paid by the Company within thirty (30) days thereafter.
The NAMED INSURED and the Company shall each pay its chosen appraiser and shall bear equally the other expenses of the appraisal and umpire. The Company shall not be held to have waived any of its rights by any act relating to appraisal.

12.  **In Case of LOSS**

A.  **Notice of OCCURRENCE:**

The NAMED INSURED will, as soon as practicable, report in writing to the Company every OCCURRENCE that may give rise to a claim under this Policy.

B.  **Proof of LOSS:**

The NAMED INSURED will as soon as practicable, file with the Company a signed and sworn detailed proof of LOSS.

C.  **Payment of LOSS:**

All adjusted claims, including partial payments thereon will be due and payable no later than thirty (30) days after presentation and acceptance of proof of LOSS or partial proof of LOSS, as the case may be, by this Company or its appointed representative.

13.  **Other Insurance**

Except as stated in the Contributing Insurance and Excess Insurance articles, if there is other insurance which is issued by another valid policy or policies of insurance, whether primary or excess, whether collectible or not, this Policy will apply as excess insurance and will not contribute with such other insurance, nor shall the Company be liable to make any payment in connection with any such portion of a claim or suit.

14.  **Contributing Insurance**

Permission is granted for other policies written upon the same plan, conditions, and provisions as those contained herein.

BR Contract 10.10.16

This Policy will contribute to the total of each LOSS otherwise payable herein to the extent of the participation of this Policy in the total Limit of Insurance, as provided by all policies written upon the same plan, conditions, and provisions as those contained in this Policy.

The adjustment of losses by any contributing insurance company is not binding on any other contributing insurance company.

15. Excess Insurance

Permission is granted the NAMED INSURED to have excess insurance over the Limit of Insurance set forth in this Policy without prejudice to this Policy, nor will the existence of such insurance, if any, reduce any liability under this Policy.

16. Pair and Set

A. In the event of LOSS to any insured article or articles which are part of a pair or set, the measure of LOSS to such article or articles will be a reasonable and fair proportion of the total value of the pair or set, giving consideration to the importance of said article or articles, but in no event will such LOSS be construed to mean total LOSS of the pair or set, or

B. In the event of LOSS to any part of insured property consisting, when complete for use, of several parts, the Company will only be liable for the value of the part lost or damaged.

17. Recovery or Salvage

Any recovery or salvage will apply as if recovered or received prior to the LOSS settlement and the LOSS will be readjusted accordingly, except for:

A. proceeds from subrogation and other insurance recovered or received after a LOSS settlement under this Policy;

B. any recovery from suretyship, insurance, reinsurance, security or indemnity taken by or for the benefit of the Company.

18. Reinstatement

With the exception of LOSS caused by insured perils which are subject to Annual Aggregate Sub-limits of Insurance, any LOSS hereunder will not reduce the limits available under this Policy.

19. Subrogation

If the Company pays a claim under this Policy, it will be subrogated, to the extent of such payment, to all the NAMED INSURED's rights of recovery from other persons, organizations and entities. The NAMED INSURED will execute and deliver instruments and papers and do whatever else is necessary to secure such rights.

The Company will have no rights of subrogation against:

A. any person or entity, which is an Additional Insured;

B. any other person or entity, against which the NAMED INSURED has waived its rights of subrogation in writing before the time of LOSS.

Notwithstanding the foregoing, it is a condition of this Policy that the Company shall be subrogated to all the NAMED INSURED's rights of recovery against:

A. Any Architect or Engineer, whether or not a NAMED INSURED or Additional Insured, for any LOSS arising out of the performance of professional services in their capacity as such and caused by any

MS 61496 (11/17)

error, omission, deficiency or act of the Architect or Engineer, by any person employed by them or by any others for whose acts they are legally liable, and;

B. Any manufacturer or supplier of machinery, equipment or other property, whether or not a NAMED INSURED or Additional Insured, for the cost of making good any LOSS which said party has agreed to make good under a guarantee or warranty, whether expressed or implied.

The NAMED INSURED will act in concert with the Company and all other interests concerned in the exercise of such rights of recovery.

If any amount is recovered as a result of such proceedings, the net amount recovered after deducting the costs of recovery, will accrue first to the Company in proportion to their respective interests. Any excess of this amount will be remitted to the NAMED INSURED. If there is no recovery, the interests instituting the proceedings will bear the expense of the proceedings proportionately.

The NAMED INSURED will do nothing after LOSS to prejudice such rights of subrogation.

20. Misrepresentation & Fraud

This Policy shall be void if the NAMED INSURED has intentionally concealed or misrepresented any material fact(s) or circumstance(s) concerning this insurance or the subject thereof, or in case of any fraud, attempted fraud or false swearing by the NAMED INSURED concerning any matter relating to this insurance or the subject thereof, whether before or after a LOSS.

21. Legal Action Against the Company

No one may bring a legal action against the Company under this Policy unless:

A. There has been full compliance with all the conditions of this Policy; and

B. The action is brought within 2 years after the NAMED INSURED first has knowledge of the direct physical LOSS.

22. Benefit to Bailee

The Policy will not inure, directly or indirectly, to the benefit or any carrier or bailee.

23. Coverage Territory

This Policy covers insured property within the United States of America, including the District of Columbia and property in inland transit from Canada; except that this Policy will not cover Property in Transit by water or air to and from Alaska or to and from Hawaii.

24. Certificates of Insurance

Any Certificate of Insurance issued in connection with this Policy shall be issued solely as a matter of convenience or information for the addressee(s) or holder(s) of said Certificate of Insurance. This Policy may only be modified by endorsement issued by the Company.

25. Statutes

If any of the Articles herein stated conflict with the laws or statutes of any jurisdictions in which this Policy applies, the same is amended to conform to such laws or statutes.

26. Observance of Conditions

Full compliance with all terms and conditions of this Policy by the NAMED INSURED shall be a condition precedent to any liability of the Company to make payment for LOSS under this Policy.

27.    Increased Hazard

If there is a material increased hazard in the risk, change in project scope or change in project principals, the NAMED INSURED shall give notice in writing to the Company within 30 days of the NAMED INSURED's knowledge of the same..  The Company shall have the right, but not the obligation, to modify the terms of insurance in accordance with the terms and conditions that would apply to the material increased hazard.

28.    Examination Under Oath

The NAMED INSURED shall submit and, so far as is within their power, shall cause all other persons to submit, to examination or examinations under oath by any persons named by the Company relative to any and all matters in connection with a claim, and shall produce for examination all books of accounts, bills, invoices, and other vouchers or certified copies thereof if originals are lost, at such reasonable time and place as may be designated by the Company or its representatives as often as the Company deems necessary, and shall permit extracts and copies thereof to be made.

29.    Brands & Trademarks

In any case of LOSS by an insured peril to insured property bearing a brand, trademark or label, the Company may take all or any part of the insured property at any agreed or appraised value.  If so, the NAMED INSURED may, at its own expense:

A.    Stamp salvage on the insured property or its container, if the stamp will not physically damage the insured property; or

B.    Remove the brand, trademark or label if doing so will not physically damage the insured property. The NAMED INSURED must re-label the insured property or its container to comply with the law.

30.    Protection of Insured Property

The NAMED INSURED will take reasonable steps to protect, recover or save the insured property and minimize any further or potential LOSS when the insured property has sustained direct physical LOSS by an insured peril.  The acts of the NAMED INSURED or the Company in protecting, recovering or saving the insured property will not be considered a waiver or an acceptance of abandonment. The NAMED INSURED and the Company will bear the reasonable expense incurred proportionate to their respective interests under this Policy.

31.    Mortgage Holders

The entities listed on the Declarations and designated as a Mortgage Holder are added to this Policy for the INSURED PROJECT covered by this Policy, subject to the following terms and conditions:

The term "mortgage holder" includes a trustee.

A.    The Company will pay for LOSS, if any, to each mortgage holder shown in the mortgage holder schedule in their order of precedence, as interests may appear.

B.    The mortgage holder has the right to receive LOSS payment even if the mortgage holder has started foreclosure or similar action on the INSURED PROJECT.

C.    If the Company denies a claim due to the acts of the NAMED INSURED or because the NAMED INSURED has failed to comply with the terms of this Policy, the mortgage holder will still have the right to receive LOSS payment if the mortgage holder:

1.    Pays any premium due under this Policy at the request of the Company if the NAMED INSURED has failed to do so.

2.    Submits a signed, sworn proof of LOSS within 60 days after receiving notice from the Company of the NAMED INSURED'S failure to do so; and

3.    Has notified the Company of any change in ownership, occupancy, or substantial change in

BR Contract 10.10.16

risk known to the mortgage holder.

All terms of this Policy will then apply directly to the mortgage holder.

D.  If the COMPANY pays the mortgage holder for any LOSS and denies payment to the NAMED INSURED because of their acts or because they have failed to comply with the terms of this Policy:

   1.  The mortgage holder's rights under the mortgage will be transferred to the Company to the extent of the amount paid; and

   2.  The mortgage holder's right to recover the full amount of the mortgage holder's claim will not be impaired.

   At the option of the Company, the Company may pay to the mortgage holder the whole principal on the mortgage plus any accrued interest.  In this event, the mortgage and note will be transferred to the Company and the NAMED INSURED will pay the remaining mortgage debt to the Company.

E.  If the Company cancels this Policy, the Company will endeavor to give written notice to the mortgage holder at least:

   1.  15 days before the effective date of cancellation, if cancelled for non-payment of premium; or

   2.  60 days before the effective date of cancellation, if cancelled for any other reason.

   The Company's failure to provide notice of cancellation to the mortgage holder will not invalidate the cancellation.

F.  If the Company does not renew the Policy, the Company will endeavor to give written notice to the mortgage holder at least 45 days before the expiration date of this Policy. The Company's failure to provide notice to the mortgage holder will not invalidate the non-renewal.

32.  Loss Payees

The entities listed on the Declarations and designated as Loss Payee are added to this Policy for the INSURED PROJECT covered by this Policy, subject to the following terms and conditions:

The Company will adjust a LOSS with the NAMED INSURED  shown on the Declarations and the Company will pay the NAMED INSURED, and the Loss Payee(s), up to their interest in insured property, the amount the Company owes, if anything.

33.  Unpacked Property

The NAMED INSURED shall inspect all items that are included in the values to be insured for the INSURED PROJECT covered by this Policy upon arrival at the INSURED PROJECT site.

In the case of unpacked property where LOSS is evident, such LOSS is excluded under this Policy, except to the extent it is indemnified under the terms provided by the Property in Transit Extension of Coverage.

In the case of packed property (which is intended to remain in its packing until a later date after arrival at the INSURED PROJECT site), the packing is to be inspected and in the event of any visible signs of LOSS, the property contained therein is to be promptly unpacked and inspected.  Any LOSS to such property which is thus discovered is excluded under this Policy, except to the extent it is indemnified under the terms of the Property in Transit Extension of Coverage.

In the event the packing of the property manifests no sign of LOSS and the property is therefore temporarily left packed, any LOSS which is discovered when the property is unpacked will be deemed to have occurred during transit unless there is clear evidence from the nature of the LOSS that it could only have occurred after arrival at the INSURED PROJECT site.

However, if it is not possible to determine when the LOSS occurred and such LOSS is not insured under the Extensions of Coverage for Property in Transit or Temporary Off-site Storage and Staging Areas, the

MS 61496 (11/17)

BR Contract 10.10.16

Company will pay for fifty (50%) percent of the Indemnity, otherwise due hereunder, as if the LOSS had occurred during the Policy Period, subject to the deduction of fifty (50%) percent of the Deductible.

## PART F
## DEFINITIONS

The following definitions will be applied in the interpretation of certain wording used herein

1. ACTUAL CASH VALUE

    The replacement cost at the time of LOSS, of the insured property damaged or destroyed, less depreciation.

2. COMPUTER VIRUS

    Instructions, code, applications or any software program that has the ability or is suspected to have the ability to damage, destroy, erase, corrupt, alter, or prevent access to ELECTRONIC DATA, ELECTRONIC MEDIA or COMPUTERS or to disrupt or interfere with the operations of COMPUTERS.

3. COMPUTERS ·

    Includes but is not limited to mainframes, servers, workstations and portable computers, personal information managers, wide and local area network hardware, electronic and electromechanical equipment, data processing equipment, electronic controls for machinery, electronically programmed memory chips, and electronically controlled communication equipment.

4. CONTAMINANTS OR POLLUTANTS

    Any material which, after its release, can cause or threaten damage to human health or human welfare or which can cause or threaten damage, deterioration, loss of value, marketability or loss of use to property insured hereunder, including, but not limited to, any solid, liquid, gaseous or thermal irritant or contaminant including vapor, fumes, acids, soot, alkalis, virus, chemicals and waste, or any hazardous substances as listed in the Federal Water Pollution Control Act, Clean Air Act, Resource Conservation and Recovery Act of 1976, and Toxic Substances Control Act, or as designated by the US Environmental Protection Agency.

5. EARTH MOVEMENT

    All earthquake, landslide, mudslide, mudflow, rock fall, tsunami, tectonic or seismic sea waves, volcanic eruption, earth sinking (other than sinkhole collapse), rising, shifting, subsidence or other EARTH MOVEMENT, whether observable or not observable, and whether man-made or caused by natural phenomena.

6. ELECTRONIC DATA

    Facts, concepts, information or data, including compilations thereof, in a form useable or intended for use or processing by COMPUTERS or for storage on ELECTRONIC MEDIA. ELECTRONIC DATA includes but is not limited to files, programs, applications, operating systems, and other coded instructions for the processing, calculation and storage of facts, concepts and information by COMPUTERS.

7. ELECTRONIC MEDIA

    Any physical device that holds, stores, contains or transfers ELECTRONIC DATA, and includes but is not limited to disks, drives, films, tapes, records, drums, or cells.

8.    **EXISTING PROPERTY**

Buildings or permanent structures, including equipment used to maintain or service the buildings or structures that existed prior to the beginning of the INSURED PROJECT.

9.    **FLOOD**

A general and temporary condition during which the surface of normally dry land is partially or completely inundated, which arises from:

A.   Rain and resultant runoff; or

B.   The rising, overflow or breach of any boundary of a natural or man-made body of water; or

C.   Non-tectonic or seismic sea waves, tide or tidal waters, storm surge, or spray from any of these; whether driven by wind or not; or

D.   The failure of a cofferdam or similar structure intended to hold water back from an area of construction; or

E.   Unexpected accumulation of water caused by subsurface seepage or subsurface leakage.

As respects piles and other insured property designed to be used in water and purposely placed or stationed in lakes, rivers, streams, harbors or other bodies of water, any LOSS that could be deemed LOSS caused by WATER DAMAGE or LOSS caused by FLOOD under this policy, shall be deemed LOSS caused by FLOOD, and all terms and conditions herein shall apply as if the LOSS were caused by FLOOD.

FLOOD does not include the accumulation of water from any source on a roof or other surface of a building, dwelling or structure.

10.   **FUNCTIONAL REPLACEMENT COST**

The cost to replace insured property with similar property intended to perform the same function when replacement with substantially identical property is impossible or unnecessary.

11.   **FUNGUS**

Any type or form of FUNGUS, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

12.   **TESTING**

Any start-up, commissioning or other forms of testing, including the checking of any plant or machinery or a component part thereof under load or operational conditions, including the use of feedstock or other materials for processing, or other media to simulate working conditions.

TESTING also includes but is not limited to any start-up, commissioning or other forms of testing of building or civil construction systems, such as electric, heating, ventilation, air conditioning, sprinklers, water piping, plumbing, gas lines, air conditioning lines, elevators, escalators, electronic tolling, life safety or lighting.

13.   **TESTING PERIOD**

That period beginning with the introduction into the insured property of feedstock or similar media for processing and handling, or the first firing of fuel(s), whichever first occurs. The TESTING PERIOD shall continue thereafter whether or not such testing, commissioning or startup is continuous or intermittent and terminate on the expiration of this Policy.

14.   **INSURED PROJECT**

The work which the NAMED INSURED is contractually obligated to perform in accordance with the contract documents, being more fully described and located as set forth on the Declarations.

15.    LOSS

Accidental loss or damage.

16.    NAMED INSURED

The persons or companies identified on the Declarations of this Policy.

17.    NAMED WINDSTORM

An intense tropical weather system with a well-defined circulation and maximum sustained winds of at least 39 mph or 63 km/hr that is named by the National Oceanic and Atmospheric Administration (NOAA), including any of NOAA's organizations, such as the National Weather Service or the National Hurricane Center.

18.    OCCURRENCE

All LOSS attributable directly or indirectly to one originating cause, event, incident or repeated exposure to the same originating cause, event or incident, or to one series of similar originating causes, events, incidents or repeated exposures to the same originating cause, event or incident first occurring in the Policy period. All such LOSS will be treated as one OCCURRENCE , unless a specific period of time is included in this Policy. The most the Company will pay for LOSS in any one OCCURRENCE is the applicable Limit of Insurance shown on the Declarations.

As respects the perils of strike, riot, civil commotion, vandalism and malicious mischief, OCCURRENCE shall mean all LOSS arising during a continuous period of seventy-two (72) hours during the term of this Policy.  The NAMED INSURED may elect the moment when the seventy-two (72) hour period begins, but no two such periods shall overlap.  Such strike, riot, civil commotion, vandalism or malicious mischief shall be deemed to be a single OCCURRENCE within the meaning of this Policy.

As respects the peril of EARTH MOVEMENT, OCCURRENCE shall mean all LOSS arising during a continuous period of seventy-two (72) hours during the term of this Policy.  The NAMED INSURED may elect the moment when the seventy-two (72) hour period begins, but no two such periods shall overlap.  Such EARTH MOVEMENT shall be deemed to be a single OCCURRENCE within the meaning of this Policy.

As respects the peril of NAMED WINDSTORM, OCCURRENCE shall mean all LOSS arising during a continuous period of seventy-two (72) hours during the term of this Policy.  The NAMED INSURED may elect the moment when the seventy-two (72) hour period begins, but no two periods shall overlap.  Such NAMED WINDSTORM shall be deemed to be a single OCCURRENCE within the meaning of this Policy.

As respects the peril of FLOOD, OCCURRENCE shall mean all LOSS arising during a continuous period of seventy-two (72) hours during the term of this Policy.  The NAMED INSURED may elect the moment when the seventy-two (72) hour period begins, but no two such periods shall overlap.  Such FLOOD shall be deemed to be a single OCCURRENCE within the meaning of this Policy.

The Company shall not be liable for any such LOSS first occurring before the effective date and time or first occurring after the expiration date and time of this Policy.

19.    REPLACEMENT COST

The cost to repair or replace the insured property lost or damaged at the time and place of direct physical LOSS with material of like kind and quality, less betterment.

20.    TEMPORARY STRUCTURES

Cribbing, scaffolding, shoring, fences, construction forms and other similar structures on the INSURED PROJECT site, but TEMPORARY STRUCTURES does not include construction tools, equipment or storage structures.

21.    TOWER CRANE

A crane with a fixed vertical mast that is topped by a rotating boom and equipped with a winch for hoisting and lowering loads.

22.    TRANSMISSION AND DISTRIBUTION LINES

Transmission and distribution lines, poles, towers and all equipment attached or affixed thereto, including supporting structures.

23.    WATER DAMAGE

All water damage, except LOSS caused by or resulting from the peril of FLOOD.

**DELAY IN OPENING ENDORSEMENT**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY. THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:**

**CONSTRUCTION RISK COVERAGE FORM**

For the purpose of this endorsement only, the NAMED INSURED if different from that stated on the Policy Declarations, shall be as shown below. There shall be no Additional Insureds hereunder, unless specifically endorsed below.

Whenever "NCP" is shown below it denotes no coverage has been purchased and no coverage is provided. Whenever "NA" is shown below it denotes "Not Applicable" to that coverage, deductible, Sub-limit of Insurance, or other policy provision.

| | | |
|---|---|---|
| PERIOD OF INDEMNITY: | 495 | Calendar Days |
| SCHEDULED DATE OF COMPLETION: | Per the Construction Schedule in effect as of the date of the physical LOSS to INSURED PROJECT | |
| WAITING PERIOD: | 14 | Calendar Days, Each DELAY |

In return for the payment of premium and subject to all the terms and conditions of this Policy and individual Sub-limits of Insurance shown below, the total Sub-limit of Insurance for which the Company shall be liable under this endorsement per OCCURRENCE shall not exceed $3,250,000. These Sub-limits of Insurance are part of and not in addition to the Limit of Insurance Per OCCURRENCE stated on the Policy Declarations.

1. Loss Of RENTAL INCOME      $      NCP
2. Loss Of BUSINESS INCOME      $      NCP
3. SOFT COSTS / ADDITIONAL EXPENSES      $    3,250,000

Refer to Individual Item Sub-limits below:

| | |
|---|---|
| Interest expense on construction loan(s); | $ Included |
| Advertising and promotional expense; | $ Included |
| Architects and/or engineers fees; | $ Included |
| Legal and accounting fees; | $ Included |
| Commissions incurred upon the renegotiation of leases; | $ Included |
| Fees for licenses and permits; | $ Included |
| Insurance premiums for Builders Risk, Workers' Compensation and General Liability Insurance; | $ Included |
| Real estate taxes and assessments; | $ Included |
| Project administration expense & Development Fee(s); | $ Included |

MS-61496 (11/17)

BR Contract 10.10.16

## INSURING AGREEMENT

1. Subject to all terms, conditions, limitations and exclusions of this Endorsement, and of the Policy to which it is attached, the Company will pay the actual Loss of RENTAL INCOME, Loss of BUSINESS INCOME and/or SOFT COSTS/ADDITIONAL EXPENSES sustained during the PERIOD OF INDEMNITY as a result of a DELAY in completion of the INSURED PROJECT described on the Policy Declarations, or as amended by Endorsement, when such DELAY is caused by an OCCURRENCE or series of OCCURRENCE(S), resulting in physical LOSS to insured property by an insured peril.

2. The Company shall also indemnify the NAMED INSURED for expenditures during the PERIOD OF INDEMNITY that are necessarily incurred for the purpose of reducing any loss amount under this endorsement, but only to the extent that such loss amount otherwise payable under this endorsement is thereby reduced.

3. The Company will pay the actual Loss of RENTAL INCOME, Loss of BUSINESS INCOME and/or SOFT COSTS/ADDITIONAL EXPENSES sustained as a result of a DELAY in completion of the INSURED PROJECT, caused by action of civil authority that prohibits access to the INSURED PROJECT site stated on the Policy Declarations due to direct physical LOSS to property, other than at the INSURED PROJECT site stated on the Policy Declarations, caused by or resulting from an insured peril. This coverage will apply for a period of up to thirty (30) consecutive days after the application of the DELAY IN OPENING WAITING PERIOD.

4. The Company will pay the actual Loss of RENTAL INCOME, Loss of BUSINESS INCOME and/or SOFT COSTS/ADDITIONAL EXPENSES sustained as a result of a DELAY in completion of the INSURED PROJECT, caused by an insured peril that prohibits access to the INSURED PROJECT site stated on the Policy Declarations due to direct physical LOSS to property, other than at the INSURED PROJECT site stated on the Policy Declarations. This coverage will apply for a period of up to thirty (30) consecutive days after the application of the DELAY IN OPENING WAITING PERIOD.

5. The Company will pay for the actual Loss of RENTAL INCOME, Loss of BUSINESS INCOME and/or SOFT COSTS/ADDITIONAL EXPENSES sustained as a result of a DELAY in completion of the INSURED PROJECT caused by loss of electrical, steam, gas, water, sewer, telephone, or any other utility or service, situated on or within two (2) statute miles to the INSURED PROJECT due to direct physical LOSS caused by an insured peril.  This coverage will apply for a period of up to thirty (30) consecutive days after the application of the DELAY IN OPENING WAITING PERIOD.

## WAITING PERIOD

1. The coverage provided by this endorsement applies to each DELAY that exceeds the WAITING PERIOD, and only for such part of that DELAY that is in excess of this period.

2. In the event that more than one WAITING PERIOD shall apply to the coverage provided by this endorsement, only the longest WAITING PERIOD shall be applied.

3. The WAITING PERIOD of this endorsement applies independently and shall not be combined with any deductible that applies to physical LOSS covered by this Policy.

## ADDITIONAL EXCLUSIONS

The Company shall not be liable for any increase in DELAY caused by or resulting from:

1. The enforcement of any ordinance or law regulating construction, rebuilding, repair, replacement, removal or reconstruction of the work unless otherwise endorsed hereto.

2. LOSS to property not insured by this policy.

3. Alterations, additions, improvements or other changes made in the design, plans, specifications or other contract documents for the INSURED PROJECT which are required to effect the repair or replacement of the damaged property.

4. The unavailability of funds for the repair or replacement of lost or damaged property.

5. Import, export or customs restrictions and/or regulations.

6. Breach of contract, late or non-completion of orders and/or suspension, lapse or cancellation of any lease or purchase order.

BR Contract 10.10.16

7.   Failure of the NAMED INSURED or any Additional Insureds to obtain, maintain or extend any permit, lease, license or purchase order commitments.

8.   Failure of the NAMED INSURED or any Additional Insureds to use due diligence and dispatch in restoring the damaged property to the condition existing prior to the LOSS.

9.   Interference with the INSURED PROJECT by strikers or other persons with the transportation of property, the construction, rebuilding, repairing or replacing of insured property hereunder or the occupancy and use of the premises.

10.  Consequential damages including liquidated damages, performance or non-performance penalties, penalties for non-completion or non-compliance with contract conditions.

11.  Interruption of incoming electricity, fuel, water, gas, steam, refrigerant, or any other services needed for construction or operation of the INSURED PROJECT.

12.  Any deviation from the original SCHEDULED DATE OF COMPLETION or revisions thereto, and which is independent of an insured LOSS which gives rise to a DELAY, whether occurring prior to or after an OCCURRENCE.

## GENERAL CONDITIONS

1.   The NAMED INSURED shall furnish in writing, as often as required by the Company, progress reports on the INSURED PROJECT.

2.   It is a condition precedent to coverage under this endorsement that the NAMED INSURED shall make every reasonable attempt to minimize the amount of any LOSS by:

   A.   Making complete or partial use of covered or other property at the location of the INSURED PROJECT or other location; and/or

   B.   Make use of other machinery, equipment or supplies; and/or

   C.   Minimize the extent of any interference with the construction schedule so as to avoid or diminish any DELAY.

3.   The Company shall not be liable during the PERIOD OF INDEMNITY for more than the amount stated on Page 1 of this Endorsement.

4.   At the end of the first month of the PERIOD OF INDEMNITY and monthly thereafter, if it is possible for the Company to determine the minimum amount of loss payable under this endorsement for the elapsed period, the Company shall pay such amount(s) to the NAMED INSURED as an installment of the total loss.

5.   The Company shall have the right, but not the duty to conduct an audit of the NAMED INSURED's records twelve months after actual commencement of operations to determine the loss as defined by this Endorsement, as well as any expenses related to reducing loss incurred by the NAMED INSURED. Due consideration shall be given to seasonal patterns, trends, variations or special circumstances which would have affected the business had the DELAY not occurred, so that the amount thus adjusted shall represent as nearly as may be reasonably practicable the amount which, in the absence of the DELAY, would have been realized. Any amount saved in respect of labor costs, charges and expenses that have ceased or reduced during the PERIOD OF INDEMNITY and liquidated damage the NAMED INSURED is entitled to receive, whether collectible or not, shall be deducted from the loss during the PERIOD OF INDEMNITY.

6.   If the amount of loss determined by any audit conducted by the Company is less than or exceeds the sum paid by the Company during the PERIOD OF INDEMNITY, the difference between the two amounts shall be paid by or to the Company as the case may be.

7.   Upon request by the Company, the NAMED INSURED shall make available all records and information relevant to the coverage provided by this endorsement.

8.   It is a condition of this insurance that the NAMED INSURED shall begin normal operations as soon as practical.

BR Contract 10.10.16

# DEFINITIONS

For purposes of this endorsement, the following definitions shall apply in addition to those set forth in the Policy:

1. **SCHEDULED DATE OF COMPLETION**

   The date the INSURED PROJECT or phases of the INSURED PROJECT would have been completed for commencement of commercial operations or use and occupancy if a LOSS had not occurred.

2. **WAITING PERIOD**

   The number of calendar days per OCCURRENCE stated on Page 1 of this Endorsement, beginning with the SCHEDULED DATE OF COMPLETION of the INSURED PROJECT.

3. **DELAY**

   The period of time between the SCHEDULED DATE OF COMPLETION and the actual date on which commercial operations or use and occupancy can commence with the exercise of due diligence and dispatch.

4. **BUSINESS INCOME**

   The amount not realized by the NAMED INSURED during the PERIOD OF INDEMNITY which would have been earned from the commencement of operations or use and occupancy of the work if the DELAY had not occurred, consisting of;

   The sum of:
   A. The net profit or loss (before income taxes), and;
   B. The continuing normal operating expenses, including payroll.

5. **PERIOD OF INDEMNITY**

   The number of days stated on Page 1 of this Endorsement which are in excess of the WAITING PERIOD. The PERIOD OF INDEMNITY for any insured DELAY hereunder shall not be limited or otherwise affected by the expiration, cancellation or termination of the Policy.

6. **RENTAL INCOME**

   Revenues from rentals and leases not realized during the PERIOD OF INDEMNITY, which would have been earned by the NAMED INSURED if the DELAY had not occurred, less non-continuing expenses.

7. **SOFT COSTS/ADDITIONAL EXPENSES**

   Expenditures which are necessarily incurred during the PERIOD OF INDEMNITY, which would not have been incurred by the NAMED INSURED if the DELAY had not occurred, including:

   A. Interest expense on construction loan(s);

   B. Advertising and promotional expense;

   C. Architects and/or engineers fees;

   D. Legal and accounting fees;

   E. Commissions incurred upon renegotiation of leases;

   F. Fees for licensing and permits;

   G. Insurance premiums for Builders Risk, Workers' Compensation and General Liability Insurance;

   H. Real estate taxes and assessments;

BR Contract 10.10.16

I.      Project administration expense & Development Fee(s);

J.      other,  as accepted by the Company and scheduled on this Endorsement.

All other terms and conditions remain unchanged.

BR Contract 10.10.16
**Endorsement Number 2**

## ADDITIONAL NAMED INSURED & ADDITIONAL INSURED ENDORSEMENT

The following are added as Additional NAMED INSURED:

MRP Realty
3050 K Street NW
Suite 125
Washington, DC 20007

McCullough Construction LLC including subcontractors of every tier
5513 Connecticut Ave NW
Suite 200
Washington, DC 20015

The forgoing parties for the Additional NAMED INSURED and Additional Insured includes respective owners, directors, officers, employees, agents, affiliates, successors and assigns.

All other terms and conditions remain unchanged.

BR Contract 10.10.16
**Endorsement Number 3**

**ORDINANCE OR LAW COVERAGE ENDORSEMENT**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY. THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:**

**CONSTRUCTION RISK COVERAGE FORM**

PART C EXTENSIONS OF COVERAGE, Item 15 is deleted in its entirety and replaced by the following:

15. Ordinance or Law

If the repair of direct physical LOSS to insured property caused by an insured peril becomes subject to the enforcement of any ordinance or law that is in force at the time of direct physical LOSS and that:

A.  Requires the demolition of parts of the undamaged insured property; or

B.  Regulates the construction or repair of damaged insured property;

then the Company will pay up to the Sub-limits of Insurance stated below for:

COVERAGE 1:  The value of such undamaged part of the insured property which must be demolished;

COVERAGE 2:  The cost of demolishing the undamaged insured property and clearing the site of debris from such demolition;

COVERAGE 3:  The increased cost of repair and/or reconstruction of the damaged and undamaged insured property on the same site and limited to the minimum requirements of such ordinance or law regulating the repair or reconstruction of the damaged insured property on the same site.  However, the Company will not pay for any increased cost of repair or reconstruction unless the damaged insured property is actually rebuilt or replaced.

The Company will not pay the following costs:

    i.  Cost of demolition or increased cost of repair or reconstruction, debris removal, or other consequential loss caused by the enforcement of any ordinance or law regulating asbestos or other hazardous material;

    ii.  Cost of any governmental direction or request declaring that asbestos or other hazardous material present in, part of or utilized on any damaged or undamaged portion of insured property that can no longer be used for the purpose for which it was intended or installed and must be removed, modified or abated.

    iii.  Cost of demolition or increased cost of repair or reconstruction, debris removal, or other consequential loss caused by the enforcement of any ordinance or law regulating CONTAMINANTS OR POLLUTANTS; or

    iv.  Cost of compliance with the enforcement of any ordinance or law which the NAMED INSURED or owner would have otherwise been required to comply by nature of such ordinance or law in the absence of any direct physical LOSS covered by this Policy.

**Sub-limits of Insurance**

These Sub-limits of Insurance are part of and not in addition to the Limit of Insurance per OCCURRENCE stated on the Declarations.

COVERAGE 1.  $24,750,000

COVERAGE 2.  $2,500,000

BR Contract 10.10.16

COVERAGE3.          $2 500 000

All Ordinance or Law Coverages in any one OCCURRENCE $24 750 000

All other terms and conditions remain unchanged.

BR Contract 10.10.16
**Endorsement Number 4**

## POLICY EXTENSION ENDORSEMENT

With prior notification to, if the INSURED PROJECT has not been completed as of the date listed for When Coverage Ends on the CONSTRUCTION RISK DECLARATIONS, this policy may be extended for up to 3 months, subject to no risk aggravating situation at the time of the extension request and subject to the same terms and conditions in effect at the time of extension, and subject to the premium(s) below. Additional agreement beyond 3 months is subject to agreement of the Company (ies).

The NAMED INSURED must request these extensions in writing and receive acceptance from the Company prior to the original expiration date of this Policy. If the NAMED INSURED does not provide the aforementioned written extension request(s), coverage provided hereunder shall terminate on the date listed for When Coverage Ends on the CONSTRUCTION RISK DECLARATIONS.

| Company | 03/20/2019 – 04/19/2019 | 04/19/2019 – 05/19/2019 | 05/19/2019 – 06/18/2019 |
|---|---|---|---|
| Westchester Fire Insurance Company | $3,768 + $151 TRIPRA | $3,768 + $151 TRIPRA | $3,768 + $151 TRIPRA |
| Endurance American Insurance Company | $3,768 + $151 TRIPRA | $3,768 + $151 TRIPRA | $3,768 + $151 TRIPRA |

All other terms and conditions remain unchanged.

BR Contract:10.10.18

**Endorsement Number 5**

**ASSIGNED LOSS ADJUSTER**

In the event of loss or damage, we agree to use the following adjuster for the adjustment of all claims made against this policy:

vrs VeriClaim, Inc.
120 Broadway
Suite 900
New York, NY 10271

All claims must be promptly reported to us via an ACORD Loss Notice, or its equivalent, with the notation at the bottom of the form indicating the claim has been assigned to the designated adjuster as set forth in the policy. The designated adjuster shall report directly to us.

The Company(ies) reserve the right to engage or substitute other adjuster(s) or investigators at any time and at our sole discretion.

All other terms and conditions remain unchanged.

MS-61496 (11/17)                                     Page 39 of 42

**NUCLEAR, BIOLOGICAL, CHEMICAL, RADIOLOGICAL EXCLUSION**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.  THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:**

**CONSTRUCTION RISK COVERAGE FORM**

The following exclusions are added to your Policy or Coverage Part.

This insurance does not apply to:

A. Loss or damage arising directly or indirectly from nuclear detonation, reaction, nuclear radiation or radioactive contamination, all whether controlled or uncontrolled, or due to any act or condition incident to any of the foregoing, whether such loss be direct or indirect, proximate or remote, or be in whole or in part caused by, contributed to, or aggravated by, any physical loss or damage insured against by this Policy or Coverage Part, however such nuclear detonation, reaction, nuclear radiation or radioactive contamination may have been caused. This exclusion replaces any other nuclear detonation, nuclear reaction, nuclear radiation or radioactive contamination exclusions found elsewhere in this Policy.

B. Loss or damage arising directly or indirectly from the dispersal, application or release of, or exposure to, chemical, radiological, or biological materials or agents, all whether controlled or uncontrolled, or due to any act or condition incident to any of the foregoing, whether such loss be direct or indirect, proximate or remote, or be in whole or in part caused by, contributed to, or aggravated by, any physical loss or damage insured against by this Policy or Coverage Part, however such dispersal, application, release or exposure may have been caused.

C. If this endorsement is attached to a Commercial Inland Marine Policy or Coverage Part, the term loss or damage is changed to Loss.

All other terms and conditions remain unchanged.

BR Contract 10.10.16
**Endorsement Number 7**

**PRIMARY INSURANCE INSURED PROJECT ENDORSEMENT**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.  THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:**

**CONSTRUCTION RISK COVERAGE FORM**

Notwithstanding anything to the contrary contained in the policy to which this endorsement is attached, it is hereby agreed and understood that the Policy is modified as follows:

The Policy at PART E – POLICY CONDITIONS, Clause 13. Other Insurance, Clause 14. Contributing Insurance and Clause 15. Excess Insurance are amended to include the following:

Notwithstanding anything to the contrary herein, it is agreed that this Policy provides primary insurance for the NAMED INSURED, but only in relation to the INSURED PROJECT as described upon the Declarations. In the event of LOSS which is insured by this Policy be also insured under any other policy (ies) of insurance in effect for the benefit of the NAMED INSURED or any Additional Insureds, and which is of the same type and covering the INSURED PROJECT, this Company will indemnify the NAMED INSURED as if such other policy (ies) of insurance did not exist and the Company shall waive rights of recovery, if any, against the insurer(s) of such other policy (ies) of insurance. It is the intent of this Policy to only be primary as respects the INSURED PROJECT described upon the Declarations.

This provision shall not apply to any coverage provided by this Policy for Temporary Off-site Storage and Off-Site Staging Areas or Property in Transit EXTENSIONS OF COVERAGE.

All other terms and conditions remain unchanged.

BR Contract 10.10.16
**Endorsement Number 8**

## POLICY LANGUAGE APPLICABLE TO THE INDIVIDUAL COMPANY

It is hereby understood and agreed that the following change is made to this policy:

In addition to each Company(ies)'s Declaration's Page, Premium Payment Conditions, Premium, Producer Compensation Notices / Disclosures and Service of Suit Clause if applicable; the following Company(ies)'s endorsements, forms and exclusions are added and apply only towards the individual Company(ies) to which such is noted. No other Company (ies) may claim wording as their own, whether more or less restrictive in the event of loss to apply against all recovery.

The terms and conditions contained within this policy shall supersede those of any General Policy Conditions; General Property Conditions; terms and conditions within a Policy Jacket; Fire Policy Form; terms and conditions of the Declarations Page which conflict with the policy; and any other endorsements or conditions added by the Company(ies) upon policy's issuance or thereafter which are not noted in the above paragraph or listed below or have not been previously advised and agreed to by the Insured.

Engineering fees, loss prevention fees, plan reviews and subsequent services / products, surplus lines taxes and fees, US FET Taxes and various state and local taxes and fees such as the Florida Fire College Trust Fund and Florida Emergency Management, Preparedness & Assist. Fund Trust for the State of Florida and/or other assessments should be viewed as unequal as charged on an individual Company basis separately from premium.

### Westchester Fire Insurance Company
- IL 09 52 (01/15) - Cap on Losses From Certified Acts Terrorism
- ALL-20887 (10/06) - CHUBB Producer Compensation Practices & Policies
- MA-608255p (04/15) - Claims Directory Property and Inland Marine
- BB-5W58a (09/11) - Common Policy Declarations
- IL 02 78 (09/08) - District of Columbia Changes - Cancellation And Nonrenewal
- CPFs2 (03/08) - Forms Schedule
- CPfs2 (12/10 - Forms Schedule
- TR-45231 (01/15) - Policyholder Disclosure Notice Of Terrorism Insurance Coverage
- CC-1K11h (03/14) - Signatures
- ALL-21101 (11/06) - Trade or Economic Sanctions Endorsement
- IL P 001 (01/04) - U.S. Treasury Departments' Office of Foreign Assets Control ("OFAC") Advisory Notice to Policyholders

### Endurance American Insurance Company
- PN 0001 07 12 - Policy Holder Notice –U.S. Treasury Department's Office of Foreign Assets Control (OFAC)
- PN 0007 01 15 - Claim Notice
- IMG 0001 04 13 - Inland Marine Declarations
- IL 1007 01 14 - Signature Page
- CL 0172 10 06 - Amendatory Endorsement District Of Columbia
- CL 0600 01 15 - Certified Terrorism Loss
- CL 0605 01 15 - Certified Terrorism Loss Disclosure Of Premium And Federal Share Of Insured Loss

All other terms and conditions remain unchanged.



# Claims Directory
# Property and Inland Marine

**Claims or Loss Notices related to this policy should be reported to the following:**

| Claim Office | Email and Fax | Location |
|---|---|---|
| Chubb North American Claims | First Notices Email:<br>ChubbClaimsFirstNotice@Chubb.com<br><br>First Notices Fax:<br>  (877)-395-0131 (Toll Free)<br>  (302)-476-7254 (Local)<br><br>Phone:<br>  (800)-433-0385 - Business Hours<br>  (800)-523-9254 – After Hours | P.O. Box 5122<br>Scranton, PA<br>18505-0554 |

©Chubb. 2016. All rights reserved.

# SIGNATURES

| Named Insured<br>MRP Realty | | | Endorsement Number |
|---|---|---|---|
| Policy Symbol<br>IMC | Policy Number<br>I11132479 001 | Policy Period<br>11/10/2017 to  03/20/2019 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company)<br>Westchester Fire Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

THE ONLY SIGNATURES APPLICABLE TO THIS POLICY ARE THOSE REPRESENTING THE COMPANY NAMED ON THE FIRST PAGE OF THE DECLARATIONS.

By signing and delivering the policy to you, we state that it is a valid contract.

**INDEMNITY INSURANCE COMPANY OF NORTH AMERICA** (A stock company)
**BANKERS STANDARD FIRE AND MARINE COMPANY** (A stock company)
**BANKERS STANDARD INSURANCE COMPANY** (A stock company)
**ACE AMERICAN INSURANCE COMPANY** (A stock company)
**ACE PROPERTY AND CASUALTY INSURANCE COMPANY** (A stock company)
**INSURANCE COMPANY OF NORTH AMERICA** (A stock company)
**PACIFIC EMPLOYERS INSURANCE COMPANY** (A stock company)
**ACE FIRE UNDERWRITERS INSURANCE COMPANY** (A stock company)
**WESTCHESTER FIRE INSURANCE COMPANY** (A stock company)

436 Walnut Street, P.O. Box 1000, Philadelphia, Pennsylvania 19106-3703

REBECCA L. COLLINS, Secretary

JOHN J. LUPICA, President

_____
Authorized Representative

Chubb. Insured.™

# EXHIBIT 2


Endurance

**Endurance American Insurance Company**
Wilmington, Delaware

## INLAND MARINE DECLARATIONS

In consideration for the payment of premium and subject to all of the provisions of this policy, we agree to provide you the insurance as stated in this policy.

| | |
|---|---|
| **POLICY NUMBER:** | IMU100120131-00 |
| **PRIOR POLICY NUMBER:** | New |
| **Insurer:** | Endurance American Insurance Company |
| **Producer:** | AmWins Brokerage-GA-Alpharetta |
| **Address:** | 3630 Peachtree Road |
| | Suite 1700 |
| | Atlanta, GA  30326 |
| **Producer Code:** | INLM0063 |
| **Sub-Producer Code:** | N/A |
| **Producer Contact:** | Grant Chiles |
| **Producer Phone Number:** | 404-920-3672 |
| **Producer E-Mail:** | grant.chiles@amwins.com |
| **Named Insured:** | MRP Realty |
| **Address:** | 3050 K Street, NW |
| | Suite 125 |
| | Washington, DC 20007 |
| **Policy Period:** | From: 11-10-2017      To: 03-20-2019 |
| | (12:01 AM Standard Time on both dates, at the address of the Named Insured noted above.) |
| **Business Description:** | Builders Risk |
| **Additional Insureds:** | Per BR Contract 10.10.16 |
| **Mortgagees:** | Per BR Contract 10.10.16 |
| **Loss Payable Name and Address:** | Per BR Contract 10.10.16 |

| | | |
|---|---|---|
| Policy Issuance Date: | February 12, 2018 | Endurance American Insurance Company |
| Policy Issuance Office: | Chicago, Illinois | IMG 0001 0413 |

Page 1 of 2

**Forms made a part of this policy at inception:**

PN 0001 07 12   Policy Holder Notice – U.S. Treasury Department's Office of Foreign Assets Control (OFAC)
PN 0007 01 15   Claim Notice
IMG 0001 04 13 Inland Marine Declarations
IL 1007 01 14   Signature Page
CL 0172 10 06   Amendatory Endorsement District Of Columbia
CL 0600 01 15   Certified Terrorism Loss
CL 0605 01 15   Certified Terrorism Loss Disclosure Of Premium And Federal Share Of Insured Losses

**Premium:**

|                                       |          |
|---------------------------------------|----------|
| Inland Marine                         | $62,167  |
| Terrorism                             | $2,487   |
| **Premium Due at Policy Inception:**  | **$64,654** |
| **Minimum Premium:**                  | **$16,164** |

_____

Authorized Representative

_____02/12/18_____

Date

Policy Issuance Date:        February 12, 2018                    Endurance American Insurance Company
Policy Issuance Office:      Chicago, Illinois                                     IMG 0001 0413

Page 2 of 2



**Endurance American Insurance Company**
**750 3rd Avenue**
**New York, NY 10017**

IN WITNESS WHEREOF, the Insurer has caused this Policy to be signed by its President and Senior Vice President and countersigned where required by law on the Declarations page by its duly authorized representative.

**Senior Vice President**                              **President**

BR Contract 10.10.16

## PARTICIPATION PAGE

In consideration of the premium charged, the subscribers hereto, hereinafter referred to as the Company(ies), do severally, but not jointly, agree to indemnify the Insured for the amount recoverable in accordance with the terms and conditions of the Policy, pages 1 – 42.

Provided that:

1. The collective liability of the Company(ies) shall not exceed the Limit of Liability or any appropriate Sublimit of Liability or any Annual Aggregate limit.
2. The liability of each of the Company(ies) shall not exceed the Limit to the pro-rata percentage of liability set against its name.

NAMED INSURED:  3534 East Cap Venture, LLC

Lines Bound:

| Company | Policy Number | Participation | Deposit Premium | Authorized Signature |
|---------|---------------|---------------|-----------------|----------------------|
| Westchester Fire Insurance Company | I11132479 001 | 50% or $14,000,000 part of $28,000,000 | $64,654 | |
| Endurance American Insurance Company | IMU100120131-00 | 50% or $14,000,000 part of $28,000,000 | $64,654 | *Jason Holloman* |

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limits or conditions of the policy except as herein above set forth.  Any changes to the terms and conditions of this policy (ies) must be accepted in writing by each of the subscribing insurers before any coverage change becomes effective.

## CONSTRUCTION RISK DECLARATIONS

NAMED INSURED & Mailing Address

**3534 East Cap Venture, LLC**
**3050 K Street, NW**
**Suite 125**
**Washington, DC 20007**

Producer's Name & Address

**AmWINS Brokerage of Georgia, LLC**
**3630 Peachtree Road NE**
**Suite 1700**
**Atlanta, GA  30326**

| General Policy Information | | |
|---|---|---|
| When Coverage Begins: | November 10, 2017 | 12:01 A.M. Local Time at the NAMED INSURED's Address |
| When Coverage Ends: | March 20, 2019 | 12:01 A.M. Local Time at the NAMED INSURED's Address |

**In return for the payment of premium and subject to all the terms and conditions of this Policy, the Company agrees to provide the insurance as stated in this Policy.**

Whenever "NCP" is shown below it denotes no coverage has been purchased and no coverage is provided. Whenever "NA" is shown below it denotes "Not Applicable" to that coverage, deductible, Sub-limit of Insurance, or other policy provision.

## I. Description, Location and Estimated Completed Value of the INSURED PROJECT at Policy Inception

A. Estimated construction contract price:  $24,750,000

B. Value of all property not declared in A. above to be insured by this Policy and intended for installation under the construction contract, whether supplied by the INSURED PROJECT owner(s) or others(s): **NCP**

C. Estimated Completed Value of the INSURED PROJECT at Policy Inception: $24,750,000

D. INSURED PROJECT Name:  3534 E. Capitol St. NE, Washington, DC 20019

E. INSURED PROJECT Description/Construction:  2 attached 4 story mixed use/multifamily wood frame structures with 1 level of below grade parking.  The below-grade parking and ground floor podium levels will consist of concrete construction.  The above grade residential/retail floors are anticipated to be constructed with wood.

F. INSURED PROJECT Site: 3534 E. Capitol St. NE,
Washington, DC 20019

## II. Limits of Insurance

$    28,000,000

The Company will pay no more for direct physical LOSS in any one OCCURRENCE than the above Limit of Insurance.  In addition, the Company will not pay for more than its proportionate share of the following Sub-limits of Insurance and Annual Aggregate Sub-limits of Insurance, which are part of, and not in addition to, the Limit of Insurance above:

BR Contract 10.10.16

**Sublimits of Insurance**

| | | | |
|---|---|---|---|
| A. | Physical LOSS to the INSURED PROJECT | $ | 24,750,000 |
| B. | Delay in Opening (per Endorsement Number 1) | $ | 3,250,000 |
| C. | EXISTING PROPERTY | $ | NCP |
| D. | Damage to EXISTING PROPERTY - Limited | $ | NCP |
| E. | Property in Transit per Conveyance | $ | 500,000 |
| F. | Temporary Off-site Storage and Off-site Staging Areas, any one location | $ | 500,000 |
| G. | Expediting and Extra Expenses | | 20% of the insured physical LOSS, or $1,000,000; whichever is less |
| H. | Debris Removal | | 25% of the insured physical LOSS, or $2,500,000; whichever is less |
| I. | Trees, Shrubs and Plants | $ | 100,000 |
| J. | Protection Service Charges | $ | 100,000 |
| K. | Fire Protective Equipment Recharge | $ | 100,000 |
| L. | Valuable Papers and Records | $ | 250,000 |
| M. | Claim Preparation Expenses | $ | 50,000 |
| N. | Protection of Insured Property Pre-LOSS | $ | 500,000 |
| O. | Architects and Engineers Fees | $ | 250,000 |
| P. | Office and Construction Trailers/Semi-trailers and their Contents | $ | 50,000 |
| Q. | Ordinance or Law | $ | Per Endorsement Number 3 |
| R. | TESTING | $ | Included |
| S. | Business Personal Property | $ | Included |
| T. | Contract Penalty | $ | 10,000 |
| U. | TOWER CRANE Re-Erection Expense | $ | 50,000 |
| V. | Errors or Omissions | $ | 100,000 |
| W. | NAMED WINDSTORM | $ | 28,000,000 |

BR Contract 10.10.16

## Annual Aggregate Sub-limits of Insurance

**If a Sub-limit of Insurance is shown below for FLOOD or EARTH MOVEMENT, the applicable Excluded Cause of LOSS contained in the CONSTRUCTION RISK COVERAGE FORM is deleted.**

| | | | | |
|---|---|---|---|---|
| A. | FLOOD | Per OCCURRENCE | $ | 10,000,000 |
| | | Annual Aggregate | $ | 10,000,000 |
| B. | EARTH MOVEMENT | Per OCCURRENCE | $ | 28,000,000 |
| | | Annual Aggregate | $ | 28,000,000 |
| C. | Pollution or Contamination Clean-Up | Per OCCURRENCE | $ | 100,000 |
| | | Annual Aggregate | $ | 100,000 |
| D. | Limited Coverage for FUNGUS, Wet Rot, Dry Rot or Bacteria | Per OCCURRENCE | $ | 100,000 |
| | | Annual Aggregate | $ | 100,000 |

**III. Escalation Clause**     The Sub-limit of Insurance for Physical LOSS to the INSURED PROJECT stated above is considered an estimate.  Should any increase in the Estimated Completed Value of the INSURED PROJECT occur, the Sub-limit of Insurance for Physical LOSS to the INSURED PROJECT will automatically increase to reflect the change concurrently, subject to a maximum increase of 5% of the original Sub-limit of Insurance stated above.  The Per OCCURRENCE Limit of Insurance stated above will increase by the same amount.

This clause does not apply to other Sub-limits of Insurance, including Delay in Opening, if endorsed to this Policy, nor does it apply to the Annual Aggregate Sub-limits of Insurance.

## IV. Deductibles

$10,000 direct physical LOSS in any one OCCURRENCE except;

| | | | |
|---|---|---|---|
| A. | LOSS in any one OCCURRENCE caused by or resulting from FLOOD | $ | 25,000 |
| B. | LOSS in any one OCCURRENCE caused by or resulting from EARTH MOVEMENT | $ | 25,000 |
| C. | LOSS in any one OCCURRENCE caused by or resulting from NAMED WINDSTORM | $ | 25,000 |
| D. | LOSS in any one OCCURRENCE caused by or resulting from TESTING | $ | 25,000 |
| E. | LOSS in any one OCCURRENCE caused by or resulting from WATER DAMAGE | $ | 50,000 |

BR Contract 10.10.16

**V. Extension of Term**

This Policy may be extended per Endorsement Number 4. The NAMED INSURED must request these extensions in writing and receive acceptance from the Company prior to the original expiration date of this Policy. If the NAMED INSURED does not provide the aforementioned written extension request(s), coverage provided hereunder shall terminate on the original expiration date stated in this Policy.

**VI. Additional NAMED INSURED Information**

All owners, all contractors and subcontractors of every tier, and tenants at the project location, as required by any contract, subcontract for the INSURED PROJECT, and then only as their respective interests may appear are recognized as Additional NAMED INSUREDS hereunder. As respects architects, engineers, manufacturers and suppliers, their interest is limited to their site activities only.

Additional NAMED INSUREDS as provided above, may be endorsed to this Policy or shown on ACORD Certificates of Insurance (or equivalent) issued by Marsh USA copies of which must be forwarded and approved by the Company.

3534 East Cap Venture, LLC shall be deemed the sole and irrevocable agent of each and every Insured hereunder for the purpose of giving and receiving notices to/from the Company, giving instruction to or agreeing with the Company as respects Policy alteration, for making or receiving payments of premium or adjustments to premium, and as respects the payment for claims.

**VI. Mortgagee and Loss Payee Information**

NA

BR Contract 10.10.16

# CONSTRUCTION RISK COVERAGE FORM

Words and phrases that appear in CAPITALS are defined in this Policy.  Refer to PART F. DEFINITIONS section in this Policy.

## PART A
## INSURING AGREEMENT

This Policy, subject to the terms, conditions and exclusions stated herein or endorsed hereto, insures against direct physical LOSS to property of every kind and description intended to become a permanent part of, or be consumed in, the construction, fabrication, assembly, installation, erection or alteration of the INSURED PROJECT, as described on the Declarations and for which values have been declared and deposit premium paid. If not covered by other insurance and if values have been declared to the Company for deposit premium calculation, this Insuring Agreement shall include coverage for TEMPORARY STRUCTURES.

## PART B
## LIMITS OF INSURANCE

The Company will pay no more for direct physical LOSS in any one OCCURRENCE than the amount stated on Section II. of the Declarations, subject to the following:

1.    Sub-limits of Insurance

      The Company will pay no more for direct physical LOSS in any one OCCURRENCE than the Sub-limit of Insurance stated on Section II of the Declarations for each applicable Coverage or Extension of Coverage.

      If a Sub-Limit of Insurance for NAMED WINDSTORM is stated on the Declarations that does not state "Included" or is less than the Limit of Insurance Per OCCURRENCE stated on the Declarations, the most the Company will pay for under this Policy in any one OCCURRENCE from a NAMED WINDSTORM for all Coverage(s) and Extensions of Coverage in or endorsed on this Policy, including the Delay in Opening Coverage, is the Sub-limit of Insurance for NAMED WINDSTORM stated on the Declarations.

2.    Annual Aggregate Sub-limits of Insurance

      Notwithstanding the foregoing, and irrespective of the stated Limit of Insurance or Sub-limits of Insurance on the Declarations, the most the Company will pay for direct physical LOSS in any one OCCURRENCE, and in the aggregate for direct physical LOSS from all OCCURRENCES in any one Policy year for all Coverage(s) and Extensions of Coverage in or endorsed on this Policy, including the Delay in Opening Coverage, is the Annual Aggregate Sub-limit(s) of Insurance stated on the Declarations.

These Sub-limits of Insurance and Annual Aggregate Sub-limits of Insurance are part of, and not in addition to, the Limit of Insurance per OCCURRENCE stated on the Declarations.

## PART C
## EXTENSIONS OF COVERAGE

This Policy, subject to all the terms, conditions and exclusions stated herein or endorsed hereto, is extended to insure the following extensions of coverage if a dollar value is stated in the applicable Sub-limit(s) of Insurance or Annual Aggregate Sub-limit(s) of Insurance on the Declarations.

1.    EXISTING PROPERTY

      The Company will pay for direct physical LOSS by an insured peril to the EXISTING PROPERTY at the INSURED PROJECT site.

For the purposes of this Extension of Coverage, EXISTING PROPERTY does not include any personal property or underground utilities of any kind.

2. Damage to EXISTING PROPERTY – Limited

The Company will pay for direct physical LOSS by an insured peril to the EXISTING PROPERTY at the INSURED PROJECT Site. Coverage for such EXISTING PROPERTY applies only: (1) when the insured property is contained within or is attached to the EXISTING PROPERTY; and (2) to the extent LOSS arises out of the contractor's performance of work on or within the EXISTING PROPERTY.

For the purposes of this Extension of Coverage, EXISTING PROPERTY does not include personal property or underground utilities of any kind.

The Company will not pay for LOSS to EXISTING PROPERTY caused by or resulting from the following:

A. Mechanical breakdown, including rupture or bursting caused by centrifugal force;
B. Electrical injury or disturbance caused by electrical currents artificially generated;
C. Interruption of incoming electricity, fuel, water, gas, steam, refrigerant or other services except as specifically covered in this policy or unless such interruption of services directly result in physical LOSS not otherwise excluded by this policy.
D. Explosion, rupture or bursting of steam boilers, steam pipes, steam turbines or steam engines owned, leased or operated under the Insured's (including Additional Insured's) control. Direct physical LOSS caused by or resulting from explosion of gases or fuel within the furnace or any fired vessel or within the flues or passages through which the gases or combustion pass is covered.
E. LOSS caused by or resulting from EARTH MOVEMENT, FLOOD, NAMED WINDSTORM or the peril of wind.
F. Any Delay in Opening coverage, including, but not limited to; Loss of RENTAL INCOME, Loss of BUSINESS INCOME, SOFT COSTS/ADDITIONAL EXPENSES.
G. Any Extension of Coverage for Expediting and Extra Expenses.

Exclusions A, B and C apply unless direct physical LOSS by an insured peril ensues and then this policy insures only such ensuing direct physical LOSS.

3. Property in Transit

Property in due course of transit that is intended to become a permanent part of, or be consumed in the INSURED PROJECT and subject to the following additional conditions:

A. Coverage shall attach upon commencement of loading and cease upon completion of unloading.

B. No coverage is provided for airborne shipments.

C. No coverage is provided for waterborne shipments except on coastal and inland waterways.

D. This Extension of Coverage shall be void if the NAMED INSURED enters into any   agreement with a carrier, releasing them from their common law or statutory liability or agreeing that this Policy shall in any way inure to the benefit of such carriers. However, the NAMED INSURED may, without prejudice to this Extension of Coverage, accept such bills of lading, receipts, or contracts of transportation as are ordinarily issued by carriers containing a limitation as to the value of insured property.

4. Temporary Off-Site Storage and Off-Site Staging Areas

Property to be used in, or incidental to, completion of the INSURED PROJECT while located in temporary off-site storage or off-site staging areas away from the INSURED PROJECT site anywhere within the Policy territory, excluding property:

A. Located at the manufacturer's or supplier's site while being manufactured or processed; or

    B.   While in due course of transit if such equipment is the property of, or in the care, custody and control of a manufacturer or supplier.

5.    Expediting and Extra Expenses

In the event of direct physical LOSS insured hereunder, and occurring during the Policy period, the Company will pay for the reasonable and necessary extra costs to make temporary repairs, and to expedite the permanent repair or replacement of the insured property which is damaged by an insured peril; including additional wages for overtime, night work, and work on public holidays and the extra costs of express freight or other rapid means of transportation. In addition, the Company will pay for the reasonable and necessary Extra Expense incurred during the period of restoration and repair that are over and above the total costs that would normally have been incurred during the same period of time had no direct physical LOSS occurred. Extra Expense shall include equipment rental, emergency expenses, temporary use of property, demobilization and remobilization of equipment and facilities and other expenses necessarily incurred to reduce LOSS; excluding however, any coverage provided by the Delay In Opening Endorsement if endorsed to this Policy.

6.    Debris Removal

The Company will pay the expense incurred in the removal of debris of the damaged insured property under this Policy, as a result of direct physical LOSS to insured property by an insured peril.

The Company will not pay the expense to:

A.    Extract CONTAMINANTS OR POLLUTANTS from the debris; or

B.    Extract CONTAMINANTS OR POLLUTANTS from land or water; or

C.    Remove, restore or replace contaminated or polluted land or water; or

D.    Remove or transport any property or debris to a site for storage or decontamination required because the property or debris is affected by CONTAMINANTS OR POLLUTANTS whether or not such removal, transport, or decontamination is required by law or regulation.

It is a condition precedent to recovery under this Extension of Coverage that the Company shall have paid or agreed to pay for direct physical LOSS to the insured property hereunder, and that the NAMED INSURED shall give written notice to the Company of intent to claim for cost of removal of debris not later than twelve months after the date of such direct physical LOSS.

Upon exhaustion of the Debris Removal Sub-limit of Insurance and the per OCCURRENCE Limit of Insurance shown on the Declarations, the Company will pay up to an additional $2,500,000 per OCCURRENCE and in the aggregate for debris removal.

7.    Trees, Shrubs and Plants

The Company will pay for direct physical LOSS by an insured peril to trees, shrubs and plants, which are part of the INSURED PROJECT, and which have been installed, are in the process of being installed or awaiting installation at the INSURED PROJECT site.

8.    Protection Service Charges

When a fire department, police department or other governmental authority is called to save or protect insured property from direct physical LOSS by an insured peril, the Company will pay the charges that result from:

A.  A written contract or agreement signed prior to the direct physical LOSS; or

B.  Required by local ordinance.

9. **Fire Protective Equipment Recharge**

The Company will pay for the cost to recharge or refill any fire protective equipment owned, in the control of, or used to protect insured property of the NAMED INSURED, when discharged:

A. To prevent or control direct physical LOSS by an insured peril;

B. Accidentally; or

C. As a result of malfunction of the equipment.

In respect of items B. and C. above, the Company will pay for amounts in excess of amounts recoverable under any manufacturer's or supplier's warranty.

10. **Valuable Papers and Records**

The Company will pay the cost incurred by the NAMED INSURED to research, replace, restore, or copy those valuable papers, records, documents, blueprints, plans or drawings that are directly related to the INSURED PROJECT, as a result of direct physical LOSS by an insured peril.

11. **Claim Preparation Expenses**

The Company will pay reasonable expenses incurred by the NAMED INSURED for preparing and certifying details of a claim resulting from a direct physical LOSS which would be payable under this Policy, provided that the total amount of the direct physical LOSS exceeds the applicable Deductible. Claim Preparation Expenses do not include fees or expenses of general public adjusters, lawyers, or representatives or employees of any broker or agent, and do not include salary or wages of employees of the NAMED INSURED or any of its affiliates.

12. **Protection of Insured Property Pre-LOSS**

A. If it is necessary to protect or move insured property from an INSURED PROJECT site, off-site storage location or off-site staging area to preserve and protect it from imminently sustaining direct physical LOSS by an insured peril, the Company will pay for those reasonable and necessary expenses incurred by the NAMED INSURED in an effort to protect or remove insured property, including moving and storage expenses, but only to the extent that such expenses reduced LOSS which would otherwise be recoverable under this policy.

B. If, as a result of the NAMED INSURED's efforts to protect the insured property, no direct physical LOSS to the INSURED PROJECT occurs, the deductible applicable to this Extension of Coverage is the deductible stated on the Declarations for direct physical LOSS in any one OCCURRENCE or $100,000, whichever is less.

C. If direct physical LOSS to the INSURED PROJECT does occur, the deductible applicable to the cause of LOSS as shown on the Declarations shall apply, and a separate deductible for this Extension of Coverage shall not apply.  However, if the direct physical LOSS and expenses incurred hereunder do not exceed the deductible shown on the Declarations for the applicable cause of LOSS, the deductible applicable to this Extension of Coverage is the deductible stated on the Declarations for direct physical LOSS in any one OCCURRENCE or $100,000, whichever is less.

13. **Architects and Engineers Fees**

In the event of direct physical LOSS by an insured peril and occurring during the Policy period, the Company will pay necessary and reasonable compensation for architect's and engineer's services and expenses incurred by the NAMED INSURED in connection with the repair or replacement of the INSURED PROJECT, but excluding any costs relating to improvements and betterments to any insured property.

This Extension of Coverage shall not apply to and shall not modify, amend or alter the Delay in Opening Architect and Engineers Fees Coverage when a value is stated and endorsed to this Policy.

14. Office and Construction Trailers/Semi-trailers and their Contents

The Company will pay for direct physical LOSS to office and construction trailers/semi-trailers and their contents, owned by the NAMED INSURED or in the NAMED INSURED's care, custody or control while in, on or within 1,000 feet of the INSURED PROJECT site.

This coverage includes furniture, fixtures, data processing equipment, fax systems and phone systems but this Extension of Coverage does not apply to direct physical LOSS to tools or other contractor's equipment, jewels, jewelry, watches, money, stamps, deeds, letters of credit, documents, tickets, plans, blueprints, specifications or other valuable papers.

This Policy is excess over any other valid or collectible insurance available to the owner of the property.

15. Ordinance or Law

If the repair of direct physical LOSS to insured property caused by an insured peril becomes    subject to the enforcement of any ordinance or law that is in force at the time of direct physical LOSS and that:

A. Requires the demolition of parts of the undamaged insured property; or

B. Regulates the construction or repair of damaged insured property;

then the Company will pay for:

1. The cost of demolishing the undamaged insured property and clearing the site of debris from such demolition; and

2. The value of such undamaged part of the insured property which must be demolished; and

3. The increased cost of repair and/or reconstruction of the damaged and undamaged insured property on the same site and limited to the minimum requirements of such ordinance or law regulating the repair or reconstruction of the damaged insured property on the same site. However, the Company will not pay for any increased cost of repair or reconstruction unless the damaged insured property is actually rebuilt or replaced.

The Company will not pay the following costs:

i. Cost of demolition or increased cost of repair or reconstruction, debris removal, or other consequential loss caused by the enforcement of any ordinance or law regulating asbestos or other hazardous material;

ii. Cost of any governmental direction or request declaring that asbestos or other hazardous material present in, part of or utilized on any damaged or undamaged portion of insured property that can no longer be used for the purpose for which it was intended or installed and must be removed, modified or abated;

iii. Cost of demolition or increased cost of repair or reconstruction, debris removal, or other consequential loss caused by the enforcement of any ordinance or law regulating CONTAMINANTS OR POLLUTANTS; or

iv. Cost of compliance with the enforcement of any ordinance or law which the NAMED INSURED or owner would have otherwise been required to comply by nature of such ordinance or law in the absence of any direct physical LOSS covered by this Policy.

16. **TESTING**

The Company will pay for direct physical LOSS to insured property by an insured peril while such property is undergoing TESTING during the TESTING PERIOD.

Each of the following is a condition precedent to coverage for TESTING:

A. All specified protective materials, systems and instrumentation are installed, activated and operational.

B. No supervisory or safety system has been deliberately circumvented, unless such circumvention is necessary for the conduct of testing activities as recommended by written testing procedures and/or manufacturer's specifications and provided that such circumvention does not extend beyond that necessary for conduct of said individual activities.

17. **Business Personal Property**

The Company will pay for direct physical LOSS by an insured peril to business personal property intended to be placed in the INSURED PROJECT. This property is insured while in transit and while located at the INSURED PROJECT site. For the purposes of this Extension of Coverage, business personal property includes furniture and fixtures to be placed in but not permanently installed as part of the INSURED PROJECT, including but not limited to business personal property such as beds, desks, chairs, dressers, nightstands, televisions and phones.

18. **Contract Penalty**

If the first NAMED INSURED is a General Contractor, the Company will pay the applicable contract penalties the first NAMED INSURED is required to pay for late completion or non-completion of the INSURED PROJECT as a result of direct physical LOSS to insured property by an insured peril. The penalties must be specified in the construction contract, signed prior to the start of construction.

It is a condition precedent to recovery under this Extension of Coverage that the NAMED INSURED use due diligence and dispatch in restoring the damaged property to the condition existing prior to the LOSS.

This Extension of Coverage shall not apply to and shall not modify, amend or alter the Delay in Opening Coverage when a value is stated and endorsed to this Policy.

19. **Reward**

At the Company's option, the NAMED INSURED may be reimbursed for rewards paid, other than to the NAMED INSURED, or any of the NAMED INSURED's partners, members, managers or officers, for information leading to the conviction of any one or more persons responsible for LOSS insured under this Policy. The Company will be the sole judge as to the payment and amount of the reimbursement.

The most the Company will pay in any one OCCURRENCE under this Extension of Coverage is $100,000.

20. **TOWER CRANE Re-Erection Expense**

If a TOWER CRANE not covered under this Policy is damaged as a result of direct physical LOSS by an insured peril while at the INSURED PROJECT Site, the Company will pay the reasonable and necessary costs incurred by the NAMED INSURED to re-erect a TOWER CRANE if necessary to complete the INSURED PROJECT.

This Extension of Coverage does not apply to and shall not modify, amend or alter any other Extension of Coverage or Delay in Opening coverage insured by this Policy and such coverage is expressly excluded herein.

21. Pollution or Contamination Clean-Up

The Company will pay necessary and reasonable expenses incurred by the NAMED INSURED to clean-up and remove CONTAMINANTS OR POLLUTANTS from land or water confined to the INSURED PROJECT site(s) if the release, discharge or dispersal is caused by or results in direct physical LOSS that occurs during the Policy period, and which is not excluded by this Policy.

The Company will not pay for the costs to test for, monitor or assess the existence, concentration or effects of CONTAMINANTS OR POLLUTANTS except for testing which is performed in the course of clean-up and removal of the CONTAMINANTS OR POLLUTANTS from the land or water.

No liability shall exist under this provision unless such expenses are reported to the Company within 180 days of the date of direct physical LOSS.

22. Limited Coverage for FUNGUS, Wet Rot, Dry Rot or Bacteria

A. The coverage described below in B. only applies when FUNGUS, wet rot, dry rot or bacteria results directly from an OCCURRENCE that is covered by this Policy, which takes place during the policy period and only if all reasonable means were used to save and preserve the property from further LOSS at the time of and after that OCCURRENCE.

B. Under this Extension of Coverage, the Company will pay for:

1. Direct physical LOSS to insured property at the INSURED PROJECT caused by FUNGUS, wet rot, dry rot or bacteria, including the cost of removal of the FUNGUS, wet rot, dry rot or bacteria;

2. The cost to tear out and replace any part of a building or other insured property as needed to gain access to FUNGUS, wet rot, dry rot or bacteria covered by this Endorsement; and

3. The cost of testing performed after removal, repair, replacement or restoration of the damaged insured property is completed, provided there is a reason to believe that FUNGUS, wet rot, dry rot or bacteria are present.

C. The coverage provided herein does not increase any other applicable Limit of Insurance or Sub-limit of Insurance for the INSURED PROJECT. If a particular OCCURRENCE results in LOSS by FUNGUS, wet rot, dry rot or bacteria, as well as other LOSS, the Company will not pay more, for the total of all LOSS, than the applicable Limit of Insurance per OCCURRENCE stated on the Declarations.

If there is covered LOSS to the INSURED PROJECT, not caused by FUNGUS, wet rot, dry rot or bacteria, loss payment will not be limited by the terms of this Extension of Coverage, except to the extent that FUNGUS, wet rot, dry rot or bacteria causes an increase in the LOSS. Any such increase in the LOSS will be subject to the terms of this Extension of Coverage.

23. Errors or Omissions

If direct physical LOSS is not payable under this Policy solely due to an error or unintentional omission made by the NAMED INSURED:

A. in the description of where an INSURED PROJECT is physically located; or

B. in the reporting of an INSURED PROJECT;

this Policy is extended to cover such direct physical LOSS, to the extent it would have provided coverage had no such error or unintentional omission been made.

It is a condition of this Extension of Coverage that any error or unintentional omission must be reported by the NAMED INSURED to the Company in writing within 5 business days of discovery of such error or

BR Contract 10.10.16

omission by the NAMED INSURED's corporate officers or home office insurance department or risk manager.

This Extension of Coverage does not cover any property insured under any other provision of this Policy or under any other policy issued to the NAMED INSURED that is insured, coinsured or reinsured in whole or part by the Company or any of its affiliated companies, regardless of the exhaustion of any limit or sublimit of insurance.

Notwithstanding the foregoing, this Errors and Omissions clause shall not apply to and shall not modify, amend or alter the obligations of the NAMED INSURED as provided in the Reporting Endorsement attached to this Policy.

## PART D
## EXCLUSIONS

### Property Excluded

This Policy does not insure:

1. Land and land values and the value of cut, fill and backfill materials existing at the INSURED PROJECT site prior to project commencement; however, to the extent included in the contract bid documents and declared for premium purposes, the value of fill and backfill materials purchased for use in the completion of the INSURED PROJECT is not excluded.

   Notwithstanding the foregoing, labor and material charges incurred to move, remove, place or otherwise handle cut, fill and backfill materials, whether insured or uninsured in the foregoing, are covered to the extent such charges are included in the contract bid documents and declared for premium purposes;

2. Construction tools and equipment;

3. Vehicles or equipment licensed for highway use, watercraft or aircraft;

4. Railroad rolling stock;

5. Water, animals of any kind, standing timber, and growing crops;

6. Accounts, bills, currency, stamps, deeds, evidence of debt, checks, money, securities, or other property of a similar nature;

7. EXISTING PROPERTY at the INSURED PROJECT site, unless the value of same is declared to the Company and if a Sub-limit of Insurance is shown on the Declarations;

8. Property at locations other than at the INSURED PROJECT site, except Property that is in Transit or at Temporary Off-site Storage and Off-site Staging Areas if a Sub-limit of Insurance is shown on the Declarations;

9. Prototype, developmental, used machinery and equipment or any catalysts while undergoing any form of TESTING;

10. Refractory linings and brickwork during TESTING from the time of the first application of heat, unless LOSS directly results from physical LOSS to other insured property by an insured peril;

11. TRANSMISSION AND DISTRIBUTION LINES outside of the INSURED PROJECT site.

12. Any property while located at any site which stores, processes or otherwise handles or makes use of radioactive materials unless reported to and accepted by the Company. The foregoing shall not apply to locations or property making use of radioactive isotopes contained within equipment used for diagnostic or testing purposes.

BR Contract 10.10.16

## Excluded Causes of LOSS

**This Policy does not insure LOSS caused directly or indirectly by any of the following, and such LOSS is excluded regardless of any other cause or event that contributes concurrently, or in sequence to the LOSS:**

1.  A.  Hostile or warlike action in time of peace or war, including action in hindering, combating, or defending against an actual, impending, or expected attack:

    1.  By any government or sovereign power (de jure or de facto) or by any authority maintaining or using military, naval, or air forces; or

    2.  By military, naval, or air forces; or

    3.  By an agent of any such government, power, authority, or forces; it being understood that any discharge, explosion or use of any weapon of war employing nuclear fission or fusion will be conclusively presumed to be such a hostile or warlike action by such government, power, authority or forces;

    B.  Insurrection, rebellion, revolution, civil war, usurped power, or action taken by governmental authority in hindering, combating, or defending against such occurrence.

2.  LOSS, damage, costs, expenses, fines or penalties incurred or sustained by or imposed on any NAMED INSURED at the order of any government agency, court or authority arising from any cause whatsoever, except physical destruction of insured property by order of public authority to prevent spread of fire or explosion.

3.  Nuclear reaction or radiation or radioactive contamination however caused.  If fire ensues, liability is specifically assumed for direct physical LOSS by such ensuing fire, but not including any direct physical LOSS due to nuclear reaction, nuclear radiation or radioactive contamination.

4.  Dishonest or criminal act committed by:

    A.  the NAMED INSURED or of any of the NAMED INSURED's partners, employees, directors, trustees, or authorized representatives;

    B.  a manager or a member, or their partners, employees, directors or authorized representatives, if the NAMED INSURED is a limited liability company;

    C.  anyone else with an interest in the insured property, or their employees or representatives; or

    D.  anyone else to whom the insured property in entrusted for any purpose.

    This Excluded Cause of LOSS applies whether or not such persons are acting alone or in collusion with other persons or such acts occur during the hours of employment.

    This Excluded Cause of LOSS does not apply to insured property that is entrusted to others who are carriers for hire or to acts of destruction by employees of the NAMED INSURED.  But theft by employees of the NAMED INSURED is excluded.

5.  Shortage found upon taking inventory.

6.  Mysterious Disappearance.

7.  Infestation, disease, freeze, drought and hail, weight of ice or snow or any damage caused by insects, vermin, rodents or animals, but only as respects Trees, Shrubs and Plants.

8.  Consequential loss, damage or expense of any kind or description including but not limited to loss of market or delay, liquidated damages, performance penalties, penalties for non-completion, delay in completion, or non compliance with contract conditions, whether caused by a peril insured or otherwise;

    This Excluded Cause of LOSS does not apply to the extent coverage is provided in the EXTENSIONS OF COVERAGE – Contract Penalty nor shall it exclude Delay In Opening Coverage when endorsed to this Policy.

9.  LOSS covered under any written or implied guarantee or warranty by any manufacturer or supplier.

10. Asbestos Hazard:

    A.  Asbestos material removal unless the asbestos itself is damaged by fire, lightning, aircraft impact, explosion, riot, civil commotion, smoke, vehicle impact, windstorm or hail, vandalism, malicious mischief, leakage or accidental discharge from automatic fire protective systems.

    B.  Demolition or increased cost of reconstruction, repair, debris removal or loss of use necessitated by the enforcement of any law or ordinance regulating asbestos material.

    C.  Any governmental direction or request declaring that asbestos material present in or part or utilized on any undamaged portion of the insured property can no longer be used for the purpose for which it was intended or installed and must be removed or modified.

11. LOSS caused by, resulting from, contributed to or made worse by actual, alleged or threatened release, discharge, escape or dispersal of CONTAMINANTS OR POLLUTANTS, all whether direct or indirect, proximate or remote or in whole or in part caused by, contributed to or aggravated by any physical damage insured by this Policy.

    Nevertheless, if fire is not excluded from this Policy and a fire arises directly or indirectly from the release, discharge, escape or dispersal of CONTAMINANTS OR POLLUTANTS, any covered LOSS which arises directly from that fire shall (subject to the terms, conditions and limitations of this Policy) be insured.

    This Excluded Cause of LOSS shall not apply when LOSS is directly caused by fire, lightning, aircraft impact, explosion, riot, civil commotion, vandalism, malicious mischief, smoke, vehicle impact, windstorm or hail.  This Excluded Cause of LOSS shall also not apply when LOSS is directly caused by leakage or accidental discharge from automatic fire protective systems.

12. The increased cost to comply with the enforcement of any ordinance or law that:

    A.  Requires the demolition of parts of undamaged insured property;

    B.  Regulates the construction or repair of damaged insured property;

    This Excluded Cause of LOSS does not apply to the extent coverage is provided in the EXTENSIONS OF COVERAGE – Ordinance or Law.

13. LOSS, destruction, distortion, erasure, corruption, alteration, diminishment in value, or loss of use or usefulness of:

    A.  ELECTRONIC DATA by any cause whatsoever (including but not limited to COMPUTER VIRUS); and/or

    B.  ELECTRONIC MEDIA caused by or resulting from the LOSS, destruction, distortion, erasure, corruption, alteration, diminishment in value, or loss of use or usefulness of ELECTRONIC DATA;

    regardless of any other cause or event that contributes concurrently or in any sequence to the LOSS, damage, destruction, distortion, erasure, corruption, alteration, diminishment in value, or loss of use or usefulness of ELECTRONIC DATA or ELECTRONIC MEDIA.

This Excluded Cause of LOSS does not apply to LOSS of ELECTRONIC DATA or ELECTRONIC MEDIA caused by or resulting from the perils of Fire, Explosion, Riot and Civil Commotion, Vehicles and Aircraft Impact or Collision, Sonic Boom, Sprinkler Leakage, Sinkhole Collapse, FLOOD, EARTH MOVEMENT or Volcanic Action, if, and to the extent, such peril causing the LOSS is otherwise covered by this Policy.

14. Any LOSS or expense consisting of, caused by, contributed to, or aggravated by FUNGUS, wet rot, dry rot or bacteria, whether directly or indirectly the result of an Insured peril. This includes, but is not limited to, the cost for investigation, testing, remediation services, extra expense or business interruption. Such LOSS is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the LOSS.

If LOSS otherwise covered by this Policy occurs, and the cost of removal of debris is increased due to the presence of FUNGUS, wet rot, dry rot or bacteria, this Policy will only be liable for the costs of debris removal which would have been incurred had no such factors been present in, on, or about the insured property to be removed.

This Excluded Cause of LOSS does not apply to the extent coverage is provided in the EXTENSIONS OF COVERAGE – Limited Coverage for FUNGUS, Wet Rot, Dry Rot or Bacteria.

15. FLOOD, but if LOSS by fire or explosion results, the Company will pay for that resulting LOSS. This exclusion does not apply to Property in Transit.

16. EARTH MOVEMENT, but if LOSS by fire, explosion, or sprinkler leakage results, the Company will pay for that resulting LOSS. This exclusion does not apply to Property in Transit.

17. Cost of Making Good:

The costs that would have been incurred to rectify any of the following had such rectification been effected immediately prior to the LOSS:

A.  Fault, defect, error, deficiency or omission in design, plans, specifications, engineering or surveying;

B.  Faulty or defective workmanship, supplies or material;

However, if direct physical LOSS by an insured peril ensues, then this Policy will provide cover for such ensuing LOSS only.

For the purpose of this Policy and not merely this Excluded Cause of LOSS, insured property, or any portion thereof, shall not be regarded as damaged solely by virtue of the existence of any condition stated under A. or B. above.

**This Policy does not insure LOSS caused by any of the following, unless direct physical LOSS by an insured peril ensues and then this Policy insures only such ensuing direct physical LOSS:**

1. Corrosion, decay, deterioration, erosion, evaporation, inherent vice, latent defect, leakage, loss of weight, rust, shrinkage, wear and tear or any quality in property which causes it to damage or destroy itself.

2. Normal settling, shrinking, cracking, expansion or contraction.

3. Dryness or dampness of atmosphere.

4. Extremes or changes in temperature.

# PART E
## POLICY CONDITIONS

These Policy Conditions apply to the entire Policy, including any endorsements attached to or made part of this Policy.  However, to the extent that these Policy Conditions are in conflict with any State Changes or State Amendatory endorsements attached to or made part of this Policy, the conditions of the State Changes or State Amendatory endorsements shall take precedence.

1.   Additional Insureds

To the extent required by any written contract or subcontract for the INSURED PROJECT, and then only as their respective interests may appear, all owners, all contractors and subcontractors of every tier of the INSURED PROJECT, and any other individual or entity specified in such written contract or subcontract, are recognized as Additional Insureds hereunder.  As respects architects, engineers, manufacturers and suppliers, their interest is limited to their site activities only.

2.   LOSS Payable

LOSS, if any, shall be adjusted with and made payable to the NAMED INSURED, or as per order of the NAMED INSURED, whose receipt shall constitute a release in full of all liability under this Policy with respect to such LOSS.

3.   Term of Insurance

Coverage provided hereunder shall attach as of the date shown on the Declarations and shall continue in full force and effect until:

A.  the expiration date shown on the Declarations,

B.  final acceptance of the INSURED PROJECT by the owner,

C.  abandonment of the INSURED PROJECT by the NAMED INSURED, or

D.  the expiration of the NAMED INSURED's interest in the INSURED PROJECT;

whichever first occurs.

**Permission to Occupy**

The owner may occupy the INSURED PROJECT for the purpose originally intended without the Company's written consent.

4.   Premium

A.  Deposit Premium:  The premium stated on the Declarations is a deposit premium and shall be adjusted in accordance with Paragraph 4.C. Premium Adjustment.  The deposit premium shall be due and payable within thirty (30) days of the effective date shown or per the date noted on the invoice, whichever is earlier.

B.  Reporting Provisions:  Not later than thirty (30) days after the expiration, cancellation, or any requested extension of this Policy, the NAMED INSURED shall report to the Company the total completed value of all property including, but not limited to, all wages, expenses, materials, supplies, equipment and such other charges, all whether provided by the owner, contractor or others, which became a part of or was expended in the INSURED PROJECT.

C.  Premium Adjustment:

1.  The final earned premium for this Policy shall be computed by applying the rates used for the purpose of computing the deposit premium to the actual term of coverage provided and the total completed value declared in accordance with Paragraph 4. B. Reporting Provisions.

2.  If the premium so calculated shall differ from the deposit premium, such difference shall be due and payable to the NAMED INSURED or the Company, as the case may be.

3.  If the final completed values reported to the Company for the INSURED PROJECT vary by no more than 5% from the estimated completed values at inception, then the Company and the NAMED INSURED agree that no Premium Adjustment will occur. Any variation in completed values greater than 5% will require a Premium Adjustment per 1. and 2. above using the estimated completed value of the INSURED PROJECT at inception as the base.

D. Minimum Earned Premium:

1.  If the NAMED INSURED cancels this Policy before the expiration date of the Policy, the Company will charge a minimum earned premium as stated on the Declarations. If the Company cancels the Policy, no minimum earned premium applies.

2.  If the NAMED INSURED cancels the Policy, the Company will calculate the return premium as determined by this Clause 4. Premium, the Policy Reporting Endorsement, if any, and amendatory endorsements, if any, attached to this Policy. After the Company determines the return premium, the Company will subtract it from the Policy term premium to determine the earned premium.

3.  The Company will then compare the earned premium to the minimum earned premium stated on the Declarations. If the earned premium is less than the minimum earned premium, the Company will return to the NAMED INSURED the difference between the Policy term premium and the minimum earned premium. If the earned premium is more than the minimum earned premium, the Company will return to the NAMED INSURED the difference between the Policy term premium and the earned premium as determined by this Clause 4. Premium, the Policy Reporting Endorsement, if any, and amendatory endorsements, if any, attached to this Policy.

5.  **Deductibles**

The Company will adjust all direct physical LOSS arising out of any one OCCURRENCE as one LOSS. The Company will not pay for direct physical LOSS in any one OCCURRENCE until the amount of the adjusted direct physical LOSS exceeds the applicable deductible stated on the Declarations. The Company will then pay the amount of the direct physical LOSS in excess of the applicable deductible.

Where a percentage deductible is shown on the Declarations, the deductible shall be the greater of the dollar amount shown, or the stated percentage of the total insured values at the INSURED PROJECT site or sites at the time and date of the LOSS, unless a maximum deductible is listed.

In the event that more than one deductible shown on the Declarations, or provided in any endorsement, shall apply to covered direct physical LOSS in any one OCCURRENCE, only the largest deductible shall be applied.

However, if this Policy is extended to provide coverage for Delay in Opening, the deductible stated on the applicable endorsement will be applied separately and in addition to the deductible(s) for the other coverages provided in this Policy.

6.  **Valuation**

At the time and place of direct physical LOSS, the basis of adjustment of a claim, unless otherwise endorsed herein, shall be as follows:

A.   Property Under Construction – The cost to repair or replace the insured property lost or damaged with material of like kind and quality, less betterment, including contractor's reasonable profit and overhead not exceeding the percentages in the original contract. If the insured property is not repaired or replaced then direct physical LOSS shall be settled on the basis of ACTUAL CASH VALUE.

B.   EXISTING PROPERTY - The Company will pay the least of the following for direct physical LOSS to EXISTING PROPERTY:

   1.  The ACTUAL CASH VALUE of the EXISTING PROPERTY;
   2.  The cost of reasonably restoring the EXISTING PROPERTY to its condition immediately prior to the LOSS;
   3.  The cost of replacing the EXISTING PROPERTY with substantially identical property unless replacement with substantially identical property is impossible or unnecessary.  In such case, FUNCTIONAL REPLACEMENT COST would apply.

C.   Property of Others (Including Items Supplied by the Owner) – If Property of Others is new, the cost to repair or replace the insured property lost or damaged with material of like kind and quality, less betterment.  If Property of Others is not new then, the Owner's cost or ACTUAL CASH VALUE, whichever is less.

   If the Property of Others is not repaired or replaced then direct physical LOSS shall be settled on the basis of ACTUAL CASH VALUE.

D.   TEMPORARY STRUCTURES – The cost to repair or replace the insured property lost or damaged with material of like kind, quality and condition but in the event the insured property is not repaired or replaced recovery will not exceed the ACTUAL CASH VALUE.

E.   Valuable Papers and Records - The cost to reproduce the insured property with other property of like kind and quality including the cost of gathering or assembling information from back up data if replaced, or if not replaced, at the value of blank material.

F.   ELECTRONIC MEDIA or ELECTRONIC DATA - The cost of the blank media, plus the costs of copying or restoring ELECTRONIC DATA from back-up or from originals of a previous generation, not including research and engineering or the costs or expense of recreating, gathering or assembling such ELECTRONIC DATA.

   This Policy does not insure any amount pertaining to the value of such ELECTRONIC DATA to the Named Insured or any other party, even if such ELECTRONIC DATA cannot be recreated, gathered or assembled.  If not repaired, replaced or restored, ELECTRONIC MEDIA shall be valued at the cost of the blank media.

G.   Trees, Shrubs and Plants - The cost to replace with property of like kind and quality plus the proper proportion of labor expended if such damage occurs after installation.

H.   Office and Construction Trailers/Semi-trailers and their Contents – If not more than 5 years old as of the expiration date of this Policy, based on the manufacturer's model year, and the NAMED INSURED repairs or replaces the insured property, the least of the following shall apply:

   1.  The cost to replace the lost or damaged insured property, without deduction for depreciation, with new property of comparable quality and utility;

   2.  The amount the NAMED INSURED actually spends to repair or replace the lost or damaged insured property.

   If the insured property is more than 5 years old or the NAMED INSURED does not actually repair or replace the insured property within a reasonable period of time after the date of LOSS, the Company will pay the ACTUAL CASH VALUE

The Company will pay for direct physical LOSS to insured property by determining its REPLACEMENT COST, provided that the NAMED INSURED actually repairs or replaces the lost or damaged insured property, or begins to repair the damaged insured property, within 24 months from the date of direct physical LOSS; otherwise, the Company will pay for direct physical LOSS to insured property by determining its ACTUAL CASH VALUE.

7.  Cancellation

A.  This Policy may be cancelled by the NAMED INSURED by mailing to the Company written notice stating when, thereafter, such cancellation shall be effective. This policy may not be canceled by the Company, except for those specific items stated in Item D below, which will be sixty (60) days or in the event of the insured's non-payment of any premium due, said notice shall be fifteen (15) days. Cancellation notice by Company to be effective by mailing such notice to the NAMED INSURED, at the address shown in this policy or last known address, with written notice stating when. The mailing of notice by certified mail as aforementioned shall be sufficient proof of notice and the effective date of cancellation stated in the notice shall become the end of the policy period. Delivery in person or by messenger of such written notice either by the NAMED INSURED or by the Company shall be the equivalent to mailing.

B.  In the event of cancellation, premium adjustment may be made at the time cancellation is effected and, if not then made, shall be made as soon as possible after cancellation becomes effective. The Company's check or the check of its representative mailed or delivered as aforesaid shall be a sufficient tender of any refund of premium due to the NAMED INSURED;

C.  In the event of cancellation, the Insured will report all the Premium Base which has accrued between the date of inception, subsequent reports if applicable and the actual date of cancellation, and pay premium thereon at the agreed rate. Any premium so computed shall always be subject to any minimum premium. If the Insured cancels, the Policy will be subject to a minimum earned premium of 25% of the deposit premium paid at inception plus any additional premium required by policy change or endorsement(s).

D.  This policy may be cancelled by the Company for any of the following: material change of risk, Insured's conviction of a crime arising out of acts increasing the hazard of the covered property insured, Company's loss of reinsurance, Company's discovery of fraud or material misrepresentation in the obtaining of this policy, NAMED INSURED's abandonment of covered property, change in ownership or sale of the covered property (other than transfer of ownership to an affiliated entity) or failure to maintain or protect the covered property during WORK STOPPAGES, as such term is defined below.

Solely for the purposes of this cancellation provision, the term WORK STOPPAGES means:

That all work on the covered property or any part thereof insured under the Policy stops or ceases for all practical purposes, for a period of thirty (30) days or more.

8.  Inspection and Audit

While this Policy is in effect, the Company may, at any reasonable time, inspect the NAMED INSURED's property and operations. However, any recommendations or information provided as a result of such inspection(s) is not intended as a substitute for advice from a safety expert or legal counsel the NAMED INSURED may retain for their intended purpose(s). It is not intended to satisfy any legal duty the NAMED INSURED may have to provide a safe premises, workplace, product or operation.

The Company may also examine and audit the NAMED INSURED's books and records at any reasonable time during the Policy period, and within one year after the final termination of the Policy, as long as they relate to the subject matter of this Policy.

9.  Assignment

The NAMED INSURED agrees not to assign and/or transfer any legal rights or interests in the Policy without the Company's written consent.

10. **Abandonment**

There will be no abandonment of any insured property to the Company.

11. **Appraisal**

If the NAMED INSURED and the Company fail to agree on the amount of the LOSS, each, upon written demand of either the NAMED INSURED or the Company made within sixty (60) days after receipt of proof of LOSS by the Company, shall select a competent and disinterested appraiser. The appraisers shall then select a competent and disinterested umpire. If they should fail for fifteen (15) days to agree upon such umpire, then upon the request of the NAMED INSURED or the Company, such umpire shall be selected by a judge of a court of record in the jurisdiction in which such appraisal is pending. Then, at a reasonable time and place, the appraisers shall appraise the LOSS based on the Valuation conditions within the Policy. If the appraisers agree, their written agreement shall determine the amount of LOSS and shall be paid by the Company within thirty (30) days thereafter.
If the appraisers fail to agree, they shall submit their differences to the umpire. The umpire shall then submit a written award resolving such differences. Such award shall determine the amount of the LOSS and shall be paid by the Company within thirty (30) days thereafter.
The NAMED INSURED and the Company shall each pay its chosen appraiser and shall bear equally the other expenses of the appraisal and umpire. The Company shall not be held to have waived any of its rights by any act relating to appraisal.

12. **In Case of LOSS**

A. **Notice of OCCURRENCE:**

The NAMED INSURED will, as soon as practicable, report in writing to the Company every OCCURRENCE that may give rise to a claim under this Policy.

B. **Proof of LOSS:**

The NAMED INSURED will as soon as practicable, file with the Company a signed and sworn detailed proof of LOSS.

C. **Payment of LOSS:**

All adjusted claims, including partial payments thereon will be due and payable no later than thirty (30) days after presentation and acceptance of proof of LOSS or partial proof of LOSS, as the case may be, by this Company or its appointed representative.

13. **Other Insurance**

Except as stated in the Contributing Insurance and Excess Insurance articles, if there is other insurance which is issued by another valid policy or policies of insurance, whether primary or excess, whether collectible or not, this Policy will apply as excess insurance and will not contribute with such other insurance, nor shall the Company be liable to make any payment in connection with any such portion of a claim or suit.

14. **Contributing Insurance**

Permission is granted for other policies written upon the same plan, conditions, and provisions as those contained herein.

This Policy will contribute to the total of each LOSS otherwise payable herein to the extent of the participation of this Policy in the total Limit of Insurance, as provided by all policies written upon the same plan, conditions, and provisions as those contained in this Policy.

The adjustment of losses by any contributing insurance company is not binding on any other contributing insurance company.

15.  Excess Insurance

Permission is granted the NAMED INSURED to have excess insurance over the Limit of Insurance set forth in this Policy without prejudice to this Policy, nor will the existence of such insurance, if any, reduce any liability under this Policy.

16.  Pair and Set

A.  In the event of LOSS to any insured article or articles which are part of a pair or set, the measure of LOSS to such article or articles will be a reasonable and fair proportion of the total value of the pair or set, giving consideration to the importance of said article or articles, but in no event will such LOSS be construed to mean total LOSS of the pair or set, or

B.  In the event of LOSS to any part of insured property consisting, when complete for use, of several parts, the Company will only be liable for the value of the part lost or damaged.

17.  Recovery or Salvage

Any recovery or salvage will apply as if recovered or received prior to the LOSS settlement and the LOSS will be readjusted accordingly, except for:

A.  proceeds from subrogation and other insurance recovered or received after a LOSS settlement under this Policy;

B.  any recovery from suretyship, insurance, reinsurance, security or indemnity taken by or for the benefit of the Company.

18.  Reinstatement

With the exception of LOSS caused by insured perils which are subject to Annual Aggregate Sub-limits of Insurance, any LOSS hereunder will not reduce the limits available under this Policy.

19.  Subrogation

If the Company pays a claim under this Policy, it will be subrogated, to the extent of such payment, to all the NAMED INSURED's rights of recovery from other persons, organizations and entities.  The NAMED INSURED will execute and deliver instruments and papers and do whatever else is necessary to secure such rights.

The Company will have no rights of subrogation against:

A.  any person or entity, which is an Additional Insured;

B.  any other person or entity, against which the NAMED INSURED has waived its rights of subrogation in writing before the time of LOSS.

Notwithstanding the foregoing, it is a condition of this Policy that the Company shall be subrogated to all the NAMED INSURED's rights of recovery against:

A.  Any Architect or Engineer, whether or not a NAMED INSURED or Additional Insured, for any LOSS arising out of the performance of professional services in their capacity as such and caused by any

BR Contract 10.10.16

error, omission, deficiency or act of the Architect or Engineer, by any person employed by them or by any others for whose acts they are legally liable, and;

B. Any manufacturer or supplier of machinery, equipment or other property, whether or not a NAMED INSURED or Additional Insured, for the cost of making good any LOSS which said party has agreed to make good under a guarantee or warranty, whether expressed or implied.

The NAMED INSURED will act in concert with the Company and all other interests concerned in the exercise of such rights of recovery.

If any amount is recovered as a result of such proceedings, the net amount recovered after deducting the costs of recovery, will accrue first to the Company in proportion to their respective interests.  Any excess of this amount will be remitted to the NAMED INSURED.  If there is no recovery, the interests instituting the proceedings will bear the expense of the proceedings proportionately.

The NAMED INSURED will do nothing after LOSS to prejudice such rights of subrogation.

20.   Misrepresentation & Fraud

This Policy shall be void if the NAMED INSURED has intentionally concealed or misrepresented any material fact(s) or circumstance(s) concerning this insurance or the subject thereof, or in case of any fraud, attempted fraud or false swearing by the NAMED INSURED concerning any matter relating to this insurance or the subject thereof, whether before or after a LOSS.

21.   Legal Action Against the Company

No one may bring a legal action against the Company under this Policy unless:

A. There has been full compliance with all the conditions of this Policy; and

B. The action is brought within 2 years after the NAMED INSURED first has knowledge of the direct physical LOSS.

22.   Benefit to Bailee

The Policy will not inure, directly or indirectly, to the benefit or any carrier or bailee.

23.   Coverage Territory

This Policy covers insured property within the United States of America, including the District of Columbia and property in inland transit from Canada; except that this Policy will not cover Property in Transit by water or air to and from Alaska or to and from Hawaii.

24.   Certificates of Insurance

Any Certificate of Insurance issued in connection with this Policy shall be issued solely as a matter of convenience or information for the addressee(s) or holder(s) of said Certificate of Insurance. This Policy may only be modified by endorsement issued by the Company.

25.   Statutes

If any of the Articles herein stated conflict with the laws or statutes of any jurisdictions in which this Policy applies, the same is amended to conform to such laws or statutes.

26.   Observance of Conditions

Full compliance with all terms and conditions of this Policy by the NAMED INSURED shall be a condition precedent to any liability of the Company to make payment for LOSS under this Policy.

27. Increased Hazard

If there is a material increased hazard in the risk, change in project scope or change in project principals, the NAMED INSURED shall give notice in writing to the Company within 30 days of the NAMED INSURED's knowledge of the same.. The Company shall have the right, but not the obligation, to modify the terms of insurance in accordance with the terms and conditions that would apply to the material increased hazard.

28. Examination Under Oath

The NAMED INSURED shall submit and, so far as is within their power, shall cause all other persons to submit, to examination or examinations under oath by any persons named by the Company relative to any and all matters in connection with a claim, and shall produce for examination all books of accounts, bills, invoices, and other vouchers or certified copies thereof if originals are lost, at such reasonable time and place as may be designated by the Company or its representatives as often as the Company deems necessary, and shall permit extracts and copies thereof to be made.

29. Brands & Trademarks

In any case of LOSS by an insured peril to insured property bearing a brand, trademark or label, the Company may take all or any part of the insured property at any agreed or appraised value.  If so, the NAMED INSURED may, at its own expense:

A. Stamp salvage on the insured property or its container, if the stamp will not physically damage the insured property; or

B. Remove the brand, trademark or label if doing so will not physically damage the insured property. The NAMED INSURED must re-label the insured property or its container to comply with the law.

30. Protection of Insured Property

The NAMED INSURED will take reasonable steps to protect, recover or save the insured property and minimize any further or potential LOSS when the insured property has sustained direct physical LOSS by an insured peril.  The acts of the NAMED INSURED or the Company in protecting, recovering or saving the insured property will not be considered a waiver or an acceptance of abandonment.  The NAMED INSURED and the Company will bear the reasonable expense incurred proportionate to their respective interests under this Policy.

31. Mortgage Holders

The entities listed on the Declarations and designated as a Mortgage Holder are added to this Policy for the INSURED PROJECT covered by this Policy, subject to the following terms and conditions:

The term "mortgage holder" includes a trustee.

A. The Company will pay for LOSS, if any, to each mortgage holder shown in the mortgage holder schedule in their order of precedence, as interests may appear.

B. The mortgage holder has the right to receive LOSS payment even if the mortgage holder has started foreclosure or similar action on the INSURED PROJECT.

C. If the Company denies a claim due to the acts of the NAMED INSURED or because the NAMED INSURED has failed to comply with the terms of this Policy, the mortgage holder will still have the right to receive LOSS payment if the mortgage holder:

1. Pays any premium due under this Policy at the request of the Company if the NAMED INSURED has failed to do so.

2. Submits a signed, sworn proof of LOSS within 60 days after receiving notice from the Company of the NAMED INSURED'S failure to do so; and

3. Has notified the Company of any change in ownership, occupancy, or substantial change in

BR Contract 10.10.16

risk known to the mortgage holder.

All terms of this Policy will then apply directly to the mortgage holder.

D.  If the COMPANY pays the mortgage holder for any LOSS and denies payment to the NAMED INSURED because of their acts or because they have failed to comply with the terms of this Policy:

1.  The mortgage holder's rights under the mortgage will be transferred to the Company to the extent of the amount paid; and

2.  The mortgage holder's right to recover the full amount of the mortgage holder's claim will not be impaired.

At the option of the Company, the Company may pay to the mortgage holder the whole principal on the mortgage plus any accrued interest.  In this event, the mortgage and note will be transferred to the Company and the NAMED INSURED will pay the remaining mortgage debt to the Company.

E.  If the Company cancels this Policy, the Company will endeavor to give written notice to the mortgage holder at least:

1.  15 days before the effective date of cancellation, if cancelled for non-payment of premium; or

2.  60 days before the effective date of cancellation, if cancelled for any other reason.

The Company's failure to provide notice of cancellation to the mortgage holder will not invalidate the cancellation.

F.  If the Company does not renew the Policy, the Company will endeavor to give written notice to the mortgage holder at least 45 days before the expiration date of this Policy. The Company's failure to provide notice to the mortgage holder will not invalidate the non-renewal.

32.     **Loss Payees**

The entities listed on the Declarations and designated as Loss Payee are added to this Policy for the INSURED PROJECT covered by this Policy, subject to the following terms and conditions:

The Company will adjust a LOSS with the NAMED INSURED  shown on the Declarations and the Company will pay the NAMED INSURED, and the Loss Payee(s), up to their interest in insured property, the amount the Company owes, if anything.

33.     **Unpacked Property**

The NAMED INSURED shall inspect all items that are included in the values to be insured for the INSURED PROJECT covered by this Policy upon arrival at the INSURED PROJECT site.

In the case of unpacked property where LOSS is evident, such LOSS is excluded under this Policy, except to the extent it is indemnified under the terms provided by the Property in Transit Extension of Coverage.

In the case of packed property (which is intended to remain in its packing until a later date after arrival at the INSURED PROJECT site), the packing is to be inspected and in the event of any visible signs of LOSS, the property contained therein is to be promptly unpacked and inspected. Any LOSS to such property which is thus discovered is excluded under this Policy, except to the extent it is indemnified under the terms of the Property In Transit Extension of Coverage.

In the event the packing of the property manifests no sign of LOSS and the property is therefore temporarily left packed, any LOSS which is discovered when the property is unpacked will be deemed to have occurred during transit unless there is clear evidence from the nature of the LOSS that it could only have occurred after arrival at the INSURED PROJECT site.

However, if it is not possible to determine when the LOSS occurred and such LOSS is not insured under the Extensions of Coverage for Property in Transit or Temporary Off-site Storage and Staging Areas, the

Company will pay for fifty (50%) percent of the indemnity, otherwise due hereunder, as if the LOSS had occurred during the Policy Period, subject to the deduction of fifty (50%) percent of the Deductible.

## PART F
## DEFINITIONS

The following definitions will be applied in the interpretation of certain wording used herein

1.  ACTUAL CASH VALUE

    The replacement cost at the time of LOSS, of the insured property damaged or destroyed, less depreciation.

2.  COMPUTER VIRUS

    Instructions, code, applications or any software program that has the ability or is suspected to have the ability to damage, destroy, erase, corrupt, alter, or prevent access to ELECTRONIC DATA, ELECTRONIC MEDIA or COMPUTERS or to disrupt or interfere with the operations of COMPUTERS.

3.  COMPUTERS

    Includes but is not limited to mainframes, servers, workstations and portable computers, personal information managers, wide and local area network hardware, electronic and electromechanical equipment, data processing equipment, electronic controls for machinery, electronically programmed memory chips, and electronically controlled communication equipment.

4.  CONTAMINANTS OR POLLUTANTS

    Any material which, after its release, can cause or threaten damage to human health or human welfare or which can cause or threaten damage, deterioration, loss of value, marketability or loss of use to property insured hereunder, including, but not limited to, any solid, liquid, gaseous or thermal irritant or contaminant including vapor, fumes, acids, soot, alkalis, virus, chemicals and waste, or any hazardous substances as listed in the Federal Water Pollution Control Act, Clean Air Act, Resource Conservation and Recovery Act of 1976, and Toxic Substances Control Act, or as designated by the US Environmental Protection Agency.

5.  EARTH MOVEMENT

    All earthquake, landslide, mudslide, mudflow, rock fall, tsunami, tectonic or seismic sea waves, volcanic eruption, earth sinking (other than sinkhole collapse), rising, shifting, subsidence or other EARTH MOVEMENT, whether observable or not observable, and whether man-made or caused by natural phenomena.

6.  ELECTRONIC DATA

    Facts, concepts, information or data, including compilations thereof, in a form useable or intended for use or processing by COMPUTERS or for storage on ELECTRONIC MEDIA. ELECTRONIC DATA includes but is not limited to files, programs, applications, operating systems, and other coded instructions for the processing, calculation and storage of facts, concepts and information by COMPUTERS.

7.  ELECTRONIC MEDIA

    Any physical device that holds, stores, contains or transfers ELECTRONIC DATA, and includes but is not limited to disks, drives, films, tapes, records, drums, or cells.

8.   **EXISTING PROPERTY**

Buildings or permanent structures, including equipment used to maintain or service the buildings or structures that existed prior to the beginning of the INSURED PROJECT.

9.   **FLOOD**

A general and temporary condition during which the surface of normally dry land is partially or completely inundated, which arises from:

A.   Rain and resultant runoff; or

B.   The rising, overflow or breach of any boundary of a natural or man-made body of water; or

C.   Non-tectonic or seismic sea waves, tide or tidal waters, storm surge, or spray from any of these; whether driven by wind or not; or

D.   The failure of a cofferdam or similar structure intended to hold water back from an area of construction; or

E.   Unexpected accumulation of water caused by subsurface seepage or subsurface leakage.

As respects piles and other insured property designed to be used in water and purposely placed or stationed in lakes, rivers, streams, harbors or other bodies of water, any LOSS that could be deemed LOSS caused by WATER DAMAGE or LOSS caused by FLOOD under this policy, shall be deemed LOSS caused by FLOOD, and all terms and conditions herein shall apply as if the LOSS were caused by FLOOD.

FLOOD does not include the accumulation of water from any source on a roof or other surface of a building, dwelling or structure.

10.   **FUNCTIONAL REPLACEMENT COST**

The cost to replace insured property with similar property intended to perform the same function when replacement with substantially identical property is impossible or unnecessary.

11.   **FUNGUS**

Any type or form of FUNGUS, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

12.   **TESTING**

Any start-up, commissioning or other forms of testing, including the checking of any plant or machinery or a component part thereof under load or operational conditions, including the use of feedstock or other materials for processing, or other media to simulate working conditions.

TESTING also  includes but is not limited to any start-up, commissioning or other forms of testing of building or civil construction systems, such as electric, heating, ventilation, air conditioning, sprinklers, water piping, plumbing, gas lines, air conditioning lines, elevators, escalators, electronic tolling, life safety or lighting.

13.   **TESTING PERIOD**

That period beginning with the introduction into the insured property of feedstock or similar media for processing and handling, or the first firing of fuel(s), whichever first occurs. The  TESTING PERIOD shall continue thereafter whether or not such testing, commissioning or startup is continuous or intermittent and terminate on the expiration of this Policy.

14.   **INSURED PROJECT**

The work which the NAMED INSURED is contractually obligated to perform in accordance with the contract documents, being more fully described and located as set forth on the Declarations.

15.    LOSS

Accidental loss or damage.

16.    NAMED INSURED

The persons or companies identified on the Declarations of this Policy.

17.    NAMED WINDSTORM

An intense tropical weather system with a well-defined circulation and maximum sustained winds of at least 39 mph or 63 km/hr that is named by the National Oceanic and Atmospheric Administration (NOAA), including any of NOAA's organizations, such as the National Weather Service or the National Hurricane Center.

18.    OCCURRENCE

All LOSS attributable directly or indirectly to one originating cause, event, incident or repeated exposure to the same originating cause, event or incident, or to one series of similar originating causes, events, incidents or repeated exposures to the same originating cause, event or incident first occurring in the Policy period. All such LOSS will be treated as one OCCURRENCE , unless a specific period of time is included in this Policy. The most the Company will pay for LOSS in any one OCCURRENCE is the applicable Limit of Insurance shown on the Declarations.

As respects the perils of strike, riot, civil commotion, vandalism and malicious mischief, OCCURRENCE shall mean all LOSS arising during a continuous period of seventy-two (72) hours during the term of this Policy.  The NAMED INSURED may elect the moment when the seventy-two (72) hour period begins, but no two such periods shall overlap.  Such strike, riot, civil commotion, vandalism or malicious mischief shall be deemed to be a single OCCURRENCE within the meaning of this Policy.

As respects the peril of EARTH MOVEMENT, OCCURRENCE shall mean all LOSS arising during a continuous period of seventy-two (72) hours during the term of this Policy. The NAMED INSURED may elect the moment when the seventy-two (72) hour period begins, but no two such periods shall overlap. Such EARTH MOVEMENT shall be deemed to be a single OCCURRENCE within the meaning of this Policy.

As respects the peril of NAMED WINDSTORM, OCCURRENCE shall mean all LOSS arising during a continuous period of seventy-two (72) hours during the term of this Policy.  The NAMED INSURED may elect the moment when the seventy-two (72) hour period begins, but no two periods shall overlap.  Such NAMED WINDSTORM shall be deemed to be a single OCCURRENCE within the meaning of this Policy.

As respects the peril of FLOOD, OCCURRENCE shall mean all LOSS arising during a continuous period of seventy-two (72) hours during the term of this Policy.  The NAMED INSURED may elect the moment when the seventy-two (72) hour period begins, but no two such periods shall overlap.  Such FLOOD shall be deemed to be a single OCCURRENCE within the meaning of this Policy.

The Company shall not be liable for any such LOSS first occurring before the effective date and time or first occurring after the expiration date and time of this Policy.

19.    REPLACEMENT COST

The cost to repair or replace the insured property lost or damaged at the time and place of direct physical LOSS with material of like kind and quality, less betterment.

20.    TEMPORARY STRUCTURES

Cribbing, scaffolding, shoring, fences, construction forms and other similar structures on the INSURED PROJECT site, but TEMPORARY STRUCTURES does not include construction tools, equipment or storage structures.

21.   TOWER CRANE

A crane with a fixed vertical mast that is topped by a rotating boom and equipped with a winch for hoisting and lowering loads.

22.   TRANSMISSION AND DISTRIBUTION LINES

Transmission and distribution lines, poles, towers and all equipment attached or affixed thereto, including supporting structures.

23.   WATER DAMAGE

All water damage, except LOSS caused by or resulting from the peril of FLOOD.

**DELAY IN OPENING ENDORSEMENT**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY. THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:**

**CONSTRUCTION RISK COVERAGE FORM**

For the purpose of this endorsement only, the NAMED INSURED if different from that stated on the Policy Declarations, shall be as shown below. There shall be no Additional Insureds hereunder, unless specifically endorsed below.

Whenever "NCP" is shown below it denotes no coverage has been purchased and no coverage is provided. Whenever "NA" is shown below it denotes "Not Applicable" to that coverage, deductible, Sub-limit of Insurance, or other policy provision.

| | |
|---|---|
| PERIOD OF INDEMNITY: | 495   Calendar Days |
| SCHEDULED DATE OF COMPLETION: | Per the Construction Schedule in effect as of the date of the physical LOSS to INSURED PROJECT |
| WAITING PERIOD: | 14   Calendar Days, Each DELAY |

In return for the payment of premium and subject to all the terms and conditions of this Policy and Individual Sub-limits of Insurance shown below, the total Sub-limit of Insurance for which the Company shall be liable under this endorsement per OCCURRENCE shall not exceed $3,250,000. These Sub-limits of Insurance are part of and not in addition to the Limit of Insurance Per OCCURRENCE stated on the Policy Declarations.

| | | | |
|---|---|---|---|
| 1. | Loss Of RENTAL INCOME | $ | NCP |
| 2. | Loss Of BUSINESS INCOME | $ | NCP |
| 3. | SOFT COSTS / ADDITIONAL EXPENSES | $ | 3,250,000 |

Refer to Individual Item Sub-limits below:

| | | |
|---|---|---|
| Interest expense on construction loan(s); | $ | Included |
| Advertising and promotional expense; | $ | Included |
| Architects and/or engineers fees; | $ | Included |
| Legal and accounting fees; | $ | Included |
| Commissions incurred upon the renegotiation of leases; | $ | Included |
| Fees for licenses and permits; | $ | Included |
| Insurance premiums for Builders Risk, Workers' Compensation and General Liability Insurance; | $ | Included |
| Real estate taxes and assessments; | $ | Included |
| Project administration expense & Development Fee(s); | $ | Included |

BR Contract 10.10.16

### INSURING AGREEMENT

1. Subject to all terms, conditions, limitations and exclusions of this Endorsement, and of the Policy to which it is attached, the Company will pay the actual Loss of RENTAL INCOME, Loss of BUSINESS INCOME and/or SOFT COSTS/ADDITIONAL EXPENSES sustained during the PERIOD OF INDEMNITY as a result of a DELAY in completion of the INSURED PROJECT described on the Policy Declarations, or as amended by Endorsement, when such DELAY is caused by an OCCURRENCE or series of OCCURRENCE(S), resulting in physical LOSS to insured property by an insured peril.

2. The Company shall also indemnify the NAMED INSURED for expenditures during the PERIOD OF INDEMNITY that are necessarily incurred for the purpose of reducing any loss amount under this endorsement, but only to the extent that such loss amount otherwise payable under this endorsement is thereby reduced.

3. The Company will pay the actual Loss of RENTAL INCOME, Loss of BUSINESS INCOME and/or SOFT COSTS/ADDITIONAL EXPENSES sustained as a result of a DELAY in completion of the INSURED PROJECT, caused by action of civil authority that prohibits access to the INSURED PROJECT site stated on the Policy Declarations due to direct physical LOSS to property, other than at the INSURED PROJECT site stated on the Policy Declarations, caused by or resulting from an insured peril. This coverage will apply for a period of up to thirty (30) consecutive days after the application of the DELAY IN OPENING WAITING PERIOD.

4. The Company will pay the actual Loss of RENTAL INCOME, Loss of BUSINESS INCOME and/or SOFT COSTS/ADDITIONAL EXPENSES sustained as a result of a DELAY in completion of the INSURED PROJECT, caused by an insured peril that prohibits access to the INSURED PROJECT site stated on the Policy Declarations due to direct physical LOSS to property, other than at the INSURED PROJECT site stated on the Policy Declarations. This coverage will apply for a period of up to thirty (30) consecutive days after the application of the DELAY IN OPENING WAITING PERIOD.

5. The Company will pay for the actual Loss of RENTAL INCOME, Loss of BUSINESS INCOME and/or SOFT COSTS/ADDITIONAL EXPENSES sustained as a result of a DELAY in completion of the INSURED PROJECT caused by loss of electrical, steam, gas, water, sewer, telephone, or any other utility or service, situated on or within two (2) statute miles to the INSURED PROJECT due to direct physical LOSS caused by an insured peril. This coverage will apply for a period of up to thirty (30) consecutive days after the application of the DELAY IN OPENING WAITING PERIOD.

## WAITING PERIOD

1. The coverage provided by this endorsement applies to each DELAY that exceeds the WAITING PERIOD, and only for such part of that DELAY that is in excess of this period.

2. In the event that more than one WAITING PERIOD shall apply to the coverage provided by this endorsement, only the longest WAITING PERIOD shall be applied.

3. The WAITING PERIOD of this endorsement applies independently and shall not be combined with any deductible that applies to physical LOSS covered by this Policy.

## ADDITIONAL EXCLUSIONS

The Company shall not be liable for any increase in DELAY caused by or resulting from:

1. The enforcement of any ordinance or law regulating construction, rebuilding, repair, replacement, removal or reconstruction of the work unless otherwise endorsed hereto.
2. LOSS to property not insured by this policy.
3. Alterations, additions, improvements or other changes made in the design, plans, specifications or other contract documents for the INSURED PROJECT which are required to effect the repair or replacement of the damaged property.
4. The unavailability of funds for the repair or replacement of lost or damaged property.
5. Import, export or customs restrictions and/or regulations.
6. Breach of contract, late or non-completion of orders and/or suspension, lapse or cancellation of any lease or purchase order.

BR Contract 10.10.16

7.  Failure of the NAMED INSURED or any Additional Insureds to obtain, maintain or extend any permit, lease, license or purchase order commitments.

8.  Failure of the NAMED INSURED or any Additional Insureds to use due diligence and dispatch in restoring the damaged property to the condition existing prior to the LOSS.

9.  Interference with the INSURED PROJECT by strikers or other persons with the transportation of property, the construction, rebuilding, repairing or replacing of insured property hereunder or the occupancy and use of the premises.

10. Consequential damages including liquidated damages, performance or non-performance penalties, penalties for non-completion or non-compliance with contract conditions.

11. Interruption of incoming electricity, fuel, water, gas, steam, refrigerant, or any other services needed for construction or operation of the INSURED PROJECT.

12. Any deviation from the original SCHEDULED DATE OF COMPLETION or revisions thereto, and which is independent of an insured LOSS which gives rise to a DELAY, whether occurring prior to or after an OCCURRENCE.

## GENERAL CONDITIONS

1.  The NAMED INSURED shall furnish in writing, as often as required by the Company, progress reports on the INSURED PROJECT.

2.  It is a condition precedent to coverage under this endorsement that the NAMED INSURED shall make every reasonable attempt to minimize the amount of any LOSS by:

    A.  Making complete or partial use of covered or other property at the location of the INSURED PROJECT or other location; and/or

    B.  Make use of other machinery, equipment or supplies; and/or

    C.  Minimize the extent of any interference with the construction schedule so as to avoid or diminish any DELAY.

3.  The Company shall not be liable during the PERIOD OF INDEMNITY for more than the amount stated on Page 1 of this Endorsement.

4.  At the end of the first month of the PERIOD OF INDEMNITY and monthly thereafter, if it is possible for the Company to determine the minimum amount of loss payable under this endorsement for the elapsed period, the Company shall pay such amount(s) to the NAMED INSURED as an installment of the total loss.

5.  The Company shall have the right, but not the duty to conduct an audit of the NAMED INSURED's records twelve months after actual commencement of operations to determine the loss as defined by this Endorsement, as well as any expenses related to reducing loss incurred by the NAMED INSURED. Due consideration shall be given to seasonal patterns, trends, variations or special circumstances which would have affected the business had the DELAY not occurred, so that the amount thus adjusted shall represent as nearly as may be reasonably practicable the amount which, in the absence of the DELAY, would have been realized. Any amount saved in respect of labor costs, charges and expenses that have ceased or reduced during the PERIOD OF INDEMNITY and liquidated damage the NAMED INSURED is entitled to receive, whether collectible or not, shall be deducted from the loss during the PERIOD OF INDEMNITY.

6.  If the amount of loss determined by any audit conducted by the Company is less than or exceeds the sum paid by the Company during the PERIOD OF INDEMNITY, the difference between the two amounts shall be paid by or to the Company as the case may be.

7.  Upon request by the Company, the NAMED INSURED shall make available all records and information relevant to the coverage provided by this endorsement.

8.  It is a condition of this insurance that the NAMED INSURED shall begin normal operations as soon as practical.

BR Contract 10.10.16

# DEFINITIONS

For purposes of this endorsement, the following definitions shall apply in addition to those set forth in the Policy:

1.  **SCHEDULED DATE OF COMPLETION**

    The date the INSURED PROJECT or phases of the INSURED PROJECT would have been completed for commencement of commercial operations or use and occupancy if a LOSS had not occurred.

2.  **WAITING PERIOD**

    The number of calendar days per OCCURRENCE stated on Page 1 of this Endorsement, beginning with the SCHEDULED DATE OF COMPLETION of the INSURED PROJECT.

3.  **DELAY**

    The period of time between the SCHEDULED DATE OF COMPLETION and the actual date on which commercial operations or use and occupancy can commence with the exercise of due diligence and dispatch.

4.  **BUSINESS INCOME**

    The amount not realized by the NAMED INSURED during the PERIOD OF INDEMNITY which would have been earned from the commencement of operations or use and occupancy of the work if the DELAY had not occurred, consisting of;

    The sum of:
    A.   The net profit or loss (before income taxes), and;
    B.   The continuing normal operating expenses, including payroll.

5.  **PERIOD OF INDEMNITY**

    The number of days stated on Page 1 of this Endorsement which are in excess of the WAITING PERIOD. The PERIOD OF INDEMNITY for any insured DELAY hereunder shall not be limited or otherwise affected by the expiration, cancellation or termination of the Policy.

6.  **RENTAL INCOME**

    Revenues from rentals and leases not realized during the PERIOD OF INDEMNITY, which would have been earned by the NAMED INSURED if the DELAY had not occurred, less non-continuing expenses.

7.  **SOFT COSTS/ADDITIONAL EXPENSES**

    Expenditures which are necessarily incurred during the PERIOD OF INDEMNITY, which would not have been incurred by the NAMED INSURED if the DELAY had not occurred, including:

    A.   Interest expense on construction loan(s);

    B.   Advertising and promotional expense;

    C.   Architects and/or engineers fees;

    D.   Legal and accounting fees;

    E.   Commissions incurred upon renegotiation of leases;

    F.   Fees for licensing and permits;

    G.   Insurance premiums for Builders Risk, Workers' Compensation and General Liability Insurance;

    H.   Real estate taxes and assessments;

BR Contract 10.10.16

I.    Project administration expense & Development Fee(s);

J.    Other, as accepted by the Company and scheduled on this Endorsement.

All other terms and conditions remain unchanged.

BR Contract 10.10.16
**Endorsement Number 2**

## ADDITIONAL NAMED INSURED & ADDITIONAL INSURED ENDORSEMENT

The following are added as Additional NAMED INSURED:

MRP Realty
3050 K Street NW
Suite 125
Washington, DC 20007

McCullough Construction LLC including subcontractors of every tier
5513 Connecticut Ave NW
Suite 200
Washington, DC 20015

The forgoing parties for the Additional NAMED INSURED and Additional Insured includes respective owners, directors,

officers, employees, agents, affiliates, successors and assigns.

All other terms and conditions remain unchanged.

BR Contract 10.10.16
**Endorsement Number 3**

**ORDINANCE OR LAW COVERAGE ENDORSEMENT**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY. THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:**
**CONSTRUCTION RISK COVERAGE FORM**

**PART C EXTENSIONS OF COVERAGE**, Item 15 is deleted in its entirety and replaced by the following:

15. Ordinance or Law

If the repair of direct physical LOSS to insured property caused by an insured peril becomes subject to the enforcement of any ordinance or law that is in force at the time of direct physical LOSS and that:

A. Requires the demolition of parts of the undamaged insured property; or

B. Regulates the construction or repair of damaged insured property;

then the Company will pay up to the Sub-limits of Insurance stated below for:

COVERAGE 1: The value of such undamaged part of the insured property which must be demolished;

COVERAGE 2: The cost of demolishing the undamaged insured property and clearing the site of debris from such demolition;

COVERAGE 3: The increased cost of repair and/or reconstruction of the damaged and undamaged insured property on the same site and limited to the minimum requirements of such ordinance or law regulating the repair or reconstruction of the damaged insured property on the same site. However, the Company will not pay for any increased cost of repair or reconstruction unless the damaged insured property is actually rebuilt or replaced.

The Company will not pay the following costs:

    i. Cost of demolition or increased cost of repair or reconstruction, debris removal, or other consequential loss caused by the enforcement of any ordinance or law regulating asbestos or other hazardous material;

    ii. Cost of any governmental direction or request declaring that asbestos or other hazardous material present in, part of or utilized on any damaged or undamaged portion of insured property that can no longer be used for the purpose for which it was intended or installed and must be removed, modified or abated.

    iii. Cost of demolition or increased cost of repair or reconstruction, debris removal, or other consequential loss caused by the enforcement of any ordinance or law regulating CONTAMINANTS OR POLLUTANTS; or

    iv. Cost of compliance with the enforcement of any ordinance or law which the NAMED INSURED or owner would have otherwise been required to comply by nature of such ordinance or law in the absence of any direct physical LOSS covered by this Policy.

**Sub-limits of Insurance**

These Sub-limits of Insurance are part of and not in addition to the Limit of Insurance per OCCURRENCE stated on the Declarations.

COVERAGE 1.    $24,750,000

COVERAGE 2.    $2,500,000

COVERAGE 3.          $2,500,000

All Ordinance or Law Coverages in any one OCCURRENCE $24,750,000

All other terms and conditions remain unchanged.

BR Contract 10.10.16
**Endorsement Number 4**

**POLICY EXTENSION ENDORSEMENT**

With prior notification to, if the INSURED PROJECT has not been completed as of the date listed for When Coverage Ends on the CONSTRUCTION RISK DECLARATIONS, this policy may be extended for up to 3 months, subject to no risk aggravating situation at the time of the extension request and subject to the same terms and conditions in effect at the time of extension, and subject to the premium(s) below. Additional agreement beyond 3 months is subject to agreement of the Company (ies).

The NAMED INSURED must request these extensions in writing and receive acceptance from the Company prior to the original expiration date of this Policy. If the NAMED INSURED does not provide the aforementioned written extension request(s), coverage provided hereunder shall terminate on the date listed for When Coverage Ends on the CONSTRUCTION RISK DECLARATIONS.

| Company | 03/20/2019 – 04/19/2019 | 04/19/2019 – 05/19/2019 | 05/19/2019 – 06/18/2019 |
|---|---|---|---|
| Westchester Fire Insurance Company | $3,768 + $151 TRIPRA | $3,768 + $151 TRIPRA | $3,768 + $151 TRIPRA |
| Endurance American Insurance Company | $3,768 + $151 TRIPRA | $3,768 + $151 TRIPRA | $3,768 + $151 TRIPRA |

All other terms and conditions remain unchanged.

BR Contract 10.10.18

**Endorsement Number 5**

**ASSIGNED LOSS ADJUSTER**

In the event of loss or damage, we agree to use the following adjuster for the adjustment of all claims made against this policy:

vrs VeriClaim, Inc.
120 Broadway
Suite 900
New York, NY 10271

All claims must be promptly reported to us via an ACORD Loss Notice, or its equivalent, with the notation at the bottom of the form indicating the claim has been assigned to the designated adjuster as set forth in the policy. The designated adjuster shall report directly to us.

The Company(ies) reserve the right to engage or substitute other adjuster(s) or investigators at any time and at our sole discretion.

All other terms and conditions remain unchanged.

BR Contract 10.10.16
**Endorsement Number 6**

**NUCLEAR, BIOLOGICAL, CHEMICAL, RADIOLOGICAL EXCLUSION**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY. THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:**

**CONSTRUCTION RISK COVERAGE FORM**

The following exclusions are added to your Policy or Coverage Part.

This insurance does not apply to:

A. Loss or damage arising directly or indirectly from nuclear detonation, reaction, nuclear radiation or radioactive contamination, all whether controlled or uncontrolled, or due to any act or condition incident to any of the foregoing, whether such loss be direct or indirect, proximate or remote, or be in whole or in part caused by, contributed to, or aggravated by, any physical loss or damage insured against by this Policy or Coverage Part, however such nuclear detonation, reaction, nuclear radiation or radioactive contamination may have been caused. This exclusion replaces any other nuclear detonation, nuclear reaction, nuclear radiation or radioactive contamination exclusions found elsewhere in this Policy.

B. Loss or damage arising directly or indirectly from the dispersal, application or release of, or exposure to, chemical, radiological, or biological materials or agents, all whether controlled or uncontrolled, or due to any act or condition incident to any of the foregoing, whether such loss be direct or indirect, proximate or remote, or be in whole or in part caused by, contributed to, or aggravated by, any physical loss or damage insured against by this Policy or Coverage Part, however such dispersal, application, release or exposure may have been caused.

C. If this endorsement is attached to a Commercial Inland Marine Policy or Coverage Part, the term loss or damage is changed to Loss.

All other terms and conditions remain unchanged.

**PRIMARY INSURANCE INSURED PROJECT ENDORSEMENT**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.  THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:**

**CONSTRUCTION RISK COVERAGE FORM**

Notwithstanding anything to the contrary contained in the policy to which this endorsement is attached, it is hereby agreed and understood that the Policy is modified as follows:

> The Policy at PART E – POLICY CONDITIONS, Clause 13. Other Insurance, Clause 14. Contributing Insurance and Clause 15. Excess Insurance are amended to include the following:
>
> Notwithstanding anything to the contrary herein, it is agreed that this Policy provides primary insurance for the NAMED INSURED, but only in relation to the INSURED PROJECT as described upon the Declarations. In the event of LOSS which is insured by this Policy be also insured under any other policy (ies) of insurance in effect for the benefit of the NAMED INSURED or any Additional Insureds, and which is of the same type and covering the INSURED PROJECT, this Company will indemnify the NAMED INSURED as if such other policy (ies) of insurance did not exist and the Company shall waive rights of recovery, if any, against the insurer(s) of such other policy (ies) of insurance. It is the intent of this Policy to only be primary as respects the INSURED PROJECT described upon the Declarations.
>
> This provision shall not apply to any coverage provided by this Policy for Temporary Off-site Storage and Off-Site Staging Areas or Property in Transit EXTENSIONS OF COVERAGE.

All other terms and conditions remain unchanged.

## POLICY LANGUAGE APPLICABLE TO THE INDIVIDUAL COMPANY

It is hereby understood and agreed that the following change is made to this policy:

In addition to each Company(ies)'s Declaration's Page, Premium Payment Conditions, Premium, Producer Compensation Notices / Disclosures and Service of Suit Clause if applicable; the following Company(ies)'s endorsements, forms and exclusions are added and apply only towards the individual Company(ies) to which such is noted. No other Company (ies) may claim such wording as their own, whether more or less restrictive in the event of loss to apply against all recovery.

The terms and conditions contained within this policy shall supersede those of any General Policy Conditions; General Property Conditions; terms and conditions within a Policy Jacket; Fire Policy Form; terms and conditions of the Declarations Page which conflict with the policy; and any other endorsements or conditions added by the Company(ies) upon policy's issuance or thereafter which are not noted in the above paragraph or listed below or have not been previously advised and agreed to by the Insured.

Engineering fees, loss prevention fees, plan reviews and subsequent services / products, surplus lines taxes and fees, US FET Taxes and various state and local taxes and fees such as the Florida Fire College Trust Fund and Florida Emergency Management, Preparedness & Assist. Fund Trust for the State of Florida and/or other assessments should be viewed as unequal as charged on an individual Company basis separately from premium.

**Westchester Fire Insurance Company**
- IL 09 52 (01/15) - Cap on Losses From Certified Acts Terrorism
- ALL-20887 (10/06) - CHUBB Producer Compensation Practices & Policies
- MA-608255p (04/15) - Claims Directory Property and Inland Marine
- BB-5W58a (09/11) - Common Policy Declarations
- IL 02 78 (09/08) - District of Columbia Changes - Cancellation And Nonrenewal
- CPFs2 (03/08) - Forms Schedule
- CPfs2 (12/10 - Forms Schedule
- TR-45231 (01/15) - Policyholder Disclosure Notice Of Terrorism Insurance Coverage
- CC-1K11h (03/14) - Signatures
- ALL-21101 (11/06) - Trade or Economic Sanctions Endorsement
- IL P 001 (01/04) - U.S. Treasury Departments' Office of Foreign Assets Control ("OFAC") Advisory Notice to Policyholders

**Endurance American Insurance Company**
- PN 0001 07 12 - Policy Holder Notice –U.S. Treasury Department's Office of Foreign Assets Control (OFAC)
- PN 0007 01 15 - Claim Notice
- IMG 0001 04 13 - Inland Marine Declarations
- IL 1007 01 14 - Signature Page
- CL 0172 10 06 - Amendatory Endorsement District Of Columbia
- CL 0600 01 15 - Certified Terrorism Loss
- CL 0605 01 15 - Certified Terrorism Loss Disclosure Of Premium And Federal Share Of Insured Loss

All other terms and conditions remain unchanged.

# POLICYHOLDER NOTICE

## U. S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL (OFAC)

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. Please read this Notice carefully.

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;

- Front organizations;

- Terrorists;

- Terrorist organizations; and

- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's website – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

# P O L I C Y H O L D E R   N O T I C E

## CLAIM NOTICE

In the event of claim to which this policy may apply, please give immediate notice in either of the following ways, to:

Endurance U.S. Insurance – Claims
750 Third Avenue, 18th Floor,
New York, NY 10017
E-Mail addressed to: Insuranceclaims@sompo-intl.com
Toll Free Reporting:  877-676-7575

E-mail is the preferred method of receiving claim notice information, but either of the above methods of notification will generate an acknowledgement of receipt of claim with a claim number and all of the claim adjusters' contact information.

AAIS
CL 0172 10 06
Page 1 of 1

This endorsement changes
the policy
-- PLEASE READ THIS CAREFULLY --

# AMENDATORY ENDORSEMENT
## DISTRICT OF COLUMBIA

Under Common Policy Conditions, Cancellation is deleted and replaced by the following:

**Cancellation and Nonrenewal --** "You" may cancel this policy by returning the policy to "us" or by giving "us" written notice and stating at what future date coverage is to stop.

"We" may cancel or not renew this policy by written notice mailed or delivered to "you" at "your" last known address. Proof of delivery or mailing is sufficient proof of notice.

"Our" notice will include an explanation of the grounds for cancellation or nonrenewal.

"We" will also send a copy of the notice of cancellation to the District of Columbia Superintendent of Insurance when cancellation is for any reason other than nonpayment of premium.

If this policy has been in effect for 30 days or less, "we" may cancel for any reason by giving notice at least ten days before cancellation is effective.

If this policy has been in effect for more than 30 days, or if it is a renewal of a policy issued by "us", "we" may cancel this policy only if one or more of the following reasons apply:

a.   the premium has not been paid when due;

b.   "you" have made a material and willful misstatement or omission of fact to "us" or to "our" employees, agents, or brokers in connection with any application to or claim against "us";

c.   "your" property or other interests have been transferred to a person other than "you" or "your" beneficiary, unless the transfer is permissible under the "terms" of the policy; or

d.   the property, interest, or use thereof has materially changed with respect to its insurability.

If "we" cancel this policy after it has been in effect for more than 30 days, "we" will give "you" written notice of cancellation at least 30 days before cancellation is effective.

If "we" nonrenew this policy, "we" will give "you" written notice of nonrenewal at least 30 days prior to the end of the policy period.

"We" will also notify the agent or broker, if any, who wrote the policy, at least five days before "we" send "you" the notice of cancellation or nonrenewal.

The return premium, if any, will be calculated according to "our" rules. It will be refunded to "you" with the cancellation notice or within a reasonable time. Payment or tender of the unearned premium is not a condition of cancellation.

CL 0172 10 06

Copyright, American Association of Insurance Services, Inc., 2006

**AAIS**
**CL 0600 01 15**
**Page 1 of 1**

This endorsement changes
the policy
-- PLEASE READ THIS CAREFULLY --

# CERTIFIED TERRORISM LOSS

1. The following definitions are added.

   a. "Certified act of terrorism" means an act
   that is certified by the Secretary of the
   Treasury, in consultation with the
   Secretary of Homeland Security, and the
   Attorney General of the United States:

   1) to be an act of terrorism;
   2) to be a violent act or an act that is
   dangerous to human life, property, or
   infrastructure;
   3) to have resulted in damage:

   a) within the United States; or
   b) to an air carrier (as defined in
   section 40102 of title 49, United
   States Code); to a United States
   flag vessel (or a vessel based
   principally in the United States,
   on which United States income
   tax is paid and whose insurance
   coverage is subject to regulation
   in the United States), regardless
   of where the loss occurs; or at
   the premises of any United
   States mission;

   4) to have been committed by an
   individual or individuals, as part of an
   effort to coerce the civilian population
   of the United States or to influence
   the policy or affect the conduct of the
   United States Government by
   coercion; and
   5) to have resulted in insured losses in
   excess of five million dollars in the
   aggregate, attributable to all types of
   insurance subject to the Terrorism
   Risk Insurance Act, as amended.

   b. "Certified terrorism loss" means loss that
   results from a "certified act of terrorism".

2. The "terms" of any terrorism exclusion that is
part of or that is attached to this Coverage
Part are amended by the following provision:

   This exclusion does not apply to "certified
   terrorism loss".

3. The following provision is added.

   If the Secretary of the Treasury determines
   that the aggregate amount of "certified
   terrorism loss" has exceeded one hundred
   billion dollars in a calendar year (January 1
   through December 31), and "we" have met
   "our" insurer deductible under the Terrorism
   Risk Insurance Act, as amended, "we" will
   not pay for any portion of "certified terrorism
   loss" that exceeds one hundred billion
   dollars. If the "certified terrorism loss"
   exceeds one hundred billion dollars in a
   calendar year (January 1 through December
   31), losses up to one hundred billion dollars
   are subject to pro rata allocation in
   accordance with procedures established by
   the Secretary of the Treasury under the
   Terrorism Risk Insurance Act, as amended.

4. The following provisions are added.

   a. Neither the "terms" of this endorsement
   nor the "terms" of any other terrorism
   endorsement attached to this Coverage
   Part provide coverage for any loss that
   would otherwise be excluded by this
   Coverage Part under:

   1) exclusions that address war, military
   action, or nuclear hazard; or
   2) any other exclusion; and

   b. the absence of any other terrorism
   endorsement does not imply coverage
   for any loss that would otherwise be
   excluded by this Coverage Part under:

   1) exclusions that address war, military
   action, or nuclear hazard; or
   2) any other exclusion.

---

CL 0600 01 15

Copyright, American Association of Insurance Services, Inc., 2015

This endorsement changes
the policy
-- PLEASE READ THIS CAREFULLY --

IMU100120131-00

# CERTIFIED TERRORISM LOSS DISCLOSURE OF PREMIUM AND FEDERAL SHARE OF INSURED LOSSES

(The entries required to complete this endorsement will be shown
below, on the "declarations", or on the "schedule of coverages".)

## SCHEDULE

Certified Terrorism Loss Premium  $ 2,487

Additional information, if any, concerning terrorism premium:

1.  The portion of "your" premium that is attributed to coverage for "certified terrorism loss" is shown in the Schedule above.

2.  Coverage for "certified terrorism loss", to the extent that such coverage is provided by this policy or Coverage Part, will be partially reimbursed by the United States Government, Department of Treasury under a federal program. Under that program, the United States pays the following percentage of insured losses for "certified terrorism loss" that exceeds the statutorily established deductible that "we" retain:

    a.  85%, for insured losses occurring before January 1, 2016;

    b.  84%, for insured losses occurring during the 2016 calendar year;

    c.  83%, for insured losses occurring during the 2017 calendar year;

    d.  82%, for insured losses occurring during the 2018 calendar year;

    e.  81%, for insured losses occurring during the 2019 calendar year; and

    f.  80%, for insured losses occurring on or after January 1, 2020.

    However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act, as amended, exceed one hundred billion dollars in a calendar year (January 1 through December 31), the Treasury will not make payment for any portion of the amount of such losses that exceeds one hundred billion dollars.

    If the Secretary of the Treasury determines that the aggregate amount of "certified terrorism loss" has exceeded one hundred billion dollars in a calendar year (January 1 through December 31), and "we" have met "our" insurer deductible under the Terrorism Risk Insurance Act, as amended, "we" will not pay for any portion of "certified terrorism loss" that exceeds one hundred billion dollars. If the "certified terrorism loss" exceeds one hundred billion dollars in a calendar year (January 1 through December 31), losses up to one hundred billion dollars are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury under the Terrorism Risk Insurance Act, as amended.

CL 0605 01 15

Copyright, American Association of Insurance Services, Inc., 2015

# EXHIBIT 3



**GOODMAN-GABLE-GOULD/ADJUSTERS INTERNATIONAL**

**VIA EMAIL**

PROFESSIONAL LOSS CONSULTANTS

March 20, 2019

10110 MOLECULAR DRIVE
SUITE 300
ROCKVILLE, MARYLAND 20850
(301) 881-9230
800-858-3900
FAX (301) 231-9055
www.ggg-ai.com

Mr. Vince LaRosa
General Adjuster
Sedgwick
19813 Leitersburg Pike, Suite 329
Hagerstown, MD 21742

Re:   Insured:        MRP Realty
      Loss Location:  3534 E. Capitol St., NE
                      Washington, DC 20019
      Date of Loss:   3/7/2019
      Peril:          WATER DAMAGE
      Sedgwick #:     BAL19637100
      Claim #'s:      KY192108216 & 10184668

Dear Mr. LaRosa:

Thank you for your March 13, 2019 letter on behalf of Chubb Insurance and Sompo International, "The Insurers", in the handling of your insured's claim. You wrote in yours of March 13, 2019: "*Your insurers have received notice of an occurrence which took place at 3534 E. Capital Street NE, Washington, DC 20019 on 1/25/2019. As a result of this occurrence, coverage has been requested under policy number IMU100120131-00 and I1132479 00, which was issued to MRP Realty by Chubb Insurance and Sompo International. A Builder's Risk Policy under BR Contract 10.10.16 was issued to MRP Realty with a policy period of 11/10/2017 to 3/20/2019. There is question whether coverage under this policy applies to this occurrence*". The Insured disagrees with your initial coverage assessment and the purpose of this letter is to clarify these issues for you so the Insurers may get on board regarding coverage for this claimed loss.

You wrote in yours of March 13, 2019: "*The nature of the coverage question is as follows:*

<u>*Excluded Cause of LOSS*</u>

*8. Consequential loss, and damage or expense of any kind or description including but not limited to loss of market or delay, liquidated damages, performance penalties, penalties for non-completion, delay in completion, or non compliance with contract conditions, whether caused by a peril insured or otherwise;*". Please see page #30 of #42 of the insurance policies (Endorsement #1) which adds $3,250,000 Delay in Opening coverage to the policies which covers soft costs as defined subject to a 14 day waiting period.

You wrote in yours of March 13, 2019: "*17.      Cost of Making Good:*

    *The costs that would have been incurred to rectify any of the following had such rectification been effected immediately prior to the LOSS:*

*A.      Fault, defect, error, deficiency or omission in design, plants, specifications, engineering or surveying;*



GOODMAN-GABLE-GOULD/ ADJUSTERS INTERNATIONAL

Page Two – Vince LaRosa
March 20, 2019

B.     *Faulty or defective workmanship, supplies or material;*

*However, if direct physical LOSS by an insured peril ensues, then this Policy will provide coverage for such ensuing loss only."* We respectfully direct you to page #29 of 42 of the policies which defines "WATER DAMAGE" as: "All water damage, except LOSS caused by or resulting from the peril of FLOOD" (which is also endorsed onto the subject policy). This claimed LOSS is clearly covered as an ENSUING (emphasis added) water damage loss.

You wrote March 13, 2019that: *"The company will not pay the following costs:*

22.     *Limited Coverage for FUNGUS, Wet Rot, Dry Rot or Bacteria.*

*A. The coverage described in B. only applies when Fungus, wet rot, dry rot or bacteria results directly from an OCCURRENCE that is covered by this Policy, which takes place during the policy period and only if all reasonable means were used to save and preserve the property from further LOSS at the time of and after that OCCURRENCE.*

*C. The coverage provided herein does not increase any other applicable Limit of Insurance or Sub-limit of Insurance for the INSURED PROJECT. If a particular OCCURRENCE results in LOSS by FUNGUS, wet rot, or bacteria, as well as other LOSS, the Company will not pay more, for the total of all LOSS, then the applicable Limit of Insurance per OCCURRENCE stated on the Declarations.*

*If there is covered LOSS to the INSURED PROJECT, not caused by FUNGUS, wet rot, dry rot or bacteria, loss payment will not be limited by the terms of this Extension of Coverage, except to the extent that FUNGUS, wet rock, dry rot or bacteria causes an increase in the LOSS. Any such increase in the LOSS will be subject to the terms of this Extension of Coverage."*

The insured retained licensed remediation contractors to dry the water damage and we will provide you with both those costs and moisture mapping in the near future. As you have referenced "OCCURRENCE" in yours of March 13, 2019, which is a defined term on page #28 of 42 of the policy, we believe it is important to underscore that OCCURRENCE is defined in the subject insurance policy as: "ALL LOSS attributable directly or indirectly to one originating cause event or incident, or to one series of similar originating causes, events, incidents or repeated exposures to the same originating cause, event or incident first occurring in the policy period. All such LOSS will be treated as one OCCURRENCE, unless a specific period of time is included in this policy. The most the company will pay for LOSS in any one OCCURRENCE is the applicable limit of Insurance shown on the declarations".

Given the above application of the pertinent policy conditions to the facts of this claimed loss it seems clear to your insured that coverage is afforded and that no policy exclusions preclude coverage. Therefore, at this time,



GOODMAN-GABLE-GOULD/ ADJUSTERS INTERNATIONAL

Page Three – Vince LaRosa
March 20, 2019

the insured requests a $250,000 partial payment against the total claim. The insured reserves all its rights and waives none. The insured reserves the right to amend its claim as the adjustment process progresses.

Very truly yours,

GOODMAN-GABLE-GOULD/ADJUSTERS INTERNATIONAL

*Harvey M. Goodman*

Harvey M. Goodman, SPPA
President and CEO

cc: Kent Goss
    Kerry Crawford
    Rick Saas
    Tom McCullough
    Kevin Schaar
    Matt Kahn
    Bill Greenspan
    Evan Harris

File: 70904D